DocuSign Envelope ID: 6F73GE4E-3147-4EFD-8558-A6395FDCZACE

Marc J. Randazza (AZ Bar No. 027861)
RANDAZZA LEGAL GROUP, PLLC
2764 Lake Sahara Drive, Suite 109
Las Vegas, NV 89117
Telephone: 702-420-2001
ecf@randazza.com

Attorneys for Plaintiff Audrey Davis

# UNITED STATES DISTRICT COURT
# DISTRICT OF ARIZONA

| | |
|---|---|
| Audrey Davis, an individual,<br><br>       Plaintiff,<br><br>   v.<br><br>Rhondie Voorhees, in her personal capacity and as Dean of Embry-Riddle Aeronautical University; the Embry-Riddle Aeronautical University Board of Trustees; Embry-Riddle Aeronautical University; and Tyler Smith, an individual,<br><br>       Defendants. | Case No. _____<br><br><br>**VERIFIED COMPLAINT FOR SEXUAL BATTERY, VIOLATIONS OF TITLE IX AND THE SERVICEMEMBERS CIVIL RELIEF ACT**<br><br><br>[JURY DEMANDED] |

Plaintiff Audrey Davis brings this Complaint against Defendants Rhondie Voorhees, the Board of Trustees of Embry-Riddle Aeronautical University, Embry-Riddle Aeronautical University ("ERAU") (collectively, the "ERAU Defendants"), and Tyler Smith, and seeks injunctive relief, compensatory damages, and punitive damages against all Defendants.

**RANDAZZA** | LEGAL GROUP

## **INTRODUCTION**

This is a case about a sexual assault victim being victimized a second and then a third time by an institution and its Dean. Plaintiff Audrey Davis was at a party, and she fell asleep on a couch. Defendant Tyler Smith decided that this gave him license to sexually assault her. Then ERAU and Dean Voorhees treated her with deliberate indifference and retaliated against her for exercising her rights.

Davis reported Smith's assault to the police, but the police determined that there was not enough evidence to overcome the "beyond a reasonable doubt" standard required for criminal prosecution. Since her assailant was a fellow student at ERAU, Davis also reported it to ERAU seeking action under Title IX – which applies to schools that take federal funds (like ERAU). ERAU then acted with deliberate indifference, paying essentially no attention to her case for months. However, when it paid attention, it threatened Davis with retaliation for complaining about how poorly ERAU handled the matter or for talking about the incident at all.

After unsuccessfully trying to silence her with these threats, ERAU's Dean of Students, Rhondie Voorhees, filed a frivolous lawsuit for defamation against Davis so that she would stop talking about ERAU's woeful Title IX practices. ERAU and Voorhees even went so far as to fraudulently seek default against Davis while she was on active armed services duty by lying about her status as a servicemember. Defendants have tried to bully, intimidate, and sue Davis into silence. They have failed, and now they will face consequences for their conduct.

## **VENUE, JURISDICTION, AND PARTIES**

1. This action is brought for unlawful discrimination based on gender and/or sex, for sexual battery and sexual harassment in the educational context, and for the

- 2 -
Verified Complaint

DocuSign Envelope ID: 6F736E4E-3147-4EFD-8558-A6985FDC7ACF

creation of a hostile educational environment against Defendants ERAU and Dean Voorhees, pursuant to Title IX, which prohibits discrimination based on sex under any educational program receiving federal financial assistance.

2.     Subject matter jurisdiction for the Title IX claim is found under 28 U.S.C. §§ 1331 and 1343(a)(3) and (4).

3.     Subject matter jurisdiction for the SCRA claim is found under the Servicemembers Civil Relief Act ("SCRA"), 50 U.S.C. §§ 3901-4043.

4.     This Court has supplemental jurisdiction over state law claims under (28 U.S.C. § 1367(a), as the events are intertwined with the federal claims.

