Marc J. Randazza (AZ Bar No. 027861)
RANDAZZA LEGAL GROUP, PLLC
2764 Lake Sahara Drive, Suite 109
Las Vegas, NV 89117
Telephone: 702-420-2001
ecf@randazza.com

Attorneys for Plaintiff / Counterclaim-Defendant
Audrey Davis

# UNITED STATES DISTRICT COURT
# DISTRICT OF ARIZONA

| | |
|---|---|
| Audrey Davis,<br><br>    Plaintiff /<br>    Counterclaim-Defendant,<br><br> v.<br><br>Rhondie Voorhees,<br><br>    Defendant /<br>    Counterclaim-Plaintiff,<br><br>  and,<br><br>ERAU College Board of Trustees; ERAU; and Tyler Smith,<br><br>    Defendants. | Case No. 3:21-cv-08249-DLR<br><br>**PLAINTIFF AUDREY DAVIS'S MOTION FOR RULE 41(d) COSTS AND STAY OF PROCEEDINGS ON COUNTERCLAIM** |

Plaintiff Audrey Davis moves this Court pursuant to Federal Rule of Civil Procedure 41(d) for an award of her reasonable costs, including attorneys' fees, in relation to Defendant Rhondie Voorhees's previously-filed, and voluntarily dismissed, action which has been re-filed here. Plaintiff further requests that this Court grant a stay of the proceedings relating to Defendant Voorhees's Counterclaim until she pays Plaintiff's costs and fees incurred in the previous action. This Motion is based upon the attached Memorandum of Points and Authorities, the papers and pleadings on file in this action, and any argument permitted by the Court.

# MEMORANDUM OF POINTS AND AUTHORITIES

## 1.0 INTRODUCTION

Defendant Rhondie Voorhees ("Voorhees") sued Plaintiff Audrey Davis ("Davis") for defamation in Arizona Superior Court while Davis was engaged in military training in the United States Army under official orders. Voorhees took advantage of this fact by pursuing a default against Davis while knowing she was on active duty. Even when Davis returned from duty and retained counsel, Voorhees unreasonably and vigorously protracted the litigation by refusing her flawed attempt at defaulting Davis and multiplying the proceedings solely to engage in attrition against a servicemember and college student. Once Davis filed this action, Voorhees abandoned her Superior Court case and re-filed her claims here. Under Fed. R. Civ. P. 41(d), the costs and attorneys' fees Davis incurred in relation to the Superior Court litigation should be shifted.

## 2.0 STATEMENT OF RELEVANT FACTS

### 2.1 The Underlying Dispute

Plaintiff Audrey Davis is a student at Embry-Riddle Aeronautical University ("ERAU") and a service member. Defendant Rhondie Voorhees is the Dean of Students at ERAU. *See* Verified Complaint, Doc. No. 1, at ¶¶ 10, 23. While Davis was a student at ERAU, she was sexually assaulted by another ERAU student. *See id.* at ¶ 10. Davis filed a complaint with ERAU under Title IX. *See id.* at ¶ 12. Davis was displeased with ERAU's investigation of that Title IX complaint. *See id.* at ¶ 18.

Voorhees alleges that she met with Davis about the Title IX complaint in or about September of 2020. *See* Counterclaim, Doc. No. 9, at ¶ 11. Specifically, Davis wanted to discuss the fact that her abuser had been assigned to attend the same class as her and that ERAU could improve its Title IX processes and procedures. (*See Exhibit 2* to

Counterclaim, Doc. No. 9-3.) Voorhees alleges that she told Davis that she had nothing to do with "overseeing or supervising any Title IX issues at ERAU." (Doc. No. 9 at ¶¶ 11-12.) Following that meeting, Voorhees alleges that, on February 15, 2021, Davis "published several false and defamatory statements" in a petition posted on Change.org (the "Petition"). (*See id.* at ¶ 18; Doc. No. 9-3.)

### 2.2    The State Court Litigation

Voorhees tactically filed suit against Davis while she was obligated to attend military training on the other side of the country under official orders from the United States Army. Voorhees knew that Davis was under these military orders and sought a default against Davis in bad faith. *See* **Exhibit 1**, Email from Patrick Davis to Dan Warner dated June 1, 2021; **Exhibit 2**, Application for Entry of Default.

Once Davis's military training was complete, she was able to give attention to the suit and retain counsel to defend herself in the matter. Davis engaged the undersigned firm, who appeared in the State Court Action, opposed Voorhees's application to default Davis, and moved to dismiss the underlying action. *See* **Exhibit 3**, Motion to Deem Clerk's Default Void or in the Alternative, to Set it Aside.

