# **EXHIBIT 9**

State Court Complaint

FILED
DONNA McQUALITY
CLERK, SUPERIOR COURT
05/14/2021  9:48AM
BY: CBAGLEY
DEPUTY

**RM WARNER, PLC**
8283 N. Hayden Road, Suite 229
Scottsdale, Arizona 85258
Daniel R. Warner, Esq. (AZ Bar # 026503)
Email: dan@rmwarnerlaw.com
Raeesabbas Mohamed, Esq. (AZ Bar # 027418)
Email: Raees@rmwarnerlaw.com
Tel: 480-331-9397
Fax: 1-866-961-4984
*Attorneys for Plaintiff*

Case No.: P1300CV202100396
HON. JOHN NAPPER

### IN SUPERIOR COURT OF THE STATE OF ARIZONA
### IN AND FOR THE COUNTY OF YAVAPAI

| | |
|---|---|
| RHONDIE VOORHEES, an individual,<br><br>Plaintiff,<br><br>v.<br><br>AUDREY DAVIS and JOHN DOE DAVIS, husband and wife,<br><br>Defendants. | NO. _____<br><br>**VERIFIED COMPLAINT AND APPLICATION FOR PERMANENT INJUNCTION**<br><br>(Defamation, False Light Invasion of Privacy, Tortious Interference with Current and Prospective Relationships) |

For her claims for relief against Defendants, Plaintiff alleges as follows:

**PARTIES, JURISDICTION AND VENUE**

1. Plaintiff Rhondie Voorhees ("Plaintiff") resides in Yavapai County, Arizona.

2. Defendant Audrey Davis ("Defendant"), at all relevant times hereto, was a resident of Yavapai County, Arizona.

3. Upon information and belief, all acts of Defendant as alleged herein were

1

performed for the benefit of her marital community and/or vice versa with John Doe Davis. Defendant and John Doe Davis are collectively referred to as "Defendants".

4. Defendant's alleged tortious conduct caused things to occur, and Plaintiff to suffer damages, in Yavapai County.

5. The amount in controversy herein exceeds the minimum amount required for jurisdiction in this Court.

6. Upon information and belief, jurisdiction and venue are proper in this Court.

**FACTS**

7. All of the allegations contained within the paragraphs above and below are hereby incorporated by reference as if fully set out herein.

8. Plaintiff is the Dean of Students at Embry-Riddle Aeronautical University in Prescott, Arizona ("ERAU").

9. Defendant is currently a student at ERAU.

10. Upon information and belief, prior to Plaintiff's employment at ERAU, Defendant filed a complaint with ERAU under Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. §1681 et seq.

11. Defendant was displeased with how ERAU investigated the Title IX complaint and/or its findings.

12. In September of 2020, Defendant met with Plaintiff regarding Defendant's concerns.

13. While Plaintiff attempted to be empathetic to Defendant's concerns, Plaintiff made it very clear to Defendant during the meeting that Plaintiff is not, and has never been, involved with overseeing or supervising any Title IX issues at ERAU.

14. Plaintiff drew a diagram for Defendant on a whiteboard depicting the supervision structure of Title IX management on campus.

15. More specifically, Plaintiff drew a chart showing how Plaintiff supervises another administrator on a half-time basis in her role as Associate Dean of Students only, and how this administrator reports to ERAU's legal counsel for her other half-time role as Title IX Coordinator.[1]

16. Plaintiff made it very clear to Defendant that Plaintiff had never read Defendant's entire case file and was unaware of all details concerning Defendant's case.

17. During the meeting, Defendant acknowledged her understanding that Plaintiff has nothing to do with any Title IX matters.

18. Surprisingly, however, on or about February 15, 2021, Defendant published several false and defamatory statements on Change.org (the "Petition"). *See* Petition, attached as **Exhibit 1** hereto.

19. Defendant knowingly made the false implication that Plaintiff was not only responsible for Defendant's investigation taking over 150 days, but that Plaintiff was also responsible for how things were handled post-investigation, even though Defendant was well aware that this was false.

---

[1] The supervision of the Title IX Coordinator has since changed; she is no longer the Associate Dean of Students on a half-time basis and is now the fulltime Title IX Coordinator.

