Marc J. Randazza (AZ Bar No. 027861)
RANDAZZA LEGAL GROUP, PLLC
2764 Lake Sahara Drive, Suite 109
Las Vegas, NV 89117
Telephone: 702-420-2001
ecf@randazza.com

Attorneys for Plaintiff
Audrey Davis

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Audrey Davis,<br>　　　Plaintiff /<br>　　　Counterclaim-Defendant,<br>v.<br>Rhondie Voorhees,<br>　　　Defendant /<br>　　　Counterclaim-Plaintiff,<br>and,<br>ERAU College Board of Trustees; ERAU;<br>and Tyler Smith,<br>　　　Defendants. | Case No. 3:21-cv-08249-DLR<br><br>**PLAINTIFF'S MOTION TO DISMISS DEFENDANT RHONDIE VOORHEES'S COUNTERCLAIM FOR FAILURE TO STATE A CLAIM** |

Plaintiff Audrey Davis hereby files her Motion to Dismiss Defendant Rhondie Voorhees's Counterclaim (Doc. No. 9) for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6).

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**1.0   INTRODUCTION**

Defendant Rhondie Voorhees originally filed her claims in Arizona state court for the purpose of intimidating Ms. Davis from criticizing her role in a Title IX matter at

Embry-Riddle Aeronautical University ("ERAU"). After Ms. Davis filed this suit, Voorhees voluntarily dismissed her claims in the state court action only to refile them here. They are just as unsupportable now as they were before, even after Voorhees received explicit notice as to how they are legally unsupportable. The Court should dismiss Voorhees's counterclaim with prejudice.

**2.0   STATEMENT OF RELEVANT FACTS**

Plaintiff Audrey Davis is a student at Embry-Riddle Aeronautical University ("ERAU"), while Defendant Rhondie Voorhees is the Dean of Students at ERAU. (*See* Rhondie Voorhees Counterclaim, Doc. No. 9, at ¶¶ 7-8.) Voorhees alleges that, prior to her employment at ERAU, Ms. Davis filed a complaint with ERAU under Title IX of the Education Amendments of 1972 ("Title IX") and that Ms. Davis was displeased with ERAU's investigation of that Title IX complaint. (*See id.* at ¶¶ 9-10.)

Voorhees additionally alleges that she met with Ms. Davis about the Title IX complaint in or about September of 2020. Specifically, Ms. Davis wanted to discuss the fact that her abuser had been assigned to attend the same class as her and that ERAU could improve its Title IX processes and procedures. (*See* Exhibit 2 to Counterclaim, Doc. No. 9-3.) Voorhees alleges that she told Ms. Davis that she had nothing to do with "overseeing or supervising any Title IX issues at ERAU." (Doc. No. 9 at ¶¶ 11-12.) Following that meeting, Voorhees alleges that, on February 15, 2021, Ms. Davis "published several false and defamatory statements" in a petition posted on Change.org (the "Petition"). (*See id.* at ¶ 18; Doc. No. 9-3.)[2]

---

[2] Voorhees does not explain why Ms. Davis should have taken her at her word, nor does Plaintiff explain how a Dean of Students could have "absolutely no part" in Title IX matters. Any reasonable person would presume that the Dean of Students would have at least *some* part in matters involving two students. In fact, any reasonable person would presume that "the buck stops here" would be figuratively displayed on the Dean's desk.

Voorhees alleges that these statements in the Petition were false and defamatory:

- That Ms. Davis falsely stated that Voorhees was responsible for the length of her Title IX investigation and for how things were handled post-investigation (*id.* ¶ 19);

- That Voorhees was asked to leave her position at the University of Montana for creating a culture regarding how the university handled rape, when the University of Montana allegedly only terminated her because the position was eliminated (*id.* at ¶¶ 20-21);

- That there were 80 rapes while Voorhees oversaw students at the University of Montana with only one convicted (*id.* at ¶ 23);

- That Voorhees was responsible for overseeing Title IX matters at the University of Montana (*id.* at ¶ 24); and

- That Voorhees forced a trans student to drop out after the student came out, when the trans student was dismissed for other reasons (*id.* at ¶¶ 27-28).

