**RM WARNER, PLC**
8283 N. Hayden Road, Suite 229
Scottsdale, Arizona 85258
Daniel R. Warner, Esq. (AZ Bar # 026503)
Email: dan@rmwarnerlaw.com
Raeesabbas Mohamed, Esq. (AZ Bar # 027418)
Email: Raees@rmwarnerlaw.com
Tel: 480-331-9397
Fax: 1-866-961-4984
*Attorneys for Rhondie Voorhees*

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Audrey Davis, an individual, | NO. 3:21-cv-08249-PCT-DLR |
| Plaintiff, | |
| v. | |
| Rhondie Voorhees, personally and as Dean of Students at Embry-Riddle Aeronautical University; The Embry-Riddle Aeronautical University Board Of Trustees; Embry-Riddle Aeronautical University; and Tyler Smith, an individual, | **DEFENDANT RHONDIE VOORHEES'S RESPONSE AND OBJECTION TO PLAINTIFF'S MOTION FOR RULE 41(d) COSTS AND STAY OF PROCEEDINGS ON COUNTERCLAIM** |
| Defendants. | **Oral Argument Requested** |
| Rhondie Voorhees, an individual | |
| Counterclaimant, | |
| v. | |
| Audrey Davis, an individual, | |
| Counterdefendant. | |

Defendant/Counterclaimant Rhondie Voorhees ("Dr. Voorhees"), by and through undersigned counsel, respectfully requests that the Court enter an order denying Plaintiff's

1

Motion for Rule 41(d) Costs and Stay of Proceedings On Counterclaim [Doc. 17] (the "Motion"). Dr. Voorhees's Response in opposition to the Motion is supported by the following Memorandum of Points and Authorities, the declaration of Dr. Voorhees,[1] and all filings in this matter, which are all hereby incorporated by reference.

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.    RELEVANT FACTS.**

    **a.    Background.**

Dr. Voorhees is the Dean of Students at Embry-Riddle Aeronautical University in Prescott, Arizona ("ERAU"). Davis is currently a student at ERAU. In 2019, Davis filed a complaint with ERAU under Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. §1681 et seq. Davis was displeased with how ERAU investigated the Title IX complaint and/or its findings. In September of 2020, Davis met with Dr. Voorhees regarding Davis's concerns. While Dr. Voorhees attempted to be empathetic to Davis's concerns, Dr. Voorhees made it very clear to Davis during the meeting that Dr. Voorhees is not, and has never been, involved with overseeing or supervising any Title IX issues at ERAU. Dr. Voorhees made it clear to Davis that if Davis had concerns about a Title IX matter, then she should address it to the Title IX Coordinator's supervisor, who is the Vice President and General Counsel for the University.

Dr. Voorhees drew a diagram for Davis on a whiteboard depicting the supervision structure of Title IX management on campus. More specifically, Dr. Voorhees drew a chart showing how Dr. Voorhees supervised another administrator on a half-time basis in her role as Associate Dean of Students only, and how this administrator reported to ERAU's legal counsel for her other half-time role as Title IX Coordinator. During the meeting, Davis acknowledged her understanding that Dr. Voorhees has nothing to do with any Title

---

[1] The Declaration of Dr. Voorhees as been attached as **Exhibit 1** hereto.

**RM WARNER, PLC**
8283 N. Hayden Road, Suite 229
Scottsdale, Arizona 85258
Telephone: (480) 331-9397

IX matters.

Shockingly, however, on or about February 15, 2021, Davis published several false and defamatory statements on Change.org (the "Petition"). Among other things, Davis knowingly made the false factual implication that Dr. Voorhees was not only responsible for Davis's investigation taking over 150 days, but that Dr. Voorhees was also responsible for how things were handled post-investigation, even though Davis was well aware that this was false.[2] In addition to publishing the Petition, on February 15, 2021, Davis emailed at least 74 students and faculty at ERAU and directed them to "check out this petition and share." Davis also posted on Facebook.com the false and defamatory implication that Dr. Voorhees was directly connected to the alleged mismanagement of Davis's Title IX case at ERAU. Davis's conduct was clearly intended to cause harm to Dr. Voorhees's reputation and interfere with her employment with ERAU. After Dr. Voorhees confronted Davis about why and how the statements in the Petition were not true, Davis took several days to remove the Petition, as well as the Facebook comment.

