**RM WARNER, PLC**
8283 N. Hayden Road, Suite 229
Scottsdale, Arizona 85258
Daniel R. Warner, Esq. (AZ Bar # 026503)
Email: dan@rmwarnerlaw.com
Raeesabbas Mohamed, Esq. (AZ Bar # 027418)
Email: Raees@rmwarnerlaw.com
Tel: 480-331-9397
Fax: 1-866-961-4984
*Attorneys for Rhondie Voorhees*

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Audrey Davis, an individual,<br><br>Plaintiff,<br><br>v.<br><br>Rhondie Voorhees, personally and as Dean of Students at Embry-Riddle Aeronautical University; The Embry-Riddle Aeronautical University Board Of Trustees; Embry-Riddle Aeronautical University; and Tyler Smith, an individual,<br><br>Defendants. | NO. 3:21-cv-08249-PCT-DLR<br><br>**DEFENDANT RHONDIE VOORHEES'S RESPONSE TO PLAINTIFF'S MOTION TO DISMISS DEFENDANT RHONDIE VOORHEES'S COUNTERCLAIM FOR FAILURE TO STATE A CLAIM**<br><br>**Oral Argument Requested** |
| Rhondie Voorhees, an individual<br><br>Counterclaimant,<br><br>v.<br><br>Audrey Davis, an individual,<br><br>Counterdefendant. | |

1

Defendant/Counterclaimant Rhondie Voorhees ("Dr. Voorhees"), by and through undersigned counsel, respectfully requests that the Court enter an order denying Plaintiff's Motion to Dismiss Defendant Rhondie Voorhees's Counterclaim for Failure to State a Claim [Doc. 19] (the "Motion"). Dr. Voorhees's Response in opposition to the Motion is supported by the following Memorandum of Points and Authorities, and all filings in this matter, which are all hereby incorporated by reference.

## **MEMORANDUM OF POINTS AND AUTHORITIES**

### **I. RELEVANT FACTS.**

Dr. Voorhees is the Dean of Students at Embry-Riddle Aeronautical University in Prescott, Arizona ("ERAU"). *See* Dr. Voorhees's Counterclaim [Doc. 9] ("Counterclaim"), ¶ 7. Davis is currently a student at ERAU. *Id.* at ¶ 8. In 2019, Davis filed a complaint with ERAU under Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. §1681 et seq. *Id.* at ¶ 9. Davis was displeased with how ERAU investigated the Title IX complaint and/or its findings. *Id.* at ¶ 10. In September of 2020, Davis met with Dr. Voorhees regarding Davis's concerns. *Id.* at ¶ 11. Two members of Davis's Army ROTC cadre leadership were also present at that meeting (Major Jackson and SFC J. DiCenzo). *Id.* While Dr. Voorhees attempted to be empathetic to Davis's concerns, Dr. Voorhees made it very clear to Davis during the meeting that Dr. Voorhees is not, and has never been, involved with overseeing or supervising any Title IX issues at ERAU. *Id.* at ¶ 12. Dr. Voorhees made it clear to Davis that if Davis had concerns about a Title IX matter, then she should address it with the Title IX Coordinator's supervisor, who is the Vice President and General Counsel for the University. *Id.* at ¶ 13. More specifically, Dr. Voorhees made it clear to Davis that Dr. Voorhees was unable to transfer Davis's alleged abuser from the class due to the issue falling under Title IX, and that Dr. Voorhees could not make any of Davis's suggested improvements to ERAU's Title IX processes and procedures due to her role and the legalities associated with Title IX. *See id.* Dr. Voorhees drew a diagram for

Davis on a whiteboard depicting the supervision structure of Title IX management on campus. *Id.* at ¶ 14. Dr. Voorhees drew a chart showing how Dr. Voorhees supervised another administrator on a half-time basis in her role as Associate Dean of Students only, and how this administrator reported to ERAU's legal counsel for her other half-time role as Title IX Coordinator. *Id.* at ¶ 15. Dr. Voorhees directed to Davis to bring these issues to the Title IX Coordinator's supervisor, who is the Vice President and General Counsel for the University. *See id.* Dr. Voorhees did not instruct Davis to "take her word for it." Quite conversely, she indicated that her concerns may have merit and that if Davis wished to further pursue those concerns, she must do so through the appropriate administrators.[1]