5.     Venue is proper in the District of Arizona because all of the complained-of acts took place in Arizona.

6.     Defendant ERAU is an educational institution which, at all times material hereto, operated in Prescott, Arizona, operates and supervises the on-campus Title IX office, and is ultimately liable for the action and inaction of its agents and/or employees and students.  Defendant ERAU received federal financial assistance and as such, the prohibitions against sexual harassment and gender/sex discrimination contained in Title IX applied to ERAU.  Defendant ERAU is also required to follow the provisions set forth by Title VI of the Civil Rights Act of 1964 and Section 504 of the Rehabilitation Act.

7.     The Board of Trustees of Embry-Riddle Aeronautical University is ERAU's governing body.  The Board of Trustees of ERAU is responsible for ensuring that ERAU follows the provisions set forth by Title VI of the Civil Rights Act of 1964 and Section 504 of the Rehabilitation Act.

8.     At all times material hereto, Defendant Tyler Smith was a student at ERAU in Prescott, Arizona.

9.     This is an action seeking damages in excess of $75,000, exclusive of costs, interest, and attorney's fees.

## **FACTUAL ALLEGATIONS**

10.     On November 11, 2019, Plaintiff Audrey Davis was at a party, and she fell asleep on a couch.  Defendant Tyler Smith, a fellow ERAU student, decided that this gave him license to sexually assault her, and he did, indeed sexually assault her.

11.     Davis reported Smith's assault to the police, but the police determined that there was not enough evidence to overcome the "beyond a reasonable doubt" standard required for criminal prosecution.

12.     Since her assailant was a fellow student at ERAU, Davis also reported the assault to ERAU seeking action under Title IX – which applies to schools that take federal funds (like ERAU).

13.     Title IX provides that when students suffer from sexual assault, they are deprived of equal and free access to an education.  Therefore, ERAU is required to ensure that Ms. Davis has that equal access to an education.

14.     ERAU placed Ms. Davis in classes with her assailant.  Davis was not seeking to have Tyler Smith expelled, but did seek the reasonable accommodation of having Smith placed in different classes than Davis.

15.     Forcing her to attend classes with her assailant places her in a situation where such equal access is denied to her.

16.     The classes where ERAU placed Davis with Smith are classes that have multiple sections, therefore, moving Smith to another section would cause him nothing more than a minor inconvenience.  Nevertheless, ERAU chose to decline to inconvenience a sexual predator, while requiring the victim to accommodate her assailant.

- 4 -
Verified Complaint

DocuSign Envelope ID: 6F736E4E-3147-4EFD-8558-A63951DC7ACF

17.     When Ms. Davis sought relief under Title IX, ERAU acted with deliberate indifference.

18.     ERAU's Title IX coordinator, Liz Frost, acted with extreme sloth and laziness, and spent 151 days sitting on the complaint.

19.     Her stated excuse was that she was "on vacation."

20.     ERAU's deliberate indifference would not permit it to even give Ms. Davis the slight accommodation of putting Tyler Smith in a different class.

21.     ERAU did, however, offer to let Ms. Davis turn her camera off or change her name so that Smith would not see her.  In other words, ERAU decided that the assault victim should hide her name and face in shame, not that Smith should simply have to be somewhere else.

22.     In its solitary act of reasonableness in this situation, ERAU did go so far as to require Davis to wear a Scarlet Letter while she attended class.

23.     When Ms. Davis found that Frost was entirely derelict in her duties, she escalated the matter to ERAU Dean of Students Rhondie Voorhees.

24.     Dean Voorhees not only brushed away Ms. Davis' concerns, but she doubled down on the deliberate indifference and victim blaming.

25.     Ms. Davis was surprised by Voorhees's dismissal of her claims, but she likely would not have been so surprised had she done a bit of research on Dean Voorhees *before* that meeting.

26.     After the meeting, Davis did her research and found that Dean Voorhees had a reputation for being deliberately indifferent and even hostile to sexual assault victims.

Verified Complaint

27. Voorhees was run out of her prior position at the University of Montana, in disgrace, because of her hostility toward a sexual assault victim there, in favor of letting a star athlete rapist remain on campus.