Despite producing orders showing that Davis was under military orders to attend Army trainings when the default was sought, Voorhees and her counsel zealously sought to deprive Davis of due process by seeking to preclude Davis from offering a defense to the complaint in that action. Instead of stipulating to set aside the default and proceed with the case on the merits, Voorhees vigorously opposed any such efforts and her counsel filed **four** separate motions to strike Davis's court filings. *See* **Exhibits 4-7**.

Voorhees voluntarily dismissed the action pending in Yavapai County Superior Court and re-filed her complaint as a counterclaim in this action. *See* **Exhibit 8**, Notice of

Dismissal Without Prejudice; Doc. No. 9, Counterclaim. Stated differently, Voorhees destroyed a forest full of trees in order to try and hold on to her disgracefully-sought default. Despite doing so, she abandoned all of those efforts after costing Davis tens of thousands of dollars in fees only to find herself exactly where she would be had she conducted herself honorably in the first place.

## 3.0   LEGAL STANDARD

Federal Rule of Civil Procedure 41(d) provides: "If a plaintiff who previously dismissed an action in any court files an action based on or including the same claim against the same defendant, the court ... may order the plaintiff to pay all or part of the costs of that previous action."

## 4.0   ARGUMENT

### 4.1   Voorhees's actions meet the elements of Rule 41(d)

The elements of Federal Rule of Civil Procedure 41(d) are met here, and Davis's costs associated with the State Court Action should be shifted to Voorhees. Rule 41(d) requires a plaintiff to have (1) filed an action, (2) dismissed that action, and (3) filed a subsequent action "based on or including the same claim against the same defendant." *See* Fed. R. Civ. P. 41(d). If those elements are met, a court may order the plaintiff to pay all of part of the costs of the previous action. *Id.*

Here, Voorhees filed an action against Davis for defamation, false light, and tortious interference. *See* **Exhibit 9**, State Court Complaint. After extensive litigation over a bad faith default and Davis filing a Motion to Dismiss, Voorhees voluntarily dismissed that action. *See* **Exhibit 8**, Notice of Dismissal Without Prejudice. Finally, Voorhees re-filed her suit as a counterclaim in this action, asserting the same claims against Davis. *See* Doc. No. 9, Counterclaim. Accordingly, this Court may shift costs under Rule 41(d).

### 4.2  Voorhees's actions warrant cost shifting

This Court has held that "[t]he purpose of Rule 41(d) is to deter forum shopping and vexatious litigation ... and to 'hold [parties] liable for the costs of needless and duplicative litigation, regardless of [its form].'" *Reid v. I.C. Sys.*, 304 F.R.D. 253, 255 (D. Ariz. 2014) (internal citations omitted); *Simeone v. First Bank Nat'l Ass'n*, 971 F.2d 103, 108 (8th Cir. 1992); *Andrews v. America's Living Ctrs., LLC*, 827 F.3d 306, 311 (4th Cir. 2016); *Esquivel v. Arau*, 913 F. Supp. 1382, 1386 (C.D. Cal. 1996). "In analyzing purported violations of Rule 41, the Plaintiff bears the burden to show a 'persuasive explanation' for its course of the litigation, while the Defendant must show only that it 'incurred needless expenditures' as a result of Plaintiff's conduct." *Reid*, 304 at 255 (quoting *Senah, Inc v. Xi'an Forstar S&T Co, Ltd.*, 13-CV-04254-BLF, 2014 U.S. Dist. LEXIS 91930, 2014 WL 3058292 (N.D. Cal. July 3, 2014). "The moving party need not show subjective bad faith on behalf of the dismissing party to be awarded costs." *Ali v. Chex Sys.*, No. 1:17-cv-00850-DAD-BAM, 2017 U.S. Dist. LEXIS 130966, at *5 (E.D. Cal. Aug. 15, 2017) (citing *Esquivel*, 913 F. Supp. at 1388).

Here, nothing prevented Voorhees from pursuing her case in the Arizona Superior Court. Indeed, Voorhees had litigated the case in the Superior Court to the extent that Davis's counsel was required to fly across the country to attend an in-person hearing on the issue of the improper default that Voorhees and her counsel had vigorously pursued. And yet, after Davis filed this action, Voorhees voluntarily dismissed her case, surrendering the very prize she so desperately sought to maintain – her ignoble default against a service member. She then re-filed the same claims here, rendering most of the previous work Davis's counsel had completed needless. Accordingly, Davis asks that this Court find that she is entitled to fee-shifting on her costs.