3

20. Defendant also falsely published that "Dean of Students Rhondie Voorhees was asked to leave her last position at University of Montana for the culture she, and other staff members perpetuated regarding how the college system of justice handles rape."

21. The University of Montana stated that they elected not to renew Plaintiff's contract because the Dean of Students position was eliminated. The University of Montana has stated this publicly, along with the fact that Plaintiff remained an employee in good standing throughout and was paid fully for the duration of her contract period.

22. Defendant also falsely published that, "[i]n the total of 80 rapes over the span of three years Dean Dr. Voorhees oversaw, only one was convicted."

23. However, while at UM Plaintiff was never responsible for "overseeing" Title IX matters; throughout her time at UM as Dean of Students, there was a Title IX Coordinator with those responsibilities.

24. Additionally, there was not "80 rapes" in "three years" at the University of Montana at any time while Plaintiff was Dean of Students.

25. In the Petition, Defendant also falsely states that, "Dean Rhondie made Trans student drop out, after coming out. Stating they violated the student conduct after an incident that occurred 6mo prior."

26. Plaintiff vehemently rejects the characterization that she is anti-LGBTQ as Defendant falsely implied. Moreover, the facts of that case, as described in the news article the Defendant linked to in her own petition, indicate that the fact the student was

4

transgender had nothing to do with any student conduct action.

27. The false and defamatory statements contained in the Petition and referenced above will hereinafter collectively be referred to as the "False Statements."

28. In addition to publishing the Petition, on February 15, 2021, Defendant emailed at least 74 students and faculty at ERAU and directed them to "check out this petition and share." *See* Email, attached as **Exhibit 2** hereto.

29. Defendant also posted on Facebook.com the false and defamatory implication that Plaintiff was directly connected to the mismanagement of Defendant's Title IX case at ERAU.

30. Upon information and belief, Defendant also created and disseminated at least four memes of Plaintiff, each containing a False Statement or variation thereof, designed and intended to impeach Plaintiff's ability to adequately perform her duties as the Dean of Students at ERAU.

31. Defendant's conduct was clearly intended to cause harm to Plaintiff's reputation and interfere with her employment with ERAU.

32. After Plaintiff confronted Defendant about why and how the False Statements were not true, Defendant took several days to remove the Petition and the Facebook comment after receiving several demands from Plaintiff.

33. On February 16, 2021, Defendant was also informed by a Title IX investigator at ERAU that Plaintiff "has nothing to do with Title IX here at ERAU or any of its processes."

5

34. However, even after learning from an actual Title IX investigator at ERAU that the Petition contained several false and defamatory statements, Defendant failed to act promptly to remove the Petition.

35. After receiving several demands from Plaintiff to delete the Petition, Defendant finally did so on February 21, 2021.

36. At this point, however, the False Statements began to spread well beyond ERAU, and individuals who were not affiliated with ERAU began to share the Petition on social media and make new negative comments about Plaintiff.

37. It was explained to Defendant the damage she caused and that she would continue to cause if she did not promptly issue a retraction.

38. To date, after giving her well over a month, Defendant has failed and refused to do so.

39. Defendant continues to act with reckless indifference to the harm she continues to cause by not issuing the retraction that she indicated was acceptable to her.

40. While Plaintiff has been extremely empathetic to Defendant under the circumstances, Plaintiff cannot and will not allow Defendant to destroy Plaintiff's reputation, which has taken decades and countless sacrifices to build.

**COUNT I—DEFAMATION AND DEFAMATION PER SE**

41. All of the allegations contained within the paragraphs above and below are hereby incorporated by reference as if fully set out herein.

42. The False Statements made by Defendant are about and concerning

Plaintiff.

43. Without privilege, Defendant communicated the False Statements to various third parties via the Internet and/or intentionally made such statements on the Internet, which were accessible to third parties without password protection.

44. Various third parties have viewed and commented on the False Statements published on the Internet.

45. Defendant also emailed the Petition to at least 74 people, including students, faculty and staff through the campus email, and several people discussed the email with Plaintiff.