Voorhees additionally accuses Ms. Davis of emailing the Petition to 74 students and faculty at ERAU (*id.* at ¶ 30), of posting on Facebook that Voorhees mismanaged her Title IX case (*id.* at ¶ 31), and of creating "at least four memes" about Voorhees. (*Id.* at ¶ 32). Voorhees acknowledges that Ms. Davis deleted the Petition on February 21, 2021, less than a week after it was created. (*Id.* at ¶ 37.)

In the Petition, Ms. Davis discloses in plain English, "I am biased on this topic" and suggested that readers do their "own research." (Doc. No. 9-3.) Ms. Davis also posted links to news articles and to a Supreme Court brief from which she drew her conclusions. (*See id.*) These links are in the Petition and included the following:

- Voorhees made a trans student drop out of the University of Montana after the student came out, accusing the student of violating the code of conduct six months earlier. (https://billingsgazette.com/news/state-and-regional/montana/transgender-student-drops-out-alleges-discrimination-at-missoula-college/article_a57b17cd-4b32-5be1-8a61-3201439a137d.html);[3] and

---

[3] This link resolves to an article by Keila Szpaller for the *Billings Gazette* titled "Transgender student drops out, alleges discrimination at Missoula College," dated August 9, 2015, attached as **Exhibit 1**.

- Voorhees was asked to leave the University of Montana (https://missoulian.com/news/local/university-of-montana-dean-of-students-asked-to-leave/article_cbcd2362-f723-5c73-9e8f-e88a6835d705.html).[4]

Thus, at least two of the allegedly defamatory statements made by Ms. Davis were included in news articles from reputable sources, upon which Ms. Davis had every right to rely. Ms. Davis took reliable news accounts, court briefing and other reliable information and shared it with her classmates, showing the receipts, and exhorting them to keep her bias in mind and to explore her sources for themselves.[5]

With regard to Ms. Davis's allegedly defamatory statements in the Petition regarding Voorhees's oversight of Ms. Davis's Title IX complaint, Voorhees states that Ms. Davis "falsely implied" that Voorhees was "responsible for Davis's investigation taking over 150 days" and for "how things were handled post-investigation." (Doc. No. 9 at ¶ 19.) However, Voorhees attached the Petition to her Counterclaim. It does not say what she alleges it says. Her Counterclaim contains material falsehoods, and she should not enjoy any benefit from telling such falsehoods.

---

[4] This links resolves to an article by Kelia Szpaller for the *Missoulian* titled "University of Montana Dean of Students asked to leave," dated August 20, 2018, attached as **Exhibit 2**.

[5] The Court may properly consider these documents and others cited in Defendant's petition without converting this motion to a motion for summary judgment, as the petition is attached to the Complaint and documents attached to or referenced in a complaint are not "outside the pleadings" for purposes of a Rule 12(b)(6) motion. *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005). Furthermore, a court may consider documents that are matters of public record on a Rule 12(b)(6) motion. *See Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988). Finally, a court may consider matters that are central to a complaint even if not attached to it, such that "'the plaintiff obviously is on notice of the contents of the document, and the need for a chance to refute evidence is greatly diminished.'" *Noel v. Mitsubishi UFJ Fin. Grp. Inc.*, No. CV-18-03253-PHX-SPL, 2019 U.S. Dist. LEXIS 178989, *8 n.3 (D. Ariz. Oct. 16, 2019) (quoting *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196-97 (3d Cir. 1993)).