At this point, however, the defamatory statements began to spread well beyond ERAU, and individuals who were not affiliated with ERAU began to share the Petition on social media and make new negative comments about Dr. Voorhees. It was explained to Davis the damage she caused and that she would continue to cause if she did not promptly issue a retraction. For several months after publishing the defamatory statements, Davis continued to act with reckless indifference to the harm she continued to cause by refusing to issue any retraction. While Dr. Voorhees has been extremely empathetic to Davis under the circumstances, Dr. Voorhees refused to allow Davis to destroy Dr. Voorhees's reputation, which has taken decades and countless sacrifices to build. Accordingly, Dr.

---

[2] The allegations in Davis's Complaint [Doc. 1] demonstrate that Davis maliciously targeted Dr. Voorhees in the Petition. Surprisingly, the Petition fails to address vast majority of the issues and allegations contained in Davis's Complaint and falsely portrays an entirely different picture.

RM WARNER, PLC
8283 N. Hayden Road, Suite 229
Scottsdale, Arizona 85258
Telephone: (480) 331-9397

Voorhees filed a defamation lawsuit in Yavapai County Superior Court (the "Defamation Lawsuit").

### b.   **The Defamation Lawsuit.**

Prior to filing the Defamation Lawsuit, Davis's father (Patrick Davis ("Patrick") was involved in attempting to help Davis negotiate a settlement. Patrick became involved in or around April of 2021. *See* Emails, attached as **Exhibit 2** hereto. However, from very early on Patrick's credibility appeared to be highly questionable. In fact, when attempting to justify one of Davis's failure to act promptly, Patrick was caught lying for Davis. On April 13, 2021, he stated, "I apologize for the delay, Audrey has been on a field exercise for the ROTC at Ft. Huachuca . . . ." *Id*. at 8-9. In an email to Davis on April 22, 2021, the undersigned stated as follows:

> It is very unfortunate that you continue to avoid taking responsibility for your actions. Since I've been corresponding with you, you have missed two deadlines. And now, it appears you have your father lying for you. Contrary to your father's email below, Dr. Voorhees confirmed with the Army ROTC that there have been no ROTC activities considered "field exercises" since the trip to Fort Huachuca, which was March 30 through April 2. Also, finals don't start until May 3. You are fresh out of chances and excuses.
>
> You will be held accountable.

*Id*. at 7. Davis and Patrick were well aware that litigation was imminent, and despite Davis's purported regret about the Petition, she continuously refused to demonstrate any sincere regret. In fact, she did just the opposite as evidenced by the email correspondence attached as Exhibit 2 hereto. While Davis is quick to show the Court Patrick's email to the undersigned dated June 1st, Davis purposefully fails to include the entire email thread – which puts everything in context: Davis maliciously tried to destroy Dr. Voorhees's career, Dr. Voorhees generously gave Davis numerous chances to resolve the matter, and Davis continued to act maliciously and with deliberate indifference each time she was given an opportunity to resolve the dispute.

In response to Patrick's email on June 1st, the undersigned responded the same day

4

and provided Patrick a waiver of service form. Nowhere in Patrick's email did he state that Davis was on active duty or would be on "active duty." In fact, he stated that "Audrey is currently in North Carolina at her mother's residence . . . [but] will not be there long because she is going to Ft. Knox for Army training the remainder of the summer." *Id*. at 2. He mentioned nothing about Davis being on "active duty" or how long she might be at her mother's home.[3] After Davis missed the June 4th deadline to return the waiver of service form, Davis was personally served with the Defamation Lawsuit at her mother's home in North Carolina on June 7, 2021. *See id.* at 1; *see also* Affidavit of Service, attached as **Exhibit 3** hereto.