During the meeting, Davis acknowledged her understanding that Dr. Voorhees has nothing to do with the supervision or oversight of any Title IX matters. *Id.* at ¶ 17. However, Davis elected not to follow Dr. Voorhees's instructions and handle the matter constructively by making the proper inquiry with Mr. Sevastos. Instead, Davis failed to take any action for approximately **four months** and then maliciously attacked Dr. Voorhees online. *Id.* at ¶ 18.

Shockingly, on or about February 15, 2021, Davis published several false and defamatory statements on Change.org (the "Petition"). *Id.* Davis knowingly made the false factual implication that Dr. Voorhees was not only responsible for Davis's investigation taking over 150 days, but that Dr. Voorhees was also responsible for how things were

---

[1] It was recently discovered that, on August 26, 2020, before Dr. Voorhees met with Davis and her ROTC cadre, the Title IX Coordinator emailed Davis's cadre and stated that "the Title IX Office will no longer respond to inquiries and/or demands by any member of the ERAU AROTC program regarding this case. Please contact Charlie Sevastos, Vice President and General Counsel for the University." Davis and her cadre were aware that all Title IX issues would need to be addressed with Mr. Sevastos – not Dr. Voorhees. This information, along with any other information in this Response not contained in the Counterclaim, is only being included for the purpose of demonstrating to the Court that Dr. Voorhees is capable of pleading additional facts, and that leave to amend should be granted to the extent the Court is inclined to grant the Motion or any part of it.

handled post-investigation, even though Davis knew that this was false. *Id*. at ¶ 19. [2]

The title of the Petition is, "Dean of Students, Rhondie Voorhees to Resign." *See id*. at ¶ 18. The title of the Petition, when read together with the Petition as a whole, conveys that Dr. Voorhees is the individual at ERAU who is responsible for the "school's reputation with title IX" due to her inability or refusal to perform her duties as Dean of Students. Davis portrayed that getting Dr. Voorhees to resign would solve most of the problems with how Title IX complaints are handled at ERAU. *See id*. at ¶ 19.

In the Petition, after Davis misstates several facts about Dr. Voorhees's former employment at UM, she discusses how she "and most of [her] female friends at ERAU have been sexually assaulted or harassed," how she reported her alleged assault to the school, how "the investigation took over 150 days to come to a decision," how "[t]here was not enough evidence to convict," and how "[t]he following semester [she] was put in a class with [her] abuser." *See id*. In that same paragraph of the Petition, Davis then discusses "the rumors" regarding the "school's reputation with title IX," how she "had a meeting with the Dean," how Davis told Dr. Voorhees that "it was very traumatic to see that [she] was put in a class with [her] abuser" and that "there should be an early warning system put in place for both parties . . . ." *See id*. at ¶¶ 18-19.

In that same paragraph of the Petition, Davis then falsely implies that Dr. Voorhees represented that she the authority to make changes to these processes, and that she would get back to Davis. *See id*. Davis specifically stated that "[Dr. Voorhees] said that would take a lot of work, and never got back to me." *See id*. This is exactly the opposite of what Dr. Voorhees told Davis. *See id*. at ¶¶ 15-19. Again, Dr. Voorhees directed Davis to bring these issues to the Title IX Coordinator's supervisor -- indicating that her concerns may

---

[2] The allegations in Davis's Complaint [Doc. 1] demonstrate that Davis maliciously targeted Dr. Voorhees in the Petition. Surprisingly, the Petition fails to address vast majority of the issues and allegations contained in Davis's Complaint and falsely portrays an entirely different picture.

4

1 have merit. Dr. Voorhees did not ignore her suggestions.