28. Nevertheless, ERAU retaliated against Davis, and retaliated hard.

29. First, an ERAU official told Ms. Davis on the phone that if she was "caught" talking about the assault at all, she could get in "big trouble" and her status as a student at ERAU would be in jeopardy.

30. Ms. Davis was then asked if she understood the consequences of speaking about the incident. Ms. Davis hung up at that point.

31. Her assailant was free to talk about whatever he liked.

32. In short, a man sexually assaulted Ms. Davis, ERAU dragged its feet and did not care at all about that, going so far as to punish Ms. Davis by putting her assailant in her classes. And then the only student warned that they might be thrown out of school was Ms. Davis – if she had the audacity to speak about the incident.

33. Ms. Davis was left without an ally. The police could not prosecute. The school preferred to punish Ms. Davis, rather than accommodate her. ERAU threatened her, seeking to sweep their own malfeasance under the rug and to try and stop Davis from so much as talking about the incident. Ms. Davis was left with no other friend than the First Amendment's rights to freedom of speech and freedom of petition.

34. Around February 2021, Davis drafted a petition seeking Dean Voorhees' resignation due to her deliberate indifference toward sexual assault victims and how ERAU had treated her. (*See* Petition by Ms. Davis calling for Rhondie Voorhees's resignation, attached as **Exhibit 1**.)

DocuSign Envelope ID: 6F73CE4E-3147-4EFD-8558-A62951DC7ACE

35.     Ms. Davis not only had a First Amendment right to draft and circulate this petition, but she had a right under Title IX to complain about how she was treated.  Title IX not only prohibits sexual assault and the deliberate indifference that ERAU and Dean Voorhees showed her, but it also prohibits retaliation against students for taking advantage of Title IX and for raising awareness of how they were treated.

36.     In response, did ERAU remedy the situation?  No.  Instead, it deployed Mr. Jason Langston, the director of Residence and Housing at ERAU, to threaten her.

37.     During a meeting between Langston and Ms. Davis, he asked Ms. Davis why she had posted the petition.  Had Ms. Davis been represented by counsel at this meeting, her response would have been "*I have a right to, and I will answer no further questions.*"

38.     However, being unrepresented (and being further intimidated by being told that she could not record the conversation), Ms. Davis told Langston that she did it for obvious reasons – that she was displeased with how her Title IX case was handled and how the ERAU staff dragged their feet in handling it.

39.     Her exercise of these First Amendment protected rights was co-extensive with her rights under Title IX.

40.     Ms. Davis also shared an email that she had sent to Dean Voorhees and the ERAU Chancellor explaining how she felt about their conduct.

41.     Mr. Langston, on behalf of ERAU, told Ms. Davis that she should not have written or circulated the petition, and that she should not do that kind of thing again.

42.     Langston told Davis that instead of exercising her rights in this manner, Davis should have come to him, first.

43.     The message was clear, even if delivered tactfully – ERAU and Dean Voorhees do not want to be criticized for mishandling a Title IX matter.

44.     On information and belief, Langston held this meeting with Davis at the behest of Dean Voorhees and ERAU.

45.     This would be enough egregious conduct to warrant a Title IX claim, but Dean Voorhees would not let it lie at that.

46.     Dean Voorhees then hired an attorney to threaten Ms. Davis.

47.     Dean Voorhees intimidated Ms. Davis into deleting her petition.

48.     But this was not enough retaliation to satisfy Dean Voorhees's lust to punish Ms. Davis for speaking out about her handling of her Title IX case.

49.     Dean Voorhees then sued Ms. Davis for defamation in Yavapai County, Arizona Superior Court for the content of the petition.

50.     As if *this* was not outrageous enough, Dean Voorhees was aware that Ms. Davis was not only a student of ERAU, but a member of the United States Armed Forces on active duty orders starting July 2, 2021.

51.     Dean Voorhees and ERAU were well aware of this. (*See* June 1, 2021 email from Patrick Davis to Voorhees's counsel, attached as **Exhibit 2**.)

52.     Nevertheless, Dean Voorhees was not content to retaliate by trying to silence Ms. Davis, but she then sought a default against Ms. Davis, trying to take advantage of the fact that Davis was on active duty orders, and entitled to relief under the Servicemembers Civil Relief Act ("SCRA"), 50 U.S.C. §§ 3901-4043.