### 4.3 Attorneys' fees are compensable as costs

#### 4.3.1 While there is a split of authority, no controlling precedent prevents an award of attorneys' fees

The Circuit Courts of Appeal are split with regard to whether attorneys' fees are compensable under Rule 41(d).[2] The Ninth Circuit, however, has not squarely addressed the question and district courts within this Circuit disagree. In *Esquivel v. Arau*, the Central District of California found that Rule 41(d) does authorize a court to issue an award of attorneys' fees, reasoning that the Ninth Circuit has suggested that a court may appropriately condition voluntary dismissal under Rule 41(a)(2) upon payment of attorneys' fees, and generally finding that an award of attorneys' fees logically follows the purpose of Rule 41(d), which is to protect a defendant from unnecessary or vexatious litigation. *See Esquivel v. Arau*, 913 F. Supp. 1382, 1389, 1391 (C.D. Cal. 1996).

The District of Hawaii has similarly and repeatedly found that attorneys' fees are recoverable under Rule 41(d), reasoning that such a result is necessary in order to "deter vexatiousness and forum shopping and to protect defendants from the harassment of repeated lawsuits by the same plaintiff on the same claims..." *Moskowitz v. Am. Sav. Bank, F.S.B.*, No. 17-00299 HG-KSC, 2017 U.S. Dist. LEXIS 179303, at *6-7 (D. Haw. Oct. 30, 2017); *see also Aloha Airlines, Inc. v. Mesa Air Group, Inc.*, No. 07-00007 DAE-KSC,

---

[2] The Second, Eighth, and Tenth Circuits have held that attorneys' fees are properly compensable under Rule 41(d) without limitation. *See Horowitz v. 148 S. Emerson Assocs. LLC*, 888 F.3d 13, 25-26 (2d Cir. 2018); *Robinson v. Bank of Am., Nat'l Ass'n*, 553 F. App'x 648 (8th Cir. 2014); *Meredith v. Stovall*, No. 99-3350, 2000 U.S. App. LEXIS 14553 (10th Cir. June 23, 2000). The Third, Fourth, Fifth, and Seventh Circuits only allow fees where the underlying statute at issue defines costs to include attorneys' fees. *See Garza v. Citigroup Inc.*, 881 F.3d 277, 281–284 (3d Cir. 2018); *Andrews v. America's Living Ctrs., LLC*, 827 F.3d 306, 311 (4th Cir. 2016); *Portillo v. Cunningham*, 872 F.3d 728, 739 (5th Cir. 2017); *Esposito v. Piarowski*, 223 F.3d 497, 500–501 (7th Cir. 2000). The Sixth Circuit has instead found that an award of attorneys' fees is never appropriate under Rule 41(d). *See Rogers v. Wal-Mart Stores, Inc.*, 230 F.3d 868 (6th Cir. 2000).

2007 U.S. Dist. LEXIS 97678, 2007 WL 2320672, at *4 (D. Haw. Aug. 10, 2007); *Uy v. HSBC Bank USA, Nat. Ass'n*, No. CIV. 14-00261 HG, 2014 U.S. Dist. LEXIS 163362, 2014 WL 6471331, at *2 (D. Haw. Nov. 3, 2014), *report and recommendation adopted*, 2014 U.S. Dist. LEXIS 162988, 2014 WL 6471747 (D. Haw. Nov. 18, 2014).

The Eastern District of California also found attorneys' fees to be recoverable under Rule 41(d) and noted that "the trend within [the Ninth Circuit] appears to be to allow the inclusion of attorneys' fees in such cost awards." *Ali v. Chex Sys.*, No. 1:17-cv-00850-DAD-BAM, 2017 U.S. Dist. LEXIS 130966, at *7 (E.D. Cal. Aug. 15, 2017).[3]

The only time the District of Arizona addressed this issue in a reported decision was in 2014, before the trend seemed to break in the other direction. *See Reid v. I.C. Sys.*, where Judge Silver did not award fees under this rule, but acknowledged that courts within the Ninth Circuit remain divided over the issue and cited to cases reaching different conclusions. *See id.* at 255-56. With all respect to Judge Silver, her decision is out of fashion in this Circuit, and does not bind this Court.