46. Given the manner in which the False Statements were published, it is evident that the False Statements have been published to third parties with malice, spite, or ill will and with the intent of causing harm to the reputation, employment and economic interests of Plaintiff.

47. The False Statements published by Defendant impeach the honesty, integrity, or reputation of Plaintiff.

48. The False Statements bring Plaintiff into disrepute, contempt, or ridicule.

49. The False Statements made by Defendant constitute defamation per se and general damages are presumed as a matter of law.

50. In making and publishing the False Statements, Defendant had knowledge of or acted in reckless disregard as to the falsity of the False Statements.

51. Defendant published the False Statements knowing that they would be

7

widely disseminated and result in pecuniary loss, as well as irreparable harm.

52. As a direct and proximate result of Defendant posting the False Statements, Plaintiff has sustained, and will continue to sustain, immediate and irreparable harm and injury including, but not limited to, damage to reputation, losses in business opportunities, loss of earnings, loss of earning capacity, and a loss of business relations with existing and future business prospects, including potentially ERAU and other academic institutions.

53. As a direct and proximate cause of the conduct by Defendant, Plaintiff has suffered, and will continue to suffer, humiliation, extreme emotional distress, anxiety, depression, stomach aches, headaches, lack of sleep, lack of a desire to eat, emotional pain and suffering, and anguish.

54. Upon information and belief, Plaintiff has suffered a direct pecuniary loss as the result of the publication of the False Statements.

55. Plaintiff has suffered general and special damages in an amount to be proven at trial.

56. In making and publishing the False Statements, Defendant acted maliciously, willfully, wantonly, and unlawfully.

57. For such willful and malicious acts, Plaintiff hereby seeks punitive damages in addition to actual damages.

58. Defendant's acts, omissions, conduct and transactions alleged herein were aggravated, outrageous, and guided by evil motives wherein Defendant intended to harm

Plaintiff and/or consciously pursued a course of conduct knowing that it created a substantial risk of significant harm to Plaintiff.

59. To dissuade Defendant from pursuing a similar course of conduct in the future and to discourage other persons from similar conduct in the future, an award of punitive damages should be awarded against Defendants in the sum of sufficient magnitude to punish Defendant and to deter similar conduct by others.

## COUNT II—FALSE LIGHT INVASION OF PRIVACY

60. All of the allegations contained within the paragraphs above and below are hereby incorporated by reference as if fully set out herein.

61. In making and publishing the False Statements, Defendant caused Plaintiff to be portrayed out of context and in false light.

62. The False Statements are about and concerning Plaintiff.

63. Defendant communicated the False Statements to third parties via the Internet and email and/or intentionally made such statements on the Internet accessible to third parties without password protection.

64. Defendant's False Statements are and would be highly offensive to a reasonable person and have been published to third parties with the apparent intent of causing harm to Plaintiff.

65. In making and publishing the False Statements, Defendant knew the False Statements were false or acted in reckless disregard as to the falsity of the False Statements.

9

66. As a direct and proximate cause of the conduct by Defendant, Plaintiff has suffered, and will continue to suffer, humiliation, extreme emotional distress, anxiety, depression, stomach aches, headaches, lack of sleep, lack of a desire to eat, emotional pain and suffering, and anguish.

67. In making and publishing the False Statements, Defendant acted maliciously, willfully, wantonly, and unlawfully.

68. For such willful and malicious acts, Plaintiff hereby seeks punitive damages in addition to actual damages.

69. Defendant's acts, omissions, conduct and transactions alleged herein were aggravated, outrageous, and guided by evil motives wherein Defendant intended to harm Plaintiff and/or consciously pursued a course of conduct knowing that it created a substantial risk of significant harm to Plaintiff.

70. To dissuade Defendant from pursuing a similar course of conduct in the future and to discourage other persons from similar conduct in the future, an award of punitive damages should be awarded against Defendants in the sum of sufficient magnitude to punish Defendant and to deter similar conduct by others.

**COUNT III -- TORTIOUS INTERFERENCE WITH CURRENT AND PROSPECTIVE BUSINESS RELATIONSHIPS**

71. All of the allegations contained within the paragraphs above and below are hereby incorporated by reference as if fully set out herein.

72. Plaintiff has existing business relationships with individuals, entities and organizations relating to her profession in education.