In her Petition, Ms. Davis states that she met with Voorhees because she was placed in a class with her abuser. She did not state that Voorhees conducted the investigation or was responsible for its aftermath. Ms. Davis specifically wrote:

> When I had a meeting with the Dean, I told her how it was very traumatic to see that I was put in a class with my abuser and suggested that there be an early warning system put in place for both parties, so they don't have the possibility of showing up to class and being forced to interact. She said that would take a lot of work, and never got back to me.

(Doc. No. 9-3.) Ms. Davis did not say that Voorhees was "responsible for her Title IX investigation" nor its aftermath. She merely stated that she made suggestions to Voorhees for making ERAU's Title IX process better and that Voorhees never got back to her. Notably, Voorhees does not allege that this was defamatory.

And while Voorhees seems to take great offense at anyone thinking she has anything to do with Title IX issues, Ms. Davis's meeting with Voorhees to discuss being placed in a class with her abuser **fits squarely within Voorhees's job description**. The ERAU website states that Voorhees, as Dean of Students, is responsible for "providing services, resources, and advocacy for all of our students to promote an ethical community through fundamental fairness, mutual respect, personal accountability, and responsible citizenship." (*See* Meet the Dean of Students, Embry-Riddle Aeronautical University Website, attached as **Exhibit 3**.)[6] Ms. Davis came to Voorhees to discuss her specific issues and gave Voorhees suggestions for improvements. However, Dean Voorhees ignored her concerns, an assertion that Voorhees does not contest.

Moreover, several of the articles Ms. Davis cited in her Petition themselves relied upon a 2015 nationally bestselling book published by well-known investigative reporter

---

[6] Available at: https://prescott.erau.edu/campus-life/dean-of-students (last accessed Dec. 28, 2021).

Jon Krakauer entitled *Missoula: Rape and the Justice System in a College Town*. Mr. Krakauer's book contradicts Voorhees's assertions that she did not oversee Title IX claims at the University of Montana. Mr. Krakauer discusses a Title IX case at the University of Montana where an independent consultant found that the accused's testimony was not credible and that there was clear and convincing evidence that he raped the victim. (*See* Krakauer, John, *Missoula: Rape and the Justice System in a College Town*, at 206 (2015)). However, Voorhees "rejected the independent consultant's determination" and concluded that the accused was not guilty of rape pursuant to Title IX. (*See id.* at 207.)  This garnered widespread criticism.  Nobody has so much as suggested that Krakauer's book was wrong, or even unreliable. Further, a reasonable person like Ms. Davis has a right to presume that a best-selling book went through an editorial process to vet its facts.  But, Dean Voorhees understands that bullying a best-selling author and bullying one of her students take different levels of courage.  She clearly only possesses the lower tier of this quality.

Moreover, while Voorhees claims *in this lawsuit* that it was defamatory to say that she oversaw Title IX claims at the University of Montana, she made very different claims in a lawsuit filed in the U.S. District Court for the District of Montana entitled *Cole, et al. v. Montana Univ. Sys.*, Case No. CV-21-88-M-BMM. On August 19, 2021, the plaintiffs, which include Voorhees, filed a First Amended Complaint, attached as **Exhibit 4**. In that pleading, Voorhees alleges:

- That as Dean of Students at the University of Montana, she was "a member of the Title IX case review team" (**Exhibit 4** at ¶ 114);

- That she was hired by the University of Montana while the federal government investigated the school's sexual assault scandal, participated in policy revisions to the school's Title IX policy, and "evaluated past and present student cases" regarding Title IX (*id.* at ¶¶ 117-118);

- That the University of Montana minimized or disregarded her Title IX reports to the university (*id.* at ¶ 120);

- That her efforts to "fulfill her obligations under Title IX" led to the elimination of her position and employment with the University of Montana (*id*. at ¶ 123);

- That the elimination of her position was a "pre-text" to terminating her employment (*id*. at ¶ 125); and

- That the University of Montana "unnecessarily humiliated" Plaintiff when it terminated her position and retaliated against her for her handling of Title IX issues (*id*. at ¶ 126).