Notably, Davis did not start participating in any ROTC training exercises until July 2, 2021. Given the email to Patrick on May 20th stating that a lawsuit had been filed, **Davis had almost two months advanced notice of the lawsuit before her ROTC training**. However, she made the decision to not to seek legal counsel or file anything with the court requesting an extension on the basis of the upcoming ROTC training. Instead, Davis strategically waited to file anything in the Defamation Lawsuit until **after** her training began and **after** Dr. Voorhees filed a request for entry of default. It was clear to Dr. Voorhees that Davis was once again acting maliciously and trying to have Dr. Voorhees needlessly incur attorneys' fees and costs.

The request for entry of default was filed in the Defamation Lawsuit on July 8, 2021 -- before receiving any notice that Davis was claiming to be on "active duty" under the Servicemembers Civil Relief Act ("SCRA"). On July 19, 2021, Davis filed a Motion to Continue under 50 U.S.C.A. § 3932. This was the first time Dr. Voorhees received notice that Davis was claiming to be on "active duty" under the SCRA.

---

[3] It should be noted that, even if Patrick provided specific information, it is very likely that the information would not have been considered to be credible given that he was previously caught lying for Davis about being in ROTC training.

While Dr. Voorhees was generally aware that Davis participated in the Army ROTC program, Davis was not enlisted in the armed services according to the Army's own website. *See* Army Website FAQ, attached as **Exhibit 4** hereto ("Enrolling in Army ROTC is **not**, strictly speaking, joining the Army. You will not be sent to boot camp. However, the primary purpose of the Army ROTC program is to produce its Officers, so you must agree to serve as Officers in the Army ***after* graduation** in order to go through the entire program . . . .) (emphasis added). It logically follows that if one is not enlisted in the armed services that one could not be considered to be on active duty. Consequently, given that Davis was not enlisted in the Army (according to the Army's own website) and merely participating in an ROTC training exercise, Davis's claim to be on "active duty" was highly suspect and seemed like another ploy – which is why Dr. Voorhees contested the assertion when Davis filed the Motion to Continue.

Moreover, even after Davis retained counsel and filed a supplement to her Motion to Continue, Davis failed to meet the very basic requirements needed to obtain a continuance under 50 U.S.C.A. § 3932, including "A letter or other communication from the servicemember's commanding officer stating that the servicemember's current military duty prevents appearance and that military leave is not authorized for the servicemember at the time of the letter." 50 U.S.C.A. § 3932(b). Instead of attempting to meet this very basic requirement, Davis dedicated substantial efforts to filing an abundance of blatantly improper motions and documents in the Defamation Lawsuit, including a motion to dismiss with several extraneous documents – even though Davis was aware that filing a motion to dismiss in the Defamation Lawsuit was improper given her motion to continue and the entry of default. This conduct only increased Dr. Voorhees's suspicions even more, and Dr. Voorhees continued to contest the SCRA issue accordingly. After oral argument on Davis's Motion to Continue, the court set an evidentiary hearing to give Davis yet another chance to meet the basic requirements of 50 U.S.C.A. § 3932(b). *See* Minute Entry Order dated

October 26, 2021, attached as **Exhibit 5** hereto.

It is now apparent that Davis's conduct was part of a larger plan to (artificially and improperly) inflate her attorneys' fees for purposes of seeking damages under her SCRA claim in this matter. *See* Complaint [Doc. 1], ¶¶78-107.