2 After Davis falsely implied that Dr. Voorhees represented that she had the authority to make the changes to Title IX processes, in the same paragraph of the Petition, Davis then states that "[Dr. Voorhees] represents a culture of letting abusers get a free pass." *See id*. at ¶ 18. Davis is clearly conveying that Dr. Voorhees had the authority to change Title IX policies and procedures at ERAU, even though Davis knows that is not the case, and that a new Dean of Students would seemingly help the Title IX issues at ERAU. *See id*. at ¶¶ 15-19. Surprisingly, the Petition fails to mention the Title IX Coordinator by name or her supervisor. Davis, who is a very bright young woman, maliciously made Dr. Voorhees the target of her Petition for the admitted purpose of getting her terminated from ERAU and destroying her career. This was certainly no innocent mistake.[3]

In the next section of her Petition, Davis opens with the statement that "[t]his behavior needs to stop being covered up and coddled." *See id*. at ¶ 18. When viewing the Petition as a whole, this statement (when read into the context of the Petition) falsely implies that Dr. Voorhees is responsible for covering up illegal and/or inappropriate behavior based on how Dr. Voorhees allows Title IX complaints to be handled at ERAU. Davis then lists several things that "ERAU Title IX does not" allegedly do. After listing these items, Davis states that "[she] do[es] not feel comfortable or safe with [Dr. Voorhees] being the staff representative for the student body." *See id*. Once again, Davis is falsely conveying that Dr. Voorhees is responsible for overseeing Title IX at ERAU, and that the University would be a safer place if someone other than Dr. Voorhees was overseeing Title IX due to Dr. Voorhees's complete failure to handle her duties as Dean of Students.

The foregoing defamatory statements (collectively, the "Statements") are

---

[3] It has been recently discovered that, before Davis published the Petition, she was talking with another student about whether to publish it, and the other student ostensibly informed Davis that Dr. Voorhees has nothing to do with Title IX at ERAU, and that Davis replied that she didn't care and that she was going to publish the Petition regardless.

5

completely *separate and apart from the articles* cited and misstated by Davis. In the Petition, after Davis states that she doesn't feel safe with Dr. Voorhees as the Dean of Students, Davis then lists website links to various articles and documents she found online and proceeds to completely misstate the following article: https://missoulian.com/news/local/transgender-student-drops-out-alleges-discrimination-at-missoula-college/article_5c8a65bf-35a6-5af0-98bd-777e769f10cd.html. *See id*. at ¶¶ 27-28. Davis published that "Dean Rhondie made Trans student drop out, after coming out. Stating they violated student conduct [code] after an incident that occurred 6mo prior." This is a complete misstatement. *See id*. The article explains that a concern for safety was the issue, not the fact that the student was transgender. *See id*. The student was a convicted felon who was conditionally admitted to the university, who then allegedly committed a violent crime.

Similarly, at the beginning of the Petition, Davis falsely published that "Dean of Students Rhondie Voorhees was asked to leave her last position at University of Montana **for the culture she, and other staff members perpetuated regarding how the college system of justice handles rape**." *Id*. at ¶ 20. Davis did not simply note that Dr. Voorhees was asked to leave the University of Montana ("UM"), which is not in dispute. Rather, Davis states that Dr. Voorhees was asked to leave for this damaging reason. Yet, one of the articles[4] cited by Davis in the Petition specifically states that UM elected not to renew Dr. Voorhees's contract because the Dean of Students position was eliminated, and that UM has stated this publicly, along with the fact that Dr. Voorhees remained an employee in good standing throughout and was paid fully for the duration of her contract period. *Id*. at ¶ 21. This article refers at least five times to "reorganization," "restructure," and "redefined" or "changing" roles by the university in relation to the elimination of the Dean of Students

---

[4] https://missoulian.com/news/local/university-of-montana-dean-of-students-asked-to-leave/article_cbcd2362-f723-5c73-9e8fe88a6835d705.html.