53.     Dean Voorhees, through counsel, lied to the Arizona court, stating "*To comply with the requirements of 50 U.S.C.A. § 520, I verify that, to the best of my knowledge, the above-named party is not in the military service*." (*See* Declaration of Daniel R. Warner in support of application for entry of default, attached as **Exhibit 3**.)

DocuSign Envelope ID: 6F736E4E-3147-4EFD-8558-A63951DC7ACE

54.     On information and belief, Dean Voorhees directed Attorney Warner to file this false declaration, despite having actual knowledge that Ms. Davis was in the military and was on active duty orders at the time.

55.     Davis suffered actual damages from this false affidavit, sent in Voorhees's name and for her benefit, because Dean Voorhees attempted to capitalize on the default and cost Ms. Davis thousands of dollars in attorneys' fees trying to get the illegally obtained default set aside.

## COUNT I

### BATTERY / SEXUAL BATTERY by DEFENDANT TYLER SMITH

56.     Plaintiff re-alleges all preceding paragraphs as if stated fully herein.

57.     Defendant Smith sexually assaulted Ms. Davis.

58.     Smith touched Davis, in a sexual manner, while Davis was sleeping.

59.     This touching was unwanted, and was made in a sexual manner.

60.     Smith knew that he lacked consent to touch Ms. Davis.

61.     Smith knew that he lacked consent to touch Ms. Davis in a sexual manner.

62.     As a direct and proximate result of Defendant Smith's misconduct discussed herein, Plaintiff has suffered and will continue to suffer significant and severe mental anguish and emotional distress.

## COUNT II

### TITLE IX VIOLATIONS by ERAU DEFENDANTS

### GENDER/SEX DISCRIMINATION, HOSTILE ENVIRONMENT

63.     Plaintiff re-alleges all preceding paragraphs as if stated fully herein.

64.     Title IX provides that "no person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to

discrimination under any educational program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a).

65.     Sexual harassment and assault are forms of discrimination under Title IX.

66.     ERAU Defendants receive federal funding and are bound by Title IX.

67.     Ms. Davis endured a sexual assault at the hands of another ERAU student on the basis of her sex.

68.     The sexual assault perpetrated on Ms. Davis was so severe and objectively offensive that it barred her access to an educational opportunity or benefit.

69.     ERAU and the school officials under its control had the authority and obligation to address the severe sexual assault and discrimination perpetrated against Ms. Davis and to institute remedial and corrective measures so as to preserve Ms. Davis's access to her education.

70.     Instead, ERAU Defendants and school officials under their control contributed to, condoned, and/or acquiesced in creating a hostile and inaccessible educational environment by engaging in conduct that included, but is not limited to: (1) failing to properly investigate the sexual assault; (2) unreasonably and callously blaming Ms. Davis for the sexual assault perpetrated against her; (3) refusing to provide reasonable accommodations to Ms. Davis pending investigation, such as moving her assaulter to different classes than Ms. Davis; and (4) threatening to take actions adverse to Ms. Davis's educational opportunities if she voiced any of her concerns about ERAU's Title IX department to third parties.

71.     ERAU Defendants and school officials under their control, in their response to the assault, engaged in actions and/or omissions that effectively barred Ms. Davis from equal access to an educational opportunity or benefit.

72.     The acts and omissions by ERAU Defendants violated Ms. Davis's right to be free from sexual harassment and sex discrimination within ERAU.

73.     ERAU Defendants had actual knowledge of the sexual assault perpetrated against Ms. Davis.

74.     ERAU Defendants' deliberate indifference, through their actions and omissions following Ms. Davis's report of sexual assault, subjected Ms. Davis to a hostile and abusive school environment.

75.     ERAU Defendants exhibited deliberate indifference in that their response to the sexual assault perpetrated against Ms. Davis was clearly unreasonable in light of the known circumstances.