Accordingly, while there are contrary non-binding orders, there are significant

---

[3] In support of this assessment, the Eastern District of California noted that <u>attorneys' fees were allowed in</u>: *Platinum Logistics, Inc. v. Platinum Cargo Logistics, Inc.*, No. 3:15-CV-617-CAB-KSC, 2015 U.S. Dist. LEXIS 188333, 2015 WL 11921401, at *5 (S.D. Cal. Sept. 15, 2015); *Simmonds v. Credit Suisse Secs. (USA) LLC*, No. C12-1937 JLR, 2013 U.S. Dist. LEXIS 17560, 2013 WL 501884, at *2 (W.D. Wash. Feb. 7, 2013); *Cheryl Kelmar v. Bank of Am. Corp.*, No. CV 12-6826 PSG (SHx), 2012 U.S. Dist. LEXIS 192224, 2012 WL 12973473, at *1 (C.D. Cal. Oct. 26, 2012); *Aloha Airlines, Inc.*, 2007 U.S. Dist. LEXIS 97678, 2007 WL 2320672 at *4; *Nielson v. Union Bank of Cal., N.A.*, No. CV 02-06942 MMM (CWx), 2003 U.S. Dist. LEXIS 29145, 2003 WL 27374136, at *5-6 (C.D. Cal. Mar. 31, 2003); *EOS GMBH Electro Optical Sys. v. DTM Corp.*, No. SA CV 00-1230 DOC (MLGx), 2002 U.S. Dist. LEXIS 28433, 2002 WL 34536678, at *4-5 (C.D. Cal. Mar. 18, 2002), <u>but not allowed in</u>: *Caldwell v. Wells Fargo Bank, N.A.*, No. 13-CV-01344-LHK, 2014 U.S. Dist. LEXIS 24731, 2014 WL 789083, at *6-7 (N.D. Cal. Feb. 26, 2014); *La Cuna de Aztlan Sites Prot. Circle Advisory Comm. v. U.S. Dep't of Interior*, No. CV 11-00400 DMG (DTBx), 2011 U.S. Dist. LEXIS 161629, 2011 WL 13131114, at *2 (C.D. Cal. Nov. 14, 2011); *Banga v. First USA, N.A.*, No. C 10-00975 SBA (LB), 2010 U.S. Dist. LEXIS 142075, 2010 WL 6184482, at *5-6 (N.D. Cal. Dec. 8, 2010).

numbers of courts within this circuit, and out-of-circuit appellate decisions that support Ms. Davis' request for fees.

### 4.3.2 The purpose of Rule 41(d) supports an award of attorneys' fees

Because there is no binding precedent on the issue of whether attorneys' fees are recoverable under Rule 41(d), and because courts within this Circuit are split as to the issue, this Court is free to consider whether an award of attorneys' fees is appropriate under these facts when considering the purpose of the Rule itself.

The purpose of Rule 41(d) is clearly established at this point, however, which is to deter vexatious and frivolous litigation and to punish forum shopping. *See, e.g., Reid*, 304 F.R.D. at 255; *Simeone*, 971 at 108; *Andrews*, 827 at 311; *Esquivel*, 913 F. Supp. at 1386. The Rule recognizes that defendants may be prejudiced where a plaintiff forces a defendant to litigate in one court and then, after voluntarily dismissing its claims in that court, forcing the defendant to start anew in a separate court.

Here, Voorhees filed a complaint and sought Davis's default in bad faith in Arizona Superior Court. After forcing Davis to extensively litigate every simple issue, including whether Davis should be subject to default despite her military service and Voorhees's efforts to convince the court there that Davis's service was not *real* service.[4] *See, e.g.,* **Exhibit 10**, Response to Motion to Continue. These scorched-earth tactics have no place in litigation in this state, and they should not be excused simply because Voorhees decided to abandon her claims in Superior Court after demonstrating bad faith before one court, wipe the slate clean, and pursue them here. Davis's counsel was required to extensively brief these issues, attend a hearing on the matter in Prescott, and coordinate with Davis's

---

[4] Despite producing ample evidence supporting the fact that Davis was, in fact, engaged in active duty service under bona fide military orders, Voorhees still asserts this misconception. *See* Doc. No. 9 at Pg. 9, ¶ 50.

superiors to ensure that she would not be defaulted in violation of the Servicemember Civil Relief Act. Voorhees could have avoided these fees at any moment by stipulating to set aside her request to default Davis – as no Court in the United States would have permitted such a default to stand, but instead Voorhees calculated that Davis is not wealthy – and required Davis to burn significant resources making a full evidentiary showing to the court, and defending a motion to strike everything she filed. And, before a ruling on default was even made, Voorhees voluntarily dismissed her case. After all, she had her fun and her mission was complete – drain Davis' resources. Voorhees's cut-and-run from the default demonstrates that her arguments in applying for Davis's default were frivolous and were made in bad faith from the beginning. Instead of allowing the Superior Court to judge the issues substantively, Voorhees attempted to ramp up Davis's legal fees by causing her counsel to address dead-end issues and no fewer than four motions to strike Davis's filings.