73. Plaintiff has a reasonable expectation of future business relationships with existing colleagues, and others with whom Plaintiff does business or with whom Plaintiff may reasonably expect to do business. This expectancy is based, in part, on the considerable time, energy, and resources it takes to develop the goodwill and reputation associated with Plaintiff's reputation.

74. At all material times hereto, Defendant was aware of Plaintiff's existing and/or prospective business relationships.

75. Upon information and belief, Defendant intentionally and/or purposefully interfered with Plaintiff's existing and prospective relationships by unlawfully making the False Statements.

76. Defendant communicated the False Statements to third parties via the Internet and/or intentionally made such statements on the Internet accessible to third parties without password protection.

77. As a direct and proximate result of Defendant posting the False Statements, Plaintiff has sustained, and will continue to sustain, immediate and irreparable harm and injury including, but not limited to, damage to reputation, losses in business opportunities, loss of earnings, loss of earning capacity, and a loss of business relations with existing and future business prospects, including potentially ERAU and other academic institutions.

78. Plaintiff has suffered general and special damages in an amount to be proven at trial.

79. In making and publishing the False Statements, Defendant acted maliciously, willfully, wantonly, and unlawfully.

80. For such willful and malicious acts, Plaintiff hereby seeks punitive damages in addition to actual damages.

81. Defendant's acts, omissions, conduct and transactions alleged herein were aggravated, outrageous, and guided by evil motives wherein Defendant intended to harm Plaintiff and/or consciously pursued a course of conduct knowing that it created a substantial risk of significant harm to Plaintiff.

82. To dissuade Defendant from pursuing a similar course of conduct in the future and to discourage other persons from similar conduct in the future, an award of punitive damages should be awarded against Defendants in the sum of sufficient magnitude to punish Defendant and to deter similar conduct by others.

### COUNT IV—APPLICATION FOR PERMANENT INJUNCTION

83. All of the allegations contained within the paragraphs above and below are hereby incorporated by reference as if fully set out herein.

84. As a direct and proximate result of Defendant posting the False Statements, Plaintiff has sustained, and will continue to sustain, immediate and irreparable harm and injury including, but not limited to, damage to reputation, losses in business opportunities, loss of earnings, loss of earning capacity, and a loss of business relations with existing and future business prospects, including potentially ERAU and other academic institutions.

85. The False Statements made by Defendant impeach the honesty, integrity, or reputation of Plaintiff.

86. The False Statements are defamatory on their face.

87. There is a substantial risk that unless Defendant's wrongful acts described herein are permanently enjoined, Defendant will continue to irreparably injure Plaintiff by publishing the False Statement and/or publishing additional false and defamatory statements.

88. Plaintiff has no adequate remedy at law; therefore, Plaintiff is entitled to injunctive relief, including, but not limited to, an order requiring Defendant remove the False Statements (if any remain online) and prohibiting Defendant from publishing and/or publicly communicating any false and defamatory statements.

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A. For a permanent injunction compelling Defendants to remove from the Internet all false and defamatory material pertaining to Plaintiff;

B. For a permanent injunction compelling Defendants to remove from the Internet all False Statements pertaining to Plaintiff;

C. For a permanent injunction enjoining Defendants from publishing the False Statements and/or any other defamatory material to any third party;

D. For general damages in an amount to be proven at trial;

E. For special damages in an amount to be proven at trial;

F. For punitive damages in an amount to be proven at trial;

G. For Plaintiff's costs herein incurred;

H. For Plaintiff's reasonable attorneys' fees incurred herein;

I. For interest on the foregoing attorneys' fees and court costs at the statutory rate from the date of judgment until paid;

J. For prejudgment and post-judgment interest on all damages at the highest rate allowed by law from the date of injury until paid in full; and

K. For such other and further relief as the Court deems just and proper.

RESPECTFULLY SUBMITTED this 14th day of May, 2021.

                **RM WARNER, PLC**

By:   /s/ Daniel R. Warner, Esq
       Daniel R. Warner, Esq.
       8283 N. Hayden Road Suite 229
       Scottsdale, Arizona 85258
       *Attorneys for Plaintiff*