Therefore, in this case, Voorhees alleges that she had no Title IX oversight responsibilities at the University of Montana.[7] Meanwhile, in the case filed in Montana on or about May 14, 2021, she contradicts these allegations. Perhaps most egregiously, in the Montana action, she states that ***"[a]s a result of [the University of Montana's] mishandling of Dr. Voorhees' termination, she has been defamed by a student in Arizona and her reputation and career have been forever tarnished."*** (*Id*. at ¶ 130) (emphasis added.) In other words, Voorhees admits that Ms. Davis was relying upon statements made by the University of Montana when she allegedly defamed Voorhees, negating any possibility that Ms. Davis published with actual malice. There is no reason that Ms. Davis should not have been permitted to rely upon assertions made by the University of Montana. In fact, if Ms. Davis's petition was false, then it must mean that Dean Voorhees has been less than candid with the District of Montana. She cannot be telling the truth in both cases.

Nothing Ms. Davis did defamed Voorhees. She was relying upon reports from a major American university (at Voorhees's own admission) and upon reputable sources about Voorhees – all of which comported with her personal experiences with her.

---

[7] What is surprising is that Dean Voorhees has seen all these arguments before. Ms. Davis previously moved to dismiss them when this case was in Yavapai County. Why she still chooses to argue one thing in one case and the opposite in another is unclear. But, what is clear is that this case is absurdly weak and should be dismissed at once.

## 3.0 LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009). Voorhees's Counterclaim fails to do so.

## 4.0 LEGAL ARGUMENT

### 4.1 Voorhees Fails to State a Claim for Defamation

Arizona courts consider three factors to determine if a statement can be defamatory: "(1) whether the words would be understood in a defamatory sense, (2) whether the statements were made in public debate, a heated labor dispute, or other circumstances in which fiery rhetoric is expected, and (3) whether the language of the statement is more likely to be understood as a statement of opinion than of fact." *Amcor Inv. Corp.*, 158 Ariz. at 570 (*citing Lewis v. Time, Inc.*, 710 F.2d 549, 553 (9th Cir. 1983)). Further, "statements that can be interpreted as nothing more than rhetorical political invective, opinion, or hyperbole are protected speech, but false assertions that state or imply a factual accusation may be actionable." *Desert Palm Surgical Group, PLC v. Petta*, 343 P.3d 438, 449 (Ariz. Ct. App. 2015) (*summarizing Yetman v. English*, 168 Ariz. 71 (1991)). A party disclosing the facts on which they based their conclusions also prevents a statement from being actionable. *See Partington v. Bugliosi*, 56 F.3d 1147, 1156-57 (9th Cir. 1995) (adopting reasoning of other circuits "that when an author outlines the facts available to him, thus making it clear that the challenged statements represent his own interpretation of those facts and leaving the reader free to draw his own conclusions, those statements are generally protected by the First Amendment").

### 4.1.1 Voorhees is a public figure and is subject to the "actual malice" standard, which she cannot meet.

Because of its potential to chill public debate, "the First Amendment demands more stringent proof of wrongdoing when (public figures) sue their detractors." *Flowers v. Carville*, 310 F.3d 1118, 1129-30 (9th Cir. 2002); *see Lewis v. Oliver*, 178 Ariz. 330, 675 (Ct. App. 1993). A public figure is anyone who "voluntarily injects himself or is drawn into a particular public controversy." *Carville*, 310 F.3d at 1129 (*citing Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 351 (1974)) (emphasis added). A public figure plaintiff must show that the defendant acted with "actual malice" – "that is 'knowledge that [a statement] was false' or 'reckless disregard of whether it was false or not.'" *Id.* at 1129 (*citing N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 280 (1964)). "This burden must be satisfied by clear and convincing evidence." *Id.* at 1129 (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255-56 (1986)); *see Bose Corp. v. Consumers Union*, 466 U.S. 485, 511 (1984); *see also Morris v. Warner*, 160 Ariz. 55, 63 (Ct. App. 1988). In opposing a Rule 12(b)(6) motion to dismiss, a plaintiff must allege facts that plausibly assert the conclusion of actual malice. *See Biro v. Condé Nast*, 807 F.3d 541, 545-46 (2d Cir. 2015). A plaintiff must provide "specific allegations of a speaker's mindset" which must satisfy "a 'demanding burden' because 'general allegations that a defendant should have known or should have investigated the truth of his or her statements do not adequately plead actual malice.'" *Resolute Forest Prods v. Greenpeace Int'l*, 2017 U.S. Dist. LEXIS 170927, *22 (N.D. Cal. Oct. 16, 2017) (quoting *Wynn v. Chanos*, 75 F. Supp. 3d 1228, 1239 (N.D. Cal. 2014)).