### c. Voluntary Dismissal of the Defamation Lawsuit.

Davis's claims against Dr. Voorhees are baseless, and Davis is simply attempting to use Dr. Voorhees as an instrument to obtain settlement monies from ERAU. Davis is asserting that Dr. Voorhees violated the SCRA for the actions taken by Dr. Voorhees in the Defamation Lawsuit, and that Dr. Voorhees and ERAU should be held jointly liable. *See id*. Davis is also asserting that the Defamation Lawsuit violated Title IX, even though Dr. Voorhees is not involved with overseeing Title IX matters at ERAU. *See id*. at ¶¶80-86. Before posting the defamatory Petition at issue, Davis was well aware that Dr. Voorhees was not involved with any Title IX matters at ERAU; yet, Davis maliciously targeted the Petition at Dr. Voorhees, rather than the Title IX coordinator at ERAU or her supervisor. The Petition was clearly not a protected activity, and the allegations in Davis's own Complaint demonstrate this.

Accordingly, in good faith, Dr. Voorhees filed Defamation Lawsuit, attempted to dismiss the Defamation Lawsuit under Ariz. R. Civ. P. Rule 41(a) upon learning of this lawsuit, and filed an Answer to Davis's Complaint, as well as asserted the claims brought in the Defamation Lawsuit as counterclaims in this matter. *See* Notice of Dismissal Without Prejudice, attached as **Exhibit 6** hereto. This was done purely in the interest of judicial economy to specifically **avoid** litigating the same issues of fact and law twice.

**Notably, the Defamation Lawsuit was not dismissed until AFTER Dr. Voorhees filed her Answer and Counterclaim in this matter**. Dr. Voorhees sought to dismiss the Defamation Lawsuit when she filed her Notice of Dismissal on November 18, 2021. *See id.* Davis objected to the dismissal of the Defamation Lawsuit on December 7, 2021, and

7

requested that "dismissal not be permitted until the Court has decided whether sanctions under A.R.S. § 12-349 are appropriate . . . ." *See* Letter from Mark Randazza dated December 7, 2021, attached as **Exhibit 7** hereto. Also on December 7, 2021, Dr. Voorhees filed her Answer and Counterclaim [Doc. 9] in this matter. On December 10, 2021, the court in the Defamation Lawsuit entered an order setting a status conference for December 14, 2021. *See* Order Re: Notice of Dismissal Without Prejudice, attached as **Exhibit 8** hereto.  On December 14, 2021, Dr. Voorhees and Davis, by and through counsel appeared at the status conference, and the court entered an order dismissing the Defamation Lawsuit without prejudice. *See* Order dismissing case entered on December 14, 2021, attached as **Exhibit 9** hereto. As evidenced by the order in the Defamation Lawsuit, the court treated Dr. Voorhees's notice of dismissal as a motion to dismiss.

## II. LAW.

Pursuant to Rule 41(d), "[i]f a plaintiff who previously dismissed an action in any court files an action based on or including the same claim against the same defendant, the court: (1) may order the plaintiff to pay all or part of the costs of that previous action; and (2) may stay the proceedings until the plaintiff has complied." Fed. R. Civ. P. 41(d). "The purpose of Rule 41(d) is to deter forum shopping and vexatious litigation . . . and to 'hold [parties] liable for the costs of needless and duplicative litigation . . . ." *Reid v. I.C. Sys. Inc.*, 304 F.R.D. 253, 255 (D. Ariz. 2014) (citation omitted). However, District Courts "employ the 'traditional tools of statutory construction' to interpret the Federal Rules of Civil Procedure . . . [with the] 'first step' [of] 'determin[ing] whether the language at issue has a plain meaning.'" *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1125 (9th Cir. 2017) (citations omitted).

/ / /

/ / /

## III. ARGUMENT.

### a. Davis's Motion should be denied for three separate reasons based on the plain language of Rule 41(d).

The first plain language requirement of Rule 41(d) is that the party who is subject to being assessed costs under the rule be a plaintiff. Dr. Voorhees is not a plaintiff in this matter. She is a counterclaimant. She did not file this "action." The word " 'action' as used in the Rules denotes the entire controversy, whereas 'claim' refers to what has traditionally been termed 'cause of action.' " *Harvey Aluminum, Inc. v. Am. Cyanamid Co.*, 203 F.2d 105, 108 (2d Cir. 1953) (citation omitted). Notably, out of the numerous cases cited by Davis, not a single one contains a situation in which a counterclaimant was assessed costs under Rule 41(d).