**RM WARNER, PLC**
8283 N. Hayden Road, Suite 229
Scottsdale, Arizona 85258
Telephone: (480) 331-9397

position. *Id.* at ¶ 22. The article also includes a reference to Dr. Voorhees being an "employee in good standing." *Id.*

Nowhere in the articles cited by Davis was there any allegation that Dr. Voorhees was run out of her prior position at UM because of her hostility toward a sexual assault victim there. Answer at ¶ 27. In fact, one of the articles cited by Davis noted how Dr. Voorhees was praised for her work by a victim. *Id.* The idea that Dr. Voorhees "was asked to leave her last position at University of Montana for the culture she, and other staff members perpetuated regarding how the college system of justice handles rape" was completely made-up by Davis, is false, and was published by Davis with the intent to ruin Dr. Voorhees's career.[5] It should also be noted that only about half of the links in the Petition allowed a reader to click and view the material without being charged.

In the Motion, Davis discusses how John Krakauer's book, which Davis only cited to in Petition, allegedly contradicts Dr. Voorhees's assertions that she did not oversee Title IX claims at UM. However, Mr. Krakuer wrote and stated several things in his book, in addition to interviews, that were incorrect, and Davis's alleged reliance on what Krakauer stated does not negate how Davis maliciously published the Statements. Again, Dr. Voorhees directed to Davis to bring her concerns to the Title IX Coordinator's supervisor, but Davis failed and refused to do so. Davis was interested in getting her "pound of flesh," and a quick search on the Internet gave Davis the ammunition needed to hit an easy target. It is important to note that Davis did not simply repeat untrue things that others had already said about Dr. Voorhees; in fact, she fabricated a whole new series of unsubstantiated lies as discussed above.

In the Motion, Davis also incorrectly states that Dr. Voorhees is alleging that it was

---

[5] Davis has since learned that Dr. Voorhees's departure from UM stemmed from her efforts to bring to light concerns about Title IX violations and student and campus safety, especially for female students and faculty, as well as her own safety – exactly the opposite of what Davis alleged in the Petition and what she continues to allege.

7

defamatory to say that she oversaw Title IX claims at UM. Dr. Voorhees states in her Counterclaim that "Davis also falsely published that, '[i]n the total of 80 rapes over the span of three years Dr. Voorhees oversaw, only one was convicted.'" Counterclaim at ¶ 25. Dr. Voorhees alleges in her Counterclaim that this statement is false and defamatory and then proceeds to explain why the statement is false. *See id.* at ¶¶ 24-26. Dr. Voorhees did not oversee 80 rape cases during any three-year period while at UM; in 2012 and 2013, long before her departure from UM, she reviewed a high-profile Title IX case involving an athlete, wherein over Dr. Voorhees' objection, she was instructed to apply a higher burden of proof when reviewing the findings. Additionally, there was not "80 rapes" in "three years" at UM at any time while Dr. Voorhees was Dean of Students.[6] *See id.* Davis had good reason to believe the Statements were false but published them regardless.

In addition to publishing the Petition, on February 15, 2021, Davis emailed at least 74 students and faculty at ERAU and directed them to "check out this petition and share." *Id.* at ¶ 30. Davis also posted on Facebook.com the false and defamatory implication that Dr. Voorhees was directly connected to the alleged mismanagement of Davis's Title IX case at ERAU. *See id.* at ¶ 31. Davis also created and disseminated at least four memes of Dr. Voorhees, each containing a Statement or variation thereof, designed and intended to impeach Dr. Voorhees's ability to adequately perform her duties as the Dean of Students at ERAU. *See id.* at ¶ 32.