76.     ERAU Defendants' conduct deprived Ms. Davis of her statutory rights under Title IX and was in reckless disregard of her federally protected right to be free from such conduct and treatment in the educational setting.

77.     As a direct, material, proximate and foreseeable result of ERAU Defendants' actions and omissions, Ms. Davis has suffered emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, loss of dignity, and other non-pecuniary losses and intangible injuries.

## COUNT III

### RETALIATION BY ERAU DEFENDANTS

78.     Plaintiff re-alleges all preceding paragraphs as if stated fully herein.

79.     Ms. Davis was engaging in a protected activity when she reported her sexual assault to ERAU officials.

80.     Ms. Davis was engaging in a protected activity when she spoke with Defendant Voorhees and other ERAU school officials in an attempt to have ERAU take meaningful action in response to her Title IX complaint and change its Title IX policies.

81.     Ms. Davis was engaging in a protected activity when she circulated a petition for Ms. Voorhees's removal as Dean of Students containing accurate information.

82.     In direct response to these protected activities, ERAU Defendants ignored, belittled, intimidated, and threatened Ms. Davis.

83.     Ms. Voorhees even filed a frivolous defamation lawsuit against Ms. Davis in retaliation against these protected activities and then fraudulently obtained default in that suit by lying to an Arizona court about Ms. Davis's membership in the armed services.

84.     ERAU Defendants' actions and omissions were sufficiently adverse that they would have dissuaded an individual of ordinary firmness from engaging in a protected activity.

85.     ERAU Defendants retaliated against Ms. Davis in violation of her rights under Title IX of the Educations Amendments of 1972.

86.     As a direct, material, proximate and foreseeable result of ERAU Defendants' retaliation, Ms. Davis has suffered emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, loss of dignity, and other non-pecuniary losses and intangible injuries.

## **COUNT IV**

### **VIOLATION OF THE SCRA BY DEAN RHONDIE VOORHEES**

87.     Plaintiff re-alleges all preceding paragraphs as if stated fully herein.

88.     Congress enacted the SCRA in order to:

DocuSign Envelope ID: 6F72CE4E-3447-4EED-85E0-A63951DC7ACE

a.    provide for, strengthen, and expedite the national defense through protection extended by this Act to servicemembers of the United States to enable such persons to devote their entire energy to the defense needs of the Nation; and

b.    provide for the temporary suspension of judicial and administrative proceedings and transactions that may adversely affect the civil rights of servicemembers during their military service.  50 U.S.C. § 3902.

89.    The SCRA should be construed liberally.  *See LeMaistre v. Leffers*, 333 U.S. 1, 6 (1948) (stating "[t]he Act should be read with an eye friendly to those who dropped their affairs to answer their country's call").

90.    Davis is, and was, a "servicemember" on July 8, 2021.

*91.*    On July 8, 2021, Defendant Voorhees, through counsel, provided a declaration to the Yavapai County, Arizona Superior Court that stated, in pertinent part, "*To comply with the requirements of 50 U.S.C.A. § 520, I verify that, to the best of my knowledge, the above-named party is not in the military service.*"  (*See* **Exhibit 3**)

92.    Given that Davis is in ROTC, and Voorhees is Dean of Students, Voorhees cannot possibly claim to be unaware of the fact that Davis was in military service and on active duty orders at the time.

93.    Even if Dean Voorhees was somehow unaware of Davis' status, over a month before Dean Voorhees sought default, Davis and her father made Voorhees's counsel aware of the fact that she was in the armed forces and would be on active duty orders.

94.    Knowing that she would be handicapped in her ability to defend, Defendant Voorhees waited until Davis was on active duty in orders to strategically seek default while Davis was unable to defend herself, at all.

DocuSign Envelope ID: 6F72CE4F-3447-4EED-85E0-A62951DC3ACE

95.    Defendant Voorhees violated SCRA § 3931 when they knowingly and willfully caused a false affidavit to be filed.

96.    SCRA § 3931 provides that "a person who makes or uses an affidavit … knowing it to be false, shall be fined as provided in Title 18, or imprisoned for not more than one year, or both."