Rule 41(d) rectifies such prejudice to a defendant by shifting those costs and fees needlessly expended in a prior action to the plaintiff that abandoned the action. Here, Ms. Davis asks this Court for a ruling that the costs and fees she expended in the Superior Court action are recoverable under Rule 41(d). An award of fees is particularly appropriate where, as here, the goal of the plaintiff's actions was to vexatiously multiply the proceedings so that the defendant would be subsumed in legal fees. Accordingly, Davis asks this Court to follow the guiding trend of cases within this Circuit that allow for shifting of attorneys' fees under Rule 41(d).

**4.4    Davis seeks reasonable fees**

Davis is entitled to payment of her costs and attorneys' fees incurred in relation to her defense of the State Court Action in the amount of $36,035.00. Although Davis's attorneys billed a total amount of $54,225.00 in fees, representing 125.9 hours of time spent

on the matter, Davis has voluntarily reduced her request for attorneys' fees by $18,190.00, representing 38.6 hours of work, because the time relates to work product and research that can be reused in responding to Voorhees's counterclaim in this action, or is otherwise not properly compensable. *See* Declaration of Marc J. Randazza ("Randazza Decl.") at ¶ 15. Pursuant to LRCiv 54.2(d)(2) a copy of the written fee agreement between Audrey Davis and Randazza Legal Group, PLLC ("RLG") is attached to this Motion as **Exhibit 11**. Pursuant to LRCiv 54.2(e), a list of attorney time entries and hours worked is attached to this Motion as **Exhibit 12**. Considering the factors set forth in LRCiv 54.2(c)(3) and *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67 (9th Cir. 1975), Davis's requested attorneys' fees are reasonable, and this Court should tax them against Voorhees.

### 4.4.1     The time and labor required of counsel

Davis's attorneys billed a total of 132.0 hours in relation to her defense of claims against Voorhees in the State Court action. *See* Fee Summary, attached as **Exhibit 13**. Of those 132.0 hours, 125.9 were billed to Davis, the balance being written off as a courtesy to Davis. *See id.*; *see also* Randazza Decl. at ¶ 14. For the purposes of this Motion, Davis only seeks reimbursement of 87.3 hours of her attorneys' time. Randazza Decl. at ¶ 16. This means that 38.6 hours of attorney time were reduced from the amounts billed to Davis because such time either related to work product that could be reused in this matter or was otherwise not deemed compensable here. *Id.* at ¶ 15. In reviewing the billing entries for this matter, RLG erred on the side of writing off any time that could be reused for the purposes of this action. *Id.* at ¶ 15.

Davis's counsel expended significant time in the State Court Action. In addition to time that can reasonably attributed to traditional research and drafting, RLG spent a significant portion of their time opposing Voorhees's bad-faith attempts to secure a default

against Davis, despite having knowledge of Davis's military service. *Id.* at ¶ 32. RLG additionally spent significant time responding to Voorhees's numerous motions to strike Davis's filings. *Id.* at ¶ 33. Because of Voorhees's insistence on challenging the bona fides of Davis's military service, RLG was required to spend time coordinating with witnesses, including an on-campus ROTC records specialist and Davis's superior officers. *Id.* at ¶ 34. RLG was required to attend an in-person hearing on the issue of default in Prescott, Arizona. *Id.* at ¶ 35. Much of this time could have been obviated by Voorhees stipulating to setting aside the default sought against Davis. *Id.* at ¶ 36.

### 4.4.2   The novelty and difficulty of the questions presented

Davis's defense in the State Court Action required a novel and nuanced evaluation of the Arizona Rule of Civil Procedure, the Servicemember Civil Relief Act, and defamation, including a public figure and actual malice analysis, a detailed discussion and parsing of statements of opinion as opposed to statements of fact. Most time attributed to solely analyzing and responding to Plaintiff's complaint on the merits is not sought here, however. In opposing the default sought against Davis, RLG was required to research and analyze unique and complex issues relating to the status of military service and how the Servicemember Civil Relief Act applies to members of the U.S. Army's ROTC program. Beyond traditional research, this evaluation required interviews with Davis, her commanding officers, and ROTC personnel.