Determining whether a plaintiff is a public figure "is not a matter of state substantive law, but rather a pure constitutional question." *Makaeff v. Trump Univ., LLC,* 715 F.3d 254, 270 (9th Cir. 2013) (*citing Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 351-52 (1974)). In considering whether a party is a limited purpose public figure, courts will consider whether

(i) a public controversy existed when the statements were made, (ii) whether the alleged defamation is related to plaintiff's participation in the controversy, and (iii) whether the plaintiff voluntarily injected herself into the controversy for the purpose of influencing the controversy's ultimate resolution. *See id.* at 266; *see also Dombey v. Phoenix Newspapers*, 150 Ariz. 476, 483 (1986).

Here, Plaintiff Voorhees cannot be credibly called a "general purpose public figure." She is not famous throughout the country across all strata of society. However, she is certainly a limited purpose public figure. The mayor of a small town is not a general-purpose public figure, but would certainly be a public figure for any matter involving town government. *See, e.g., Fasi v. Gannett Co.*, No. 96-15129, 1997 U.S. App. LEXIS 12445, *2 (9th Cir. May 27, 1997) (mayor of Honolulu was public figure in defamation case brought against defendants who claimed he committed extortion and blackmail). Similarly, if there is a major controversy in that town's government, then that mayor's notoriety and zone of "public figure status" would expand. *Id*. Or, even if a person is not at all in government, but merely happens to be sucked into a public controversy, they will be a public figure for the purposes of that particular controversial subject, as a limited purpose public figure is a person who has been "drawn into a particular public controversy." *Flowers*, 310 F.3d at 1129.

Just by virtue of being the dean of a major university, Voorhees is a public figure when it comes to any matters of governance of that university. *See, e.g., Hicks v. Stone*, 425 So. 2d 807, 813, 1982 La. App. LEXIS 8850, *15 (Oct. 21, 1982) (former dean held to be public figure with regard to his involvement with the university); *Byers v. Southeastern Newspapers Corp.*, 288 S.E.2d 698, 701 (Ga. Ct. App. 1982) (Plaintiff, a college dean, was held to be "at the very least, a limited-purpose 'public figure'"); *Van Dyke v. Katz*, 663 P.2d

52 (Utah 1983) (college director of financial aid was a public official due to ability to direct state funds and he was in a position that invited public scrutiny); *Walko v. Kean College of N.J.*, 235 N.J. Super. 139, 561 A.2d 680 (1988) (assistant dean was a limited-purpose public figure in the context of the college community); *Lewis v. Univ. Chronicle*, 2008 Minn. App. Unpub. LEXIS 210 (Jan. 25, 2008) (College professor was a public figure when there was a public controversy pertaining to claims of anti-Semitism, and discrimination at the university); *Johnson v. Board of Junior College District # 508*, 31 Ill.App.3d 270, 334 N.E.2d 442, 447 and n. 1 (App. Ct. 1975) (plaintiff college teachers "clearly had become public figures within the Wilson College Community"); *Della-Donna v. Gore Newspapers Co.*, 489 So. 2d 72, 77, 1986 Fla. App. LEXIS 7454, *16 (Fla. 4th DCA 1986) (private university trustee found to be public figure); *Mzamane v. Winfrey*, 693 F. Supp. 2d 442, 504-505, 2010 U.S. Dist. LEXIS 23491, *133 (E.D. Pa. 2010) (Plaintiff is a limited purpose public figure with respect to statements involving the administration of a South African private girls' school as the statements related to the safety and treatment of the students). Dean Voorhees is not merely a public figure when it comes to her tenure at the University of Montana, but nearly any controversy involving students at Embry Riddle would find the Dean of Students at that university as a limited purpose public figure.