The second plain language requirement of Rule 41(d) is that first action must have been dismissed by the party, not the court. "By the plain language of the rule, a court may award costs only if the plaintiff voluntarily dismissed the prior action." *Platinum Logistics, Inc. v. Platinum Cargo Logistics, Inc.*, 711 F. App'x 376, 377 (9th Cir. 2018). As discussed above, the Defamation Lawsuit was dismissed by the court. While Dr. Voorhees ***attempted*** to voluntarily dismiss the Defamation Lawsuit, the court rejected Dr. Voorhees's notice of dismissal after Davis objected to the dismissal and requested that "dismissal not be permitted until the Court has decided whether sanctions under A.R.S. § 12-349 are appropriate . . . ." *See* Exhibit 7. After a status conference, the court treated the notice as a motion and then dismissed the Defamation Lawsuit.

The third plain language requirement of Rule 41(d) is that first action must have been dismissed by the plaintiff BEFORE the plaintiff filed the second action. *See White v. Telelect, Inc.*, 109 F.R.D. 655, 656 (S.D. Miss. 1986) ("By its express terms, Rule 41(d) contemplates a specific sequence of events. It is applicable where a plaintiff has 'once dismissed an action in any court' and then 'commences' an action based on the same claim against the same defendant. While it is unquestioned that the instant action involves the

9

same claim against the same defendant, the time sequence required by the Rule – dismissal of an action in one court followed by the commencement of an action in another court – is missing."); *Beam Laser Sys., Inc. v. Cox Commc'ns, Inc.*, 117 F. Supp. 2d 515, 519 (E.D. Va. 2000) ("SeaChange did not dismiss the action in Massachusetts and then bring the action in the Eastern District of Virginia. Rather, SeaChange sought to intervene in this action—brought by Beam—and then, after this court granted its motion to intervene, SeaChange filed a counterclaim here and then dismissed its action in Massachusetts."); *Fed. Trade Comm'n v. Health Rsch. Lab'ys, LLC*, No. 2:17-CV-00467-JDL, 2021 WL 199713, at *2 (D. Me. Jan. 20, 2021) ("The Defendants' argument is irreconcilably at odds with the text and meaning of Rule 41(d). In order for the provision to apply, the plaintiff must have 'previously dismissed [the] action.' "); *Ayers v. Sarstedt, Inc*., No. 316CV00275RCJWGC, 2016 WL 4521685, at *2 (D. Nev. Aug. 29, 2016) ("Rule 41(d) applies to cases in which a plaintiff has filed and dismissed a case prior to the case at bar. Here, Plaintiffs filed a case after this case, not prior to it; thus, Rule 41(d) does not apply.").

While the Ninth Circuit has yet to take a position on whether attorney's fees are part of "costs" under Rule 41(d), it has indicated, albeit in unpublished decision, that the Rule must be applied in accordance with its plain language. *See Platinum Logistics, Inc. v. Platinum Cargo Logistics, Inc.*, 711 F. App'x 376, 377 (9th Cir. 2018); *see also Cammarata v. Kelly Cap., LLC*, No. 317CV00346BENAGS, 2020 WL 4784745, at *4 (S.D. Cal. Aug. 18, 2020) (citing to *Platinum Logistics* and holding that "the Court's finds its reasoning rooted in the 'plain language of the rule' to be persuasive and adopts it here"). In this case, Dr. Voorhees filed her Answer and Counterclaim in this matter before the Defamation Lawsuit was dismissed by the court.