---

[6] Davis attempts to take out of context statements that were made in a lawsuit between Dr. Voorhees and UM, which is still currently pending. The pending lawsuit in Montana, including any of the statements or issues therein, is not relevant to this case, and Dr. Voorhees does not need to attempt to educate Davis regarding the difference between overseeing Title IX cases as an appointed Title IX coordinator and conducting a formal review of a Title IX case. Moreover, the incorporation of documents outside of the pleadings is inappropriate, and Dr. Voorhees hereby objects accordingly. All such information should be disregarded by the Court or stricken. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001), overruled on other grounds by *Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

8

Davis's conduct was clearly intended to cause harm to Dr. Voorhees's reputation and interfere with her employment with ERAU. *Id.* at ¶ 33. After Dr. Voorhees confronted Davis about why and how the statements in the Petition were not true, Davis took several days to remove the Petition, as well as the Facebook comment. *Id.* at ¶ 34. Notably, on February 16, 2021, Davis was informed by a Title IX investigator at ERAU that Dr. Voorhees "has nothing to do with Title IX here at ERAU or any of its processes." *Id.* at ¶ 35. The investigator reiterated to Davis that the Title IX Coordinator reports to the Vice President and General Counsel for the University. *Id.* He reiterated that, "Rhondie does not work within Title IX," and "she does not report to and is not a part of the same Title IX supervision and process like Liz and I are." *Id.* Davis told the investigator on that day that she understood all of this and had no questions regarding it. *Id.*

Even after learning from an actual Title IX investigator at ERAU that the Petition contained several false and defamatory statements, Davis failed to act promptly to remove the Petition. *Id.* at ¶ 36. After receiving several demands from Dr. Voorhees to delete the Petition, Davis finally did so on February 21, 2021. *Id.* at ¶ 37. Unfortunately, however, at this point, the defamatory statements began to spread well beyond ERAU, and individuals who were not affiliated with ERAU began to share the Petition on social media and make new negative comments about Dr. Voorhees. *Id.* at ¶ 38. It was explained to Davis the damage she caused and that she would continue to cause if she did not promptly issue a retraction. *Id.* at ¶ 39. For several months after publishing the defamatory statements, Davis continued to act with reckless indifference to the harm she continued to cause by refusing to issue any retraction. *Id.* at ¶ 40. While Dr. Voorhees was extremely empathetic to Davis under the circumstances, Dr. Voorhees refuses to allow Davis to destroy Dr. Voorhees's reputation, which has taken decades and countless sacrifices to build. *Id.* at ¶ 41.

## II. LEGAL STANDARD.

A complaint will survive a motion to dismiss if "it contain[s] sufficient factual matter, accepted as true, to state a claim to relief that plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). "A claim has facial plausibility," and thus survives a motion to dismiss, "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Detailed factual allegations are not required. *Id.*

## III. ARGUMENT

### a. Dr. Voorhees has established a claim for defamation.

In order to state a claim for defamation, a plaintiff must allege (1) that the defendant made a false statement; (2) that the statement was published or communicated to someone other than plaintiff; and (3) that the statement tends to harm plaintiff's reputation. See *Godbehere v. Phoenix Newspapers*, Inc., 162 Ariz. 335, 341, 783 P.2d 781, 787 (1989). " 'To be defamatory, a publication must be false and must bring the defamed person into disrepute, contempt, or ridicule, or must impeach plaintiff's honesty, integrity, virtue, or reputation.' " *Turner v. Devlin*, 174 Ariz. 201, 203–04, 848 P.2d 286, 288–89 (1993) (citation omitted). "In Arizona, a publication which impeaches the honesty, integrity or reputation of a person is libelous per se . . . and actionable without proof of special damages because damages are presumed." *Peagler v. Phoenix Newspapers*, 114 Ariz. 309, 316 (Ariz. 1977) (citation omitted). "Slander per se in Arizona are statements which charge one with a contagious or venereal disease; charge that a woman is not chaste; accusations which tend to injure a person in his or her profession, trade or business; or statements that impute the commission of a crime involving moral turpitude." *Boswell v. Phoenix Newspapers, Inc.*, 152 Ariz. 1, 6, 730 P.2d 178, 183 (Ct. App. 1985) [FN 4].