97.    The SCRA grants any aggrieved person a private right of civil action and the right to obtain equitable relief, monetary damages, punitive damages, costs and attorneys' fees, and "all other appropriate relief."  50 U.S.C. § 4042, 4043.

98.    Voorhees violated the SCRA by knowingly providing a false affidavit for the purpose of fraudulently obtaining a default against Davis while she was on active duty.

99.    Under 50 U.S.C. § 4042, Davis is entitled to monetary damages in an amount equal to the total attorneys' fees and expenses incurred in trying to reverse the damage from Voorhees' false affidavit.

100.    Under 50 U.S.C. § 4043, Davis is entitled to an award of punitive damages in an amount to be proven at trial.

101.    Davis is entitled to an injunction against Dean Voorhees prohibiting her from violating the SCRA again.

## COUNT V

### RESPONDEAT SUPERIOR - SCRA

102.    Plaintiff re-alleges all preceding paragraphs as if stated fully herein.

103.    ERAU and its College Board of Trustees (under a theory of respondeat superior) violated SCRA § 3931 when they failed to supervise or train Dean Voorhees sufficiently so that she respected the SCRA and the rights of servicemembers.

104. Plaintiff seeks damages from ERAU and the College Board of Trustees and injunctive relief requiring ERAU to suspend her from her duties until she completes training in how to handle SCRA matters as the Dean of Students.

**COUNT VI**

**RESPONDEAT SUPERIOR**

105. Plaintiff re-alleges all preceding paragraphs as if stated fully herein.

106. ERAU and its College Board of Trustees (under a theory of respondeat superior) violated Title IX when they failed to supervise or train Dean Voorhees, Ms. Frost, or Mr. Langston sufficiently so that they respected Ms. Davis' rights under Title IX, or they directed one or more of these parties to act in a deliberately indifferent manner or a retaliatory manner, or they after-the-fact ratified their actions to such an extent that ERAU and its Trustees are vicariously liable for their conduct.

107. Plaintiff seeks damages from ERAU and the College Board of Trustees and injunctive relief requiring ERAU to suspend Voorhees, Frost, and Langston from their duties until they complete training in how to handle Title IX matters, commit to no further retaliation or deliberate indifference, and are otherwise re-qualified to be in their positions.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Audrey Davis hereby prays for relief as follows:

A. That Plaintiff be awarded general, exemplary, compensatory, and punitive damages for the wrongdoing that each Defendant committed, in an amount to be determined at trial, but in excess of $75,000.00;

B. That Plaintiff be awarded her costs and attorneys' fees incurred in bringing suit pursuant to Title IX, the SCRA, and the Court's inherent power;

DocuSign Envelope ID: 6F72CE4F-3447-4EED-85E0-A68951DC7ACE

C.      An injunction against Dean Voorhees prohibiting her from violating the SCRA again, and requiring ERAU to suspend her from her duties until she completes training in how to handle SCRA matters as the Dean of Students; and,

D.      An injunction against Dean Voorhees and ERAU prohibiting her from retaliating against Plaintiff further, and requiring ERAU to suspend her from her duties until she completes training in how to handle Title IX matters as the Dean of Students; and,

E.      All such other relief as the Court deems just and proper.

## <u>JURY DEMAND</u>

Plaintiff Audrey Davis hereby demands a trial by jury as to all issues so triable.


Dated: November 11, 2021.          Respectfully submitted,

/s/ Marc J. Randazza
Marc J. Randazza (AZ Bar No. 027861)
RANDAZZA LEGAL GROUP, PLLC
2764 Lake Sahara Drive, Suite 109
Las Vegas, NV 89117

Attorneys for Plaintiff Audrey Davis

1

## <u>VERIFICATION</u>

2   I, Audrey Davis, I am the Plaintiff in the above-captioned case and have authorized

3   the filing of this complaint.  I have reviewed the allegations in this Verified Complaint, and

4   I hereby declare under penalty of perjury that the foregoing allegations are true and correct

5   to the best of my knowledge and belief.

6   Executed on: <u>11/11/2021</u> .

7   Audrey Davis

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25