### 4.4.3   The skill requisite to perform the legal service properly

Davis's defense required specialized knowledge in defamation law and generalized knowledge of litigation.

### 4.4.4   The preclusion of other employment by counsel

RLG is a small firm with only six lawyers. Yet, it is in high demand for this kind of

work. But with only six lawyers, the firm can only take a finite amount of work, and it turns down more clients than it accepts. All of the firm's attorneys and multiple staff members had to dedicate significant time to defending Davis from Voorhees's claims, precluding the firm from taking on other matters paying a certain hourly rate.

### 4.4.5  The customary fee charged in matters of the type involved

As outlined otherwise herein, RLG billed Davis at their hourly rates. Because defamation cases are not predictable in their length or scope, it is difficult to estimate what an ordinary defense would cost.

### 4.4.6  Type of fee contracted between attorney and client

As outlined in the fee agreement attached as **Exhibit 11**, Davis was charged hourly for RLG's services. Although Davis was given a discount for payments made within 14 days, full fees are compensable here at lodestar rates. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Fischer v. SJB-P.D., Inc.*, 214 F.3d 1115, 1119 (9th Cir. 2000).

### 4.4.7  Time limitations imposed by the client or the circumstances

Due to Davis's unavailability stemming from her active duty military service, RLG was not retained by Davis until well after Voorhees sought entry of a default against Davis. *See* **Exhibit 2**, Application for Entry of Default; **Exhibit 11**, Fee Agreement. Due to this timeline, RLG was required to work quickly in briefing issues under the Servicemember Civil Relief Act and arguing the same before the court, while also focusing on Davis's substantive defenses. *See* Randazza Decl. at ¶ 37. The research and briefing required the participation of most of RLG's employees, so that Davis would not be prejudiced by any further delay. *See id.* at ¶ 38.

### 4.4.8  Amount of money involved, and the results obtained

Defamation verdicts can be quite serious, and Voorhees's four-count complaint

against Davis sought both compensatory damages for "damage to reputation, losses in business opportunities, loss of earnings, loss of earning capacity, and a loss of business relations with existing and future business prospects, including potentially ERAU and other academic institutions" (**Exhibit 9** at ¶¶ 52, 77) and personal injury (*id*. at ¶ 66) as well as punitive damages (*id*. at ¶¶ 59, 70, 82). The result of an unfavorable ruling or jury verdict against Davis could have easily led to financial ruin. Moreover, Davis was facing entry of an improper default against her, which could have caused the loss of her ability to defend against Voorhees's claims on the merits.

### 4.4.9 Experience, reputation, and ability of counsel

#### 4.4.9.1 Marc J. Randazza

RLG's managing partner, Marc J. Randazza is an experienced attorney who specializes in First Amendment litigation, and is licensed to practice in the states of Arizona, Nevada, California, Florida, and Massachusetts. Mr. Randazza is a nationally recognized expert on defamation, Anti-SLAPP legislation, and free speech issues, and has assisted the legislatures in Nevada, Pennsylvania, Ohio, and New York on Anti-SLAPP legislation. Randazza Decl. at ¶ 11. He is the author of Nevada Lawyer articles on the Anti-SLAPP statute. *See* Marc Randazza, "Nevada's New Anti-SLAPP Law: The Silver State Sets the Gold Standard," NEVADA LAWYER (Oct. 1, 2013); Marc Randazza, "Nevada's Anti-SLAPP Law Update," NEVADA LAWYER (Sept. 2016). He has also published numerous other law review articles on free speech issues. *See curriculum vitae* of Marc Randazza, attached as **Exhibit 14**.

Randazza has been a commentator for both Fox News and CNN on Free Speech issues. *See* Randazza Decl. at ¶ 9. Mr. Randazza holds a JD from Georgetown University Law Center, a Master's in Mass Communications from the University of Florida (with a

media law focus), and an international degree in the form of an LLM from the University of Turin, Italy, where he wrote and published a thesis on freedom of expression issues. *See* **Exhibit 14**; *see also* Marc J. Randazza, "Freedom of Expression and Morality-Based Impediments to the Enforcement of Intellectual Property Rights, 16 Nev. L.J., 107 (Jan. 15, 2016). Mr. Randazza has been a practicing attorney for nearly 20 years. *See* Randazza Decl. at ¶ 2. Mr. Randazza has taught First Amendment law at the law school level. *See* **Exhibit 14**. And, he gives presentations to attorneys in CLE courses on how to handle Anti-SLAPP litigation. *See id.*

According to the Adjusted Laffey Matrix,[5] attached hereto as **Exhibit 15**, the reasonable billing rate for such an experienced attorney, with no other qualifications, is $764 per hour. This hourly rate is for attorneys of Mr. Randazza's years of experience, but not for attorneys with specialized expertise in First Amendment law and defamation litigation. Mr. Randazza's specialized expertise justifies him billing at even a higher rate than $759 per hour.