The controversy here is how Dean Voorhees handled a sexual assault scenario at Embry Riddle. Her handling of this kind of thing at the University of Montana is certainly fair game. Her handling of Title IX matters at the University of Montana was covered extensively in media and in a nationally bestselling book by Jon Krakauer. She has filed two lawsuits – this one and the Montana federal case against the University of Montana – touting her knowledge and importance in Title IX disputes. (*See* **Exhibit 4**.) She can hardly

- 11 -
Motion to Dismiss Counterclaim
3:21-cv-08249-DLR

claim that her record on Title IX issues is not a matter of public concern, especially when tied to a Title IX issue at one of the largest educational institutions in Arizona.

Additionally, Voorhees has inserted herself into Title IX discussion and claims to be instrumental with regard to the current interpretation of Title IX, alleging in the Montana case that she participated in drafting the "last historical reflection on Title IX" in 2002. (**Exhibit 4** at ¶ 113.) She additionally alleged in that lawsuit that she was a key member of the Title IX team at the University of Montana, and her tenure was at a time when the university was in the news for its allegedly faulty Title IX investigations and when a bestselling author was writing a book about Title IX violations at the University of Montana. (*See id.* at ¶ 114.)

Furthermore, the issues raised in Ms. Davis' Petition relate to matters of public debate. Title IX and the subject of sexual assault on college campuses have been at the forefront of public discourse for years. In the Montana First Amended Complaint, Plaintiff Voorhees acknowledges that the University of Montana's adherence to Title IX resulted in vigorous public debate and the publication of Mr. Krakauer's bestselling book. (*See* **Exhibit 4** at ¶¶ 25-28.) She can hardly now claim to be a mere private figure on this subject. In fact, she should be estopped from asserting such a position, unless she is prepared to stipulate that she was not truthful in the Montana litigation.

For purposes of the subject matter of this litigation, Plaintiff Voorhees is a limited purpose public figure. She voluntarily interjected herself into a fiercely public debate. She is the de-facto "mayor" of a population at Embry Riddle. She can claim that she has no involvement in applying Title IX policies, but this is like a mayor claiming that they have no part in law enforcement issues, when the chief of police reports to that mayor. If the

buck does not stop with the Dean, with whom does it stop? If it is not obvious that it stops with the Dean, it is at least a reasonable presumption by Ms. Davis, and not actual malice.

Voorhees is a public figure many ways over, in this geographic area, in the context of the Embry-Riddle community, and in some capacity, nationwide when it comes to Title IX issues. Therefore, she must meet the actual malice standard, by clear and convincing evidence, in order to prevail. The Counterclaim, plus documents of which the Court may take judicial notice[8] or otherwise may consider on a motion to dismiss, demonstrate that she could never meet that standard.

Ms. Davis read reliable news articles and a best-selling book when examining Dean Voorhees's record. Voorhees herself alleges that Ms. Davis relied upon statements made by the University of Montana – a governmental entity – when she allegedly defamed Dean Voorhees. When Ms. Davis applied this public information, this governmental and journalistically vetted information, she applied it to her own personal experience – which was consistent with Dean Voorhees' existing reputation as someone who is soft on campus sexual assault and arrogantly dismissive toward students.