Accordingly, for one or more of the three reasons discussed, based simply on the plain language of Rule 41(d), Davis's Motion should be denied.

### b. When considering the purpose of Rule 41(d), along with the undisputed facts and circumstances in this case, it is evident that Davis's Motion should be denied.

Again, "[t]he purpose of Rule 41(d) is to deter forum shopping and vexatious litigation . . . and to 'hold [parties] liable for the costs of needless and duplicative litigation . . . .'" *Reid*, 304 F.R.D. at 255. As a general rule, courts should refuse to order payment of costs "if it appears that there was a good reason for the dismissal of the prior action or that the plaintiff is financially unable to pay the costs." *Zucker v. Katz*, 708 F.Supp. 525, 539 (S.D.N.Y.1989) (Kram, J.) (quoting 9 C. Wright & A. Miller, Fed.Practice & Procedure § 2375 at 244 (1971)). Courts have consistently ruled that dismissal in the interest of judicial economy constitutes a good reason for dismissal, and/or that costs should not be assessed when there is a plausible explanation for dismissal and refiling. *See Beam Laser Sys., Inc.*, 117 F. Supp. 2d at 519 (reasoning that "an assessment of costs in this situation would not serve the purpose of deterring vexatious and repetitive litigation, since SeaChange could have avoided the operation of such a rule by maintaining the Massachusetts action in addition to intervening in the action here"); *Senah, Inc v. Xi'an Forstar S&T Co, Ltd*, No. 13-CV-04254-BLF, 2014 WL 3058292, at *2 (N.D. Cal. July 3, 2014) (holding that "refiling the action 'solely so that service could be made in compliance with the Hague Convention' . . . shows no 'intent to harass defendant' "); *ESC-Toy Ltd. v. Insomniac Games, Inc.*, No. CV212139JVSGJSX, 2021 WL 4497513, at *4–5 (C.D. Cal. July 1, 2021) ("This case does not provide the same indicia of forum shopping or other vexatious litigation tactics. . . . Although it appears that ESC-Toy realized belatedly that it should have filed its case in the Central District of California rather than the District of Nevada, such an error alone is not sufficient to persuade the Court to exercise its discretion to award fees."); *Dammeier v. Home Depot U.S.A., Inc.*, No. 16-5481 RJB, 2016 WL 4945305, at *2 (W.D. Wash. Sept. 16, 2016) ("Plaintiff did not forum shop, but re-filed his case in the

same forum. There is no evidence of Plaintiff gained a tactical advantage or is engaging in vexatious litigation.").

In this case, it was apparent to Dr. Voorhees that she would be incurring substantial attorneys' fees and costs in this matter regardless of what may have been decided in the Defamation Lawsuit. Even if the entry of default was not set aside, it was clear that Davis would have appealed the court's ruling, as well as contested damages, in which case an involved evidentiary hearing would have been required -- and at the same time – Dr. Voorhees would be required to defend this matter. The Defamation Lawsuit was dismissed in the interest of judicial economy – **the complete opposite of any tactical advantage or vexatious motive.** Davis made the choice to file additional litigation in this Court, which substantially expanded the issue of fact and law. Indeed, Davis should not be seeking sanctions.

Notably, there was a good chance that the court would have refused to set aside the entry of default in the Defamation Lawsuit. At the time Dr. Voorhees attempted to dismiss the Defamation Lawsuit, Davis was still unable to meet the most basic requirement of under 50 U.S.C.A. § 3932 -- "A letter or other communication from the servicemember's commanding officer stating that the servicemember's current military duty prevents appearance and that military leave is not authorized for the servicemember at the time of the letter." 50 U.S.C.A. § 3932(b).  Instead, Davis attempted to submit a sham affidavit from the Human Resources Assistant for the United States Army ROTC program at ERAU – not her commanding officer. *See* Notice of Filing Evidence and Declaration of Anne Fairchild Smith, attached as **Exhibit 10** hereto.  If anyone should be seeking sanctions, Dr. Voorhees should be given Davis's vexatious conduct and baseless claims in this matter. The Court should deny the Motion.