"Unless the publication . . . [is] privileged or qualifiedly privileged, the proof of publication . . . carrie[s] with it the presumption of its falsity and of malice toward the plaintiff and the burden was upon the defendant to prove both the truth of the publication

10

and a lack of malice toward plaintiff." *McClinton v. Rice*, 76 Ariz. 358, 365-366 (Ariz. 1953). However, when a publication addresses a matter of public concern, the First Amendment requires that the plaintiff bear the burden of demonstrating the statements were false. *Dombey v. Phoenix Newspapers Inc.*, 150 Ariz. 476, 481, 724 P.2d 562, 567 (1986) ("[I]n cases involving matters of public concern . . . the plaintiff [has] the burden of proving falsity."). And if the plaintiff is a public official or figure, he or she must show that the defendant exhibited actual malice when publishing the false remark. *Id*. But if the plaintiff is a private individual, he or she need only show negligent publication. *Id*.

"Statements that can be interpreted as nothing more than rhetorical political invective, opinion, or hyperbole are protected speech, but false assertions that state or **imply a factual accusation** may be actionable." *Burns v. Davis*, 196 Ariz. 155, 165, 993 P.2d 1119, 1129 (Ct. App. 1999). "The trial court first decides whether, under all the circumstances, a statement is even capable of a defamatory meaning. If so found, the jury then determines whether the defamatory meaning was actually conveyed." *Id*. "**In most instances, it is for the jury to determine whether an ordinary reader or listener would believe the statement to be a factual assertion, mere opinion or hyperbole**." *Id*. "The meaning of words and statements should not be construed in isolation; rather, consideration should be given to the context and all surrounding circumstances, including the impression created by the words used and the expression's general tenor." *Id*.

In this case, the Statements are factual in nature and capable of being proven objectively false. Davis knowingly made the false factual implication that Dr. Voorhees was not only responsible for Davis's investigation taking over 150 days, but that Dr. Voorhees was also responsible for how things were handled post-investigation. Similarly, Davis falsely conveys that Dr. Voorhees is the individual at ERAU who is responsible for the "school's reputation with title IX" due to her inability or refusal to perform her duties as Dean of Students.

11

However, as discussed, Dr. Voorhees cannot be responsible for policies and procedures that she has no authority to change, oversee, or enforce, and the fact that Dr. Voorhees has no such authority at ERAU can be easily proven.

The Petition also falsely conveys that that Dr. Voorhees represented to Davis that she the authority to make changes to these processes, but that she was dismissive of Davis's suggestions based on that they would "take a lot of work." Additionally, when viewing the Petition as a whole, Davis falsely conveys that Dr. Voorhees is responsible for covering up illegal and/or inappropriate behavior based on how Dr. Voorhees allows Title IX complaints to be handled at ERAU. Again, for the reasons discussed above, this is false and can be proven as such.

The Statements tend to injure Dr. Voorhees in her profession as the Dean of Students, as well as her general reputation. False factual statements indicating that a person is covering up and coddling rape and sexual assault clearly impeach the honesty, integrity and/or reputation of a person. Accordingly, the Statements are per se defamatory and are presumed to be false and malicious given that Dr. Voorhees is private person and the Statements pertain to a private concern.

### 1. Dr. Voorhees is not public figure or limited purpose public figure.

As Davis admits, Dr. Voorhees is clearly not a "general purpose public figure." "[T]he general public figure is a rare creature." *Waldbaum v. Fairchild Publications, Inc.*, 627 F.2d 1287, 1292 (D.C. Cir. 1980). "Absent clear evidence of general fame or notoriety in the community, and pervasive involvement in the affairs of society, an individual should not be deemed a public personality for all aspects of his life." *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 352(V), 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974).