### 4.4.9.2   Other Attorneys

Attorney Ronald Green has a JD from University of Pittsburgh School of Law and is a Nevada-licensed attorney with over 21 years of litigation experience. Randazza Decl. at ¶ 18. He has spent most of his career as an intellectual property litigator, and has several

---

[5]   The Adjusted Laffey Matrix has been used by several courts as a guidepost in determining the reasonableness of attorneys' fees. *See, e.g., Recouvreur v. Carreon*, 940 F. Supp. 2d 1063, 1070 (N.D. Cal. 2013); *Salazar v. District of Columbia*, 123 F. Supp. 2d 8, 15 (D.D.C. 2000); *Hash v. United States*, 2012 U.S. Dist. LEXIS 53098, *62 (Apr. 13, 2012); *Young v. Polo Retail, LLC*, 2007 U.S. Dist. LEXIS 27269, *20 (N.D. Cal. Mar. 28, 2007) (noting that "[o]ne reliable source for rates that vary by experience levels is the *Laffey* matrix used in the District of Columbia"); *In re HPL tech., Inc., Secs. Litig.*, 366 F. Supp. 2d 912, 921 (N.D. Cal. 2005) (finding that Laffey matrix is a "well-established objective source for rates that vary by experience"); *Theme Promotions, Inc. v. News Am., Mktg. FSI, Inc.*, 731 F. Supp. 2d 937, 948 (N.D. Cal. 2010) (using Laffey Matrix to determine hourly rates for lodestar analysis and adjusting to account for cost of living index differences).

years of experience with defamation and First Amendment cases. *Id*. According to the Adjusted Laffey matrix, the standard acceptable billing rate for an attorney of his experience is $919 per hour. **Exhibit 15**.

Attorney Shepard earned his JD from Washington University School of Law, is licensed to practice in both Nevada and California, and has approximately 8 years of experience primarily in intellectual property and First Amendment litigation, including Anti-SLAPP cases. Randazza Decl. at ¶ 20. According to the Adjusted Laffey Matrix, the standard acceptable billing rate for an attorney of his experience is $676 per hour. *See* **Exhibit 15**.

Trey Rothell earned his JD from the Florida State University College of Law and is licensed to practice law in the State of Nevada. Randazza Decl. at ¶ 21. Although he was only licensed as an attorney earlier this year, his experience includes working as a law clerk for three years and a paralegal for over four years. Under the Adjusted Laffey Matrix, he is able to command a fee of $381 per hour. *See* **Exhibit 15**.

Because of their limited role in the case, time recorded for attorneys Jay M. Wolman and Zachary I. Gorelick was written off in its entirety. Randazza Decl. at ¶ 19, 22.

### 4.4.9.3  Staff

Cassidy Curran, Precious Carroll, Sam Manco, and Suzanne Levenson have varying experience and are, or were, employed by RLG as paralegals. Randazza Decl. at ¶ 23 - 27. According to the Adjusted Laffey Matrix, they are each able to command a fee of $208 per hour. **Exhibit 15**. Because of her limited role in the case, paralegal Brittani Holt's time was written off in its entirety. Randazza Decl. at ¶ 27.

### 4.4.9.4  RLG's Rates Recognized by Other Courts

Other courts have found the hourly rates of Davis's counsel to be reasonable. The