Ms. Davis' statements regarding the results of her meeting with Voorhees are not defamatory. Ms. Davis did not state or imply that Voorhees handled her Title IX investigation or its aftermath (*although, even if she did, such a statement would not be capable of a defamatory meaning* – unless a mayor would be deemed to have absolutely nothing to do with a small town's police issues, for example). Rather, Ms. Davis only states in the Petition that she did not like being in a class with her abuser and provided suggestions

---

[8] Fed. R. Evid. 201(b) permits a court to take judicial notice "of a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."

for ensuring that does not happen to other people. She further states that Voorhees ignored her suggestions, which Voorhees does not contend was defamatory.

Voorhees only successfully alleges that Ms. Davis knowingly falsely stated that Voorhees was "involved in" Title IX activity. However, that statement on its own could not possibly be defamatory as a matter of law. Voorhees acknowledges that Ms. Davis did not know her statements about Voorhees's responsibilities regarding Title IX at ERAU were false when made.[9] Further, it bends the mind to accept the proposition that the Dean of Students is entirely insulated from, and without any power or influence over, Title IX issues. Even if Embry-Riddle is the one college in the country where the Dean is somehow walled off from this important campus issue, it would not be a "reckless disregard for the truth" to presume that she must have *some* influence over that process. Voorhees is not the janitor, nor a grad student teaching assistant – she is the *Dean of Students*.

Finally, in the Petition, Ms. Davis admitted that she was "biased" and encouraged everyone receiving the Petition to do independent research. She did not tell her readers to rely upon what she said, acknowledging that her bias may have affected her words. When deciding whether a statement is one of fact or opinion, courts afford "great weight to the context in which the statements are made." *Amcor Inc. Corp.*, 158 Ariz. at 570-71 (Ct. App. 1988). In *Rogers v. Mroz*, for example, the court found that political ads were more likely to be viewed as statements of pure opinion precisely because "reasonable listeners of such content 'expect to hear a great deal of opinion'" rather than fact. 250 Ariz.319, 331 (Ct. App. 2020). While Ms. Davis's petition may not have been a campaign ad, she explicitly

---

[9] Voorhees also notes that Ms. Davis took down the petition when told they were false. However, she is lying, again. This was a "subsequent remedial measure" which Ms. Davis did only to try to avoid litigation, and thus it should not be considered by this Court to be any kind of an admission as to liability. *See* Fed. R. Evid. 407. However, the Court can (should damages ever be an issue) consider this as a mitigating factor.

told her audience that she was biased, thus setting expectations of factual objectivity comparable to a campaign ad. Further, when a sexual assault victim is advocating for herself, she should be expected to engage in some "firey rhetoric." If such rhetoric is expected in a labor dispute, it should be expected tenfold when someone is commenting on dissatisfaction with how a public figure handled an event so rife with trauma as this.

### 4.1.2   Ms. Davis' statements are fair reports of other commentaries on Voorhees's actions.

Even if Voorhees's factual assertions could facially meet her pleading burden for her defamation claim, "[r]eliance on reports of reputable news organizations cannot constitute actual malice as a matter of law." *Flowers,* 310 F.3d at 1130; *see Wilson v. Phoenix Newspapers Inc.*, 2021 Ariz. App. Unpub. LEXIS 155, *23-26 (Ct. App. Feb. 10, 2021) (finding lack of actual malice where defendant's pre-publication investigation included reliance on contemporaneous news articles). A defamation defendant against a public figure plaintiff cannot be liable unless she "knew the news reports were probably false or had some obvious reason to doubt their accuracy." *Id.* at 1129; *see also Mt. Hood Polaris, Inc. v. Martino (In re Gardner)*, 563 F.3d 981, 989 (9th Cir. 2009); *Dombrey v. Phoenix Newspapers*, 150 Ariz. 476, 488 (1986) (finding that "failure to investigate, sloppy investigation, poor reporting practice and the like are not per se actual malice"); *Scottsdale Pub. v. Superior Court*, 159 Ariz. 72, 86 (Ct. App. 1988) (noting that actual malice is subjective and "is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing").