/ / /

/ / /

**c.     In the alternative, in the event the Court finds that Rule 41(d) applies, the Court should not deviate from the precedent set by Judge Silver in this District concerning attorneys' fees.**

Contrary to Davis's assertion, Judge Silver's decision regarding whether attorneys' fees may be considered "costs" under Rule 41(d) is not "out of fashion in this Circuit." If anything, the Ninth Circuit has since indicated that the plain language should be construed more conservatively – not the opposite extreme as Davis urges. *See Platinum Logistics, Inc.*, 711 F. App'x at 377 ("The district court failed to properly invoke its inherent power to award the costs and attorney's fees accrued in the second action. . . . "[W]hen a court invokes its inherent power to impose sanctions, it triggers due process concerns.").[4] In fact, a court in Central District of California very recently noted that even "courts within the Central District of California are divided on the issue." *ESC-Toy Ltd. v. Insomniac Games, Inc.*, No. CV212139JVSGJSX, 2021 WL 4497513, at *2 (C.D. Cal. July 1, 2021).

In any event, even if the Court were to adopt Judge Silver's "middle of the road approach," Davis would still not be entitled to attorneys' fees. The Defamation Lawsuit was not based on any statute that provided for attorneys' fees. Accordingly, the Court should deny Davis's request for attorneys' fees.

It should also be noted that Davis's Motion is duplicative of the damages being sought in her SCRA. In fact, other than the attorneys' fees allegedly incurred by Davis in the Defamation Lawsuit, Davis fails to plead any damages in support of her SCRA claim. In essence, Davis is seeking attorneys' fees for work that was used and will be used in this case, including the recently filed Motion to Dismiss [Doc. 19], which is basically the same

---

[4] Several Circuit Court of Appeals (Third, Fourth, Sixth, and Seventh Circuit Courts) have all found that attorneys' fees are not part of costs. *See, e.g. Rogers v. Wal-Mart Stores, Inc.*, 230 F.3d 868, 875–876 (6th Cir. 2000); *Garza v. Citigroup Inc.*, 881 F. 3d 277, 282–283 (3rd Cir. 2018); *Esposito v. Piatrowski*, 223 F.3d 497, 501 (7th Cir. 2000); *Andrews v. Am.'s Living Ctrs.*, LLC, 827 F.3d 306 (4th Cir. 2016).

motion Davis inappropriately filed in the Defamation Lawsuit. *See* Motion to Dismiss filed in the October 7, 2021, attached as **Exhibit 11** hereto. This is not permissible. "[T]he Court should not impose any costs associated with work that will still be useful to defendants in the instant litigation." *Esquivel v. Arau*, 913 F. Supp. 1382, 1388 (C.D. Cal. 1996). Accordingly, this is yet another separate basis as to why the request for attorneys' fees should be denied.[5]

## IV.   CONCLUSION.

Based on the foregoing, Dr. Voorhees respectfully requests that the Motion be denied and that the Court grants such other and further relief as the Courts finds reasonable and necessary.

RESPECTFULLY SUBMITTED this 11th day of January, 2022.

**RM WARNER, PLC**

By:   /s/ Daniel R. Warner, Esq
Daniel R. Warner, Esq.
8283 N. Hayden Road Suite 229
Scottsdale, Arizona 85258
*Attorneys for Rhondie Voorhees*

---

[5] To the extent the Court is inclined to grant any fees, Dr. Voorhees respectfully requests that she be given an opportunity to contest the reasonableness of those fees.

14

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on the submission date referenced above, I caused the foregoing document to be electronically filed with the Clerk of the Court using CM/ECF. I further certify that a true and correct copy of the foregoing document being served via transmission of Notices of Electronic Filing generated by CM/ECF.

/s/ Daniel R. Warner
Daniel R. Warner