Some individuals become limited-purpose public figures when they thrust themselves to the forefront of a public controversy in order to influence the resolution of the issues involved. *Gertz*, 418 U.S. at 345. Courts consider whether "(i) a public

controversy existed when the statements were made, (ii) whether the alleged defamation is related to the plaintiff's participation in the controversy, and (iii) whether the plaintiff voluntarily injected itself into the controversy for the purpose of influencing the controversy's ultimate resolution." *Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 266 (9th Cir. 2013). "A public controversy is not simply a matter of interest to the public; it must be a real dispute, the outcome of which affects the general public or some segment of it in an appreciable way." *Waldbaum*, 627 F.2d at 1296–98. It has been made very clear that "private concerns or disagreements do not become public controversies simply because they attract attention." *Id.*

The dispute between ERAU and Davis regarding how ERAU handled her Title IX is nothing more than a private disagreement. Davis's personal Title IX matter and how ERAU dealt with it was never publicly discussed or debated issue until Davis began posting the Statements. Moreover, presuming for the sake of argument that Title IX polices at ERAU could be a matter of public concern, when focusing on the point of the Petition, it becomes even more evident that there is no public controversy. As discussed, the premise of Davis's Petition was that Dr. Voorhees is responsible for ERAU's Title IX problems and should resign given her mismanagement. However, prior to Davis's conduct, there has never been any public controversy about Dr. Voorhees at ERUA concerning Title IX (given that Dr. Voorhees is not involved in any Title IX matter at ERAU), and Dr. Voorhees did not thrust herself into the spotlight regarding Title IX matters at ERAU.

Similarly, Dr. Voorhees did not participate in any controversy related to Davis's Title IX issues. Dr. Voorhees was simply trying to talk to Davis about getting counseling to help her address any issues associated with her reported assault. Likewise, Dr. Voorhees was not trying to influence a resolution of Davis's complaint with how ERAU handled her Title IX matter; she was simply trying to get her to go to counseling. In an email to Davis's cadre leader (Major Jackson), before Dr. Voorhees met with Davis, the Title IX

13

coordinator specifically directed Davis and her ROTC cadre to ERAU's Vice President and General Counsel – not Dr. Voorhees.

Notably, if the well-known journalist who recently sued Elon Musk for calling him a pedophile is not a limited-purpose public figure, Dr. Voorhees clearly is not a limited-purpose public figure either. In *Unsworth v. Musk*, No. 2:18-CV-08048-SVW-JC, 2019 WL 8220721(C.D. Cal. Nov. 18, 2019), the court reasoned as follows:

> The limited-purpose public figure doctrine exists because "[t]hose who attempt to affect the result of a particular controversy have assumed the risk that the press, in covering the controversy, will examine the major participants with a critical eye." *Waldbaum*, 627 F.2d at 1298. But this eye only reaches "the issues at hand." *Id.* To allow criticism into every aspect of a plaintiff's life simply because he chose to get involved in a limited issue would render him an all-purpose public figure—effectively merging the limited-purpose public figure doctrine.

*Unsworth v. Musk*, No. 2:18-CV-08048-SVW-JC, 2019 WL 8220721, at *7 (C.D. Cal. Nov. 18, 2019). Determining whether Dr. Voorhees is limited-purpose public figure is a fact-intensive analysis. Exploring the relevant facts cannot be sufficiently explored in this Response. Accordingly, to the extent the Court is inclined to consider Dr. Voorhees a limited-purpose public figure, Dr. Voorhees requests that the Court defer making any ruling until the issue has been fully briefed after discovery.

### 2. Dr. Voorhees has alleged sufficient facts indicating that Davis published the Statements with actual malice.

Even if Dr. Voorhees was required to plead malice, she has alleged, or is certainly capable of alleging, sufficient facts indicating that Davis published the Statements with malice. A statement is published with actual malice when the publisher had "knowledge that it was false or with reckless disregard of whether it was false or not." *Gertz*, 418 at 328, 94 S. Ct. at 3001. Again, as discussed above, Davis knew that the Statements were likely false but elected to publish them regardless, and Dr. Voorhees has alleged or is

14

certainly capable of alleging sufficient facts regarding malice. Accordingly, the Motion must be denied.

### 3. Davis's Statements are not fair and accurate commentaries.

"[S]tatements of opinion are actionable when they 'imply a false assertion of fact.' " *Turner v. Devlin*, 174 Ariz. 201, 204-209 (Ariz. 1993). " '[S]imply couching such statements in terms of opinion does not dispel [the false, defamatory] implications' because a speaker may still imply 'a knowledge of facts which lead to the [defamatory] conclusion.' " *Partington v. Bugliosi*, 56 F.3d 1147, 1152-53 (9th Cir. 1995) (citation omitted).