- 15 -
Motion for Costs and Attorneys' Fees
3:21-cv-08249-DLR

court in *Tobinick v. Novella*, 207 F. Supp. 3d 1332 (S.D. Fla. 2016) approved of hourly rates for attorneys similar to those sought here,[6] and ultimately awarded $223,598.75 to the defendant for fees in connection with the plaintiff's Lanham Act claims. In Las Vegas, courts have similarly upheld rates billed by RLG. *See iQTAXX, LLC v. Boling*, No. A-15-728426-C, 2016 BL 154334 (Nev. Dist. Ct. May 10, 2016), attached as **Exhibit 16** (Mr. Randazza – $650/hr, Mr. Green – $500/hr, Mr. Shepard – $325/hr); *Guo v. Cheng*, No. A-18-779172-C (Eighth Jud. Dist. Ct., Jun. 4, 2020), attached as **Exhibit 17** (Mr. Randazza – $800/hr, Mr. Green – $550/hr, Mr. Shepard – $450/hr, Mr. Rothell (as law clerk) – $200/hr, and Ms. Curran (as paralegal) – $175/hr, for an attorneys' fee award of $184,955.55); *Las Vegas Resort Holdings, LLC v. Roeben*, No. A-20-819171-C (Eighth Jud. Dist. Ct., Dec. 30, 2020) (awarding same rates as in *Guo v. Cheng*).[7]

### 4.4.10   The "undesirability" of the case

Davis is a student and attends school on an ROTC scholarship. Davis is of limited financial means, and defamation defenses can often be very expensive. Although Davis has a valid defense against Voorhees's claims, there is no guarantee as to a recover for a successful defamation defendant. Accordingly, a defense for a defendant such as Davis is not typically desirable to a practicing attorney.

### 4.4.11   The nature and length of the professional relationship between the attorney and the client

Davis was referred to RLG in relation to providing Davis's defense in the State Court Action and retained RLG specifically for the defense of claims brought by Voorhees. RLG's engagement with Davis has since expanded to encompass Davis's claims against

---

[6] The defendant in that matter sought rates of $650/hour for Mr. Randazza, $325/hour for Mr. Shepard, and $180/hour for paralegal time.

[7] Mr. Randazza raised his hourly rate from $800/hr to $900/hr during the 2021 to reflect his growing experience and market demands on his services.

the Defendants in this action.

### 4.4.12   Awards in similar actions

Awards of attorneys' fees on Rule 41(d) motions fluctuate widely considering the scope of the underlying actions. In *Moskowitz v. Am. Sav. Bank, F.S.B.*, the District of Hawaii awarded $17,848.20 in attorneys' fees to the Defendant under Rule 41(d). *See Moskowitz v. Am. Sav. Bank, F.S.B.*, 2017 U.S. Dist. LEXIS 179303, at *25 (D. Haw. Oct. 30, 2017), report and recommendation adopted in *Moskowitz v. Am. Sav. Bank, F.S.B.*, 2017 U.S. Dist. LEXIS 211537 (D. Haw., Dec. 26, 2017). In *MSP Recovery Claims, Series LLC v. Hartford Fin. Servs. Grp., Inc.*, the District of Connecticut awarded $307,210.76 in attorneys' fees and costs under Rule 41(d) relating to four previous actions filed by the plaintiff. *MSP Recovery Claims, Series LLC v. Hartford Fin. Servs. Grp., Inc.*, 2021 U.S. Dist. LEXIS 227755, at *24 (D. Conn. Nov. 29, 2021).

### 5.0   CONCLUSION

In light of the foregoing, Plaintiff Audrey Davis respectfully requests that this Court enter an award granting Davis's entitlement to attorneys' fees and costs recoverable under Federal Rule of Civil Procedure 41(d) in the amount of $36,035.00.

Dated: December 28, 2021.           Respectfully submitted,

/s/ Marc J. Randazza
Marc J. Randazza (AZ Bar No. 027861)
RANDAZZA LEGAL GROUP, PLLC
2764 Lake Sahara Drive, Suite 109
Las Vegas, NV 89117

Attorneys for Plaintiff
Audrey Davis

Case No. 3:21-cv-08249-DLR

**STATEMENT OF CONSULTATION**

I, Marc J. Randazza, certify:

1. On December 20, 2021, I conferred with counsel for Rhondie Voorhees relating to Audrey Davis's entitlement to costs and attorneys' fees relating to the action filed by Voorhees in the Yavapai County Superior Court.

2. After personal consultation and good faith efforts to do so, the Parties have been unable to satisfactorily resolve all disputed issues relating to attorneys' fees.

3. Defendant Voorhees disputes Davis's entitlement to those costs and attorneys' fees and intends to oppose this Motion.

Dated: December 28, 2021.

/s/ Marc J. Randazza
Marc J. Randazza

Case No. 3:21-cv-08249-DLR

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that on this 28th day of December 2021, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I further certify that a true and correct copy of the foregoing document being served via transmission of Notices of Electronic Filing generated by CM/ECF.

/s/ Marc J. Randazza
Randazza Legal Group, PLLC