Ms. Davis' alleged statements about Plaintiff's Title IX responsibilities at the University of Montana came from reputable newspapers – The Missoulan and Billings Gazette – and a nationally bestselling book by a world-renowned author. Ms. Davis had the right to trust these sources. *Wilson*, 2021 Ariz. App. Unpub. LEXIS 155 at *23-26.

Finally, in the subsequently filed Montana case, even Voorhees acknowledges that Ms. Davis was relying upon statements from the University of Montana when she allegedly defamed Voorhees. This is what Voorhees pled in that Montana case:

> 130. As a result of Defendants' mishandling of Dr. Voorhees's termination, she has been defamed by a student in Arizona and her reputation and career have been forever tarnished.

(**Exhibit 4** at ¶ 130.) Given that no cognizable theory exists as to why Ms. Davis should not have been permitted to rely upon reputable news sources and Voorhees's former employer, a nationally known university, Voorhees's defamation claim should be dismissed with prejudice.

### 4.2     Voorhees Fails to State a Claim for False Light

Pursuant to Arizona common law, the tort of false light invasion of privacy occurs when the defendant "gives publicity to a matter concerning another that places the other before the public in a false light." *Godbehere v. Phoenix Newspapers*, 162 Ariz. 335, 338, 783 P.2d 781, 784 (Ariz. 1989). The defendant is liable if (i) the false light would be offensive to a reasonable person, and (ii) the defendant had knowledge of or acted in reckless disregard as to the falsity of the publicized matter. *See id.* Unlike defamation, false light protects the plaintiff's mental and emotional interests, not her reputation or good name. *See id.* at 341; 783 P.2d at 786. To qualify, the publication must involve a major misrepresentation of the plaintiff's character, history, activities, or beliefs, not merely minor or unimportant inaccuracies. *See id.*

In the Montana matter, Voorhees admitted that Ms. Davis took her statements from the University of Montana's mishandling of her termination. (**Exhibit 4** at ¶ 130.) Given

that there exists no reason why Ms. Davis should not have been permitted to rely upon the statements of a major educational institution run by the Montana Government, she could not have acted with the requisite "knowledge" or "reckless disregard" with regard to the truth or falsity of her statements. *Wilson*, 2021 Ariz. App. Unpub. LEXIS 155 at *23-26.

Moreover, most of Ms. Davis's allegedly untrue statements were taken from newspapers and from a nationally best-selling book by a famous author. The only untrue statement that Defendant Davis *might* have made is that Plaintiff oversaw ERAU's Title IX program. Even if that was false, it would not be offensive to a reasonable person to say that someone held a prominent position at a university.

## 5.0   CONCLUSION

For the foregoing reasons, the Court should dismiss Voorhees's Counterclaim with prejudice in its entirety. Voorhees has had the opportunity to amend her complaint, but left the same defects in it. She should not be given a third opportunity to stretch this case out. Further, this Court should grant Davis her attorneys' fees under A.R.S. § 12-349 and under its inherent power.

## CERTIFICATION OF CONFERRAL

Counsel for Ms. Davis conferred via text message with Voorhees's counsel regarding the relief requested in this Motion. The parties were unable to come to an agreement that the Counterclaim was curable by any permissive amendment.

Dated: December 28, 2021.          Respectfully submitted,

/s/ Marc J. Randazza
Marc J. Randazza (AZ Bar No. 027861)
RANDAZZA LEGAL GROUP, PLLC
2764 Lake Sahara Drive, Suite 109
Las Vegas, NV 89117

Attorneys for Plaintiff
Audrey Davis

Case No. 3:21-cv-08249-DLR

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on 28th day of December 2021, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I further certify that a true and correct copy of the foregoing document being served via transmission of Notices of Electronic Filing generated by CM/ECF.

/s/ Marc J. Randazza
Randazza Legal Group, PLLC