"[W]hen a speaker outlines the factual basis for his conclusion, his statement is protected." *Id*. at 1156. This assumes, however, that the factual basis itself is true. "A speaker can't immunize a statement that implies false facts simply by couching it as an opinion based on those facts." *Flowers v. Carville*, 310 F.3d 1118, 1128 (9th Cir. 2002). "Likewise, a defamatory statement isn't rendered nondefamatory merely because it relies on another defamatory statement." *Id*. However, "unless defendants knew the news reports were probably false or had some obvious reason to doubt their accuracy, their reliance is protected by the First Amendment. But if it turns out that defendants knew the news reports were wrong—or **acted with reckless indifference in the face of some clear warning sign**—then they weren't entitled to repeat them publicly and later claim that they were merely expressing nondefamatory opinions." *Id*. at 1129.

The majority of the Petition and the Statements at issue focused on Davis's first-hand experiences with Title IX at ERAU. Davis was not some outside commentator with limited facts available to her, simply giving her two cents on a couple of articles. She made it clear that she was aware of additional, undisclosed facts based on her personal knowledge. Because Davis's Statement were not solely made in reasonable reliance on the facts outlined in the articles cited by Davis, a reasonable listener could consider the Statements to imply an assertion of objective facts rather than an interpretation of the facts

15

equally available to Davis and to the listener. *See Manufactured Home Communities, Inc. v. Cty. of San Diego*, 544 F.3d 959, 965 (9th Cir. 2008) ("[I]n this case a reasonable listener could conclude that Jacob 'impl[ied] there are other, unstated facts supporting' her comments."). It should also be noted that only about half of the links in the Petition allowed a reader to click and view the material without being charged. Thus, a substantial portion of the information was not equally available to the readers of the Petition, and it is unlikely that college students would actually pay for the information.

Additionally, as discussed above, Davis had a clear warning, as well as actual knowledge, that Dr. Voorhees did not oversee the Title IX or the Title IX Coordinator in her capacity as such. Davis elected not to follow Dr. Voorhees's instructions and handle the matter constructively by making the proper inquiry. Instead, Davis failed to take any action for approximately **four months** and then maliciously attacked Dr. Voorhees online. This is textbook reckless disregard, and the Motion must be denied.

### b. Dr. Voorhees has established a claim for false light.

For the same reasons as discussed above, Dr. Voorhees has established a claim for false light. Davis had knowledge of or acted in reckless disregard as to the falsity of the publicized matter. While having good reason to believe otherwise, Davis falsely portrayed, among other things, that that Dr. Voorhees was the individual at ERAU who is responsible for the "school's reputation with title IX" due to her inability or refusal to perform her duties as Dean of Students. Accordingly, the Motion must be dismissed.

## IV. CONCLUSION.

Based on the foregoing, Dr. Voorhees respectfully requests that the Motion be denied, or in the alternative, to the extent the Court is inclined to grant the Motion or any part of it, that leave to amend should be granted, and that the Court grants such other and further relief as the Courts finds reasonable and necessary.

16

RM WARNER, PLC
8283 N. Hayden Road, Suite 229
Scottsdale, Arizona 85258
Telephone: (480) 331-9397

RESPECTFULLY SUBMITTED this 11th day of January, 2022.

**RM WARNER, PLC**

By: /s/ Daniel R. Warner, Esq
Daniel R. Warner, Esq.
8283 N. Hayden Road Suite 229
Scottsdale, Arizona 85258
*Attorneys for Rhondie Voorhees*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that, on the submission date referenced above, I caused the foregoing document to be electronically filed with the Clerk of the Court using CM/ECF. I further certify that a true and correct copy of the foregoing document being served via transmission of Notices of Electronic Filing generated by CM/ECF.

/s/ Daniel R. Warner
Daniel R. Warner