**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Audrey Davis,<br><br>  Plaintiff,<br><br>v.<br><br>Rhondie Voorhees, et al.,<br><br>  Defendants. | No. CV-21-08249-PCT-DLR<br><br>**ORDER** |

Pending before the Court is Plaintiff's "Motion for Rule 41(d) Costs and Stay of Proceedings on Counterclaim" (Doc. 17) and motion to dismiss (Doc. 24).[1] The Court denies both motions.

**I. Background**

Audrey Davis is a student at Embry Riddle Aeronautical University ("ERAU"). (Doc. 49 at 3.) Rhondie Voorhees is Dean of Students there. (*Id.* at 5) Ms. Davis filed a Title IX complaint with ERAU but was unsatisfied with the results of the investigation.

Ms. Davis then met with Ms. Voorhees, the ERAU Dean of Students. (*Id.*) At the meeting, Ms. Voorhees alleges that she "made it clear" to Ms. Davis—and that Ms. Davis acknowledged that she understood—that Ms. Voorhees "did not oversee or supervise Title IX matters at ERAU" and directed her to "the Title IX Coordinator's supervisor, who is

---

[1] After filing the motion to dismiss, Plaintiff filed a first amended complaint and Ms. Voorhees re-asserted her counterclaims. (Docs. 49, 50.) Plaintiff renewed her motion to dismiss as to those counterclaims, which remained unchanged. (Doc. 53.)

1  the Vice President and General Counsel for the University." (Doc. 50 at 20.)

2  After the meeting, however, Ms. Davis circulated a petition calling for Ms.
3  Voorhees' resignation:

> Dean of Students Rhondie Voorhees was asked to leave her last position at University of Montana for a culture that she, and other staff members perpetuated regarding how the college system of justice handles rape. In the total of 80 rapes over the span of three years Dean Rhondie Voorhees oversaw, only one was convicted. I googled her name and the word 'rape' and I was very disappointed at the articles that came up.(seen below)
>
> I and most of my female friends at ERAU have been sexually assaulted or harassed. I reported it to the school and the investigation took over 150 days to come to a decision. There was not enough information to convict him. The following semester I was put in a class with my abuser. I'm sure you have heard the rumors or know people who have the same experience as I or who haven't reported their assault because of our school's reputation with title IX. When I had a meeting with the Dean, I told her how it was very traumatic to see that I was put in a class with my abuser and suggested that there should be an early warning system put in place for both parties, so they don't have the possibility of showing up to class and being forced to interact. She said that would take a lot of work, and never got back to me. She represents a culture of letting abusers get a free pass. (see Jon Krakauer's book Missoula; Rape and the Justice System in a college town).

(Doc. 50-3.) The petition then solicits signatures and directs readers to several hyperlinked articles, one of which she summarizes as "Dean Rhondie made Trans student drop out, after coming out. Stating they violated the student conduct after an incident that occurred 6mo prior." (*Id.*) Ms. Voorhees reads the petition as implying she bore some responsibility for the investigation taking longer than Ms. Davis liked, for how things were handled after the investigation, and that she is anti-LGBTQ, implications she alleges are false. She alleges that the petition falsely states that she "was asked to leave her last position at University of Montana for the culture she, and other staff members perpetuated regarding how the college system of justice handles rape." (Doc. 50 at 21; *see* Doc. 50-3.) Ms. Voorhees further disputes that she "oversaw" "80 rapes," in part because she "was never responsible for 'overseeing' Title IX matters" at University of Montana and because "there was (sic) not '80 rapes' in 'three years' at the University of Montana" while she was there.

(Doc. 50 at 22.)

Later, an ERAU Title IX investigator told Ms. Davis that Ms. Voorhees "has nothing to do with Title XI here at ERAU or any of its processes," yet Ms. Davis took several days to take down the petition. (*Id.* at 23-24.) But like the contents of Pandora's Box, what has been published to the internet is loath to return to offline obscurity, and the petition continued to circulate "on social media." (*Id.* at 24.) Ms. Davis did not issue a retraction, which Ms. Voorhees alleges has caused even more damage to her reputation. *Id.* at 24.)

Ms. Voorhees sued Ms. Davis in state court for defamation and false light invasion of privacy, among other claims which were not refiled as counterclaims in this suit. (Doc. 17-10 at 8-9.) Ms. Davis was served on June 7, 2021, but when she did not answer the complaint by July 8, 2021, Ms. Voorhees requested entry of default. Ten days later, Ms. Davis filed a motion to continue under the Servicemembers Civil Relief Act ("SCRA"), which provides for certain protections to servicemembers on active duty. At this time, Ms. Davis was represented by counsel. After a flurry of motions and supplements, Ms. Davis submitted an affidavit from the Human Resources Assistant for the United States Army ROTC program at ERAU attesting that her active service began on July 2, 2021 and that Ms. Davis had notice of this period of service on May 28, 2021. (Doc. 24-10 at 25.)

While the state court litigation continued, Ms. Davis filed this suit against Ms. Voorhees and other defendants in federal court on November 11, 2021, alleging, as to Ms. Davis, violations of Title IX, retaliation, and violations of the SCRA. (Doc. 1.) Seven days later, Ms. Voorhees voluntarily dismissed the state court complaint (Doc. 24-6) and in early December, she filed an answer in this case, as well as counterclaims of defamation and false light invasion of privacy. (Doc. 9.)

**II. Motion for Rule 41(d) Costs and Stay of Proceedings**

Federal Rule of Civil Procedure 41(d) provides:

> If a plaintiff who previously dismissed an action in any court files an action based on or including the same claim against the defendant, the court:

>   (1) may order the plaintiff to pay all or part of the costs of the previous action; and
>
>   (2) may stay the proceedings until plaintiff has complied.

"In analyzing purported violations of Rule 41, the [nonmovant] bears the burden to show a 'persuasive explanation' for its course of the litigation, while the [movant] must show only that it 'incurred needless expenditures' as a result of [the nonmovant's] conduct." *Senah, Inc v. Xi'an Forstar S&T Co, Ltd*, No. 13-CV-04254-BLF, 2014 WL 3058292, at *1 (N.D. Cal. July 3, 2014) (citing *Esquivel v. Arau*, 913 F. Supp. 1382, 1386 (C.D. Cal. 1996)) (internal citations omitted).  The rule is "intended to serve as a deterrent to forum shopping and vexatious litigation." *Esquivel*, 913 F. Supp. at 1386 (quoting *Simeone v. First Bank Nat'l Ass'n*, 971 F.2d 103, 108 (8th Cir. 1992)).  "It conveys broad discretion on federal courts to order stays and payment of costs, but neither costs nor a stay is mandatory." *Cisneros v. Moreno*, No. 1:19-CV-1676 JLT PC, 2020 WL 7122074, at *2 (E.D. Cal. Dec. 4, 2020) (internal quotations and citation omitted).

Ms. Voorhees argues that she counterclaimed here "purely in the interest of judicial economy to specifically **avoid** litigating the same issues of fact and law twice." (Doc. 24 at 7.) Indeed, Ms. Davis filed this lawsuit only after Ms. Voorhees had filed her defamation claim in state court. And once Ms. Davis did so, Ms. Voorhees filed a notice of dismissal in state court—although the state court clerk had already entered default and Ms. Davis had not yet answered the complaint—and then answered Ms. Davis in federal court, adding her defamation claim as a counterclaim. In fact, Ms. Voorhees' dismissal and re-filing in federal court erased the default and gave Ms. Davis a chance to challenge the defamation claim on the merits, rather than the parties continuing to rack up attorney fees litigating a contentious default.

Ms. Davis disputes Ms. Voorhees' explanation, arguing that the counterclaim not only lacks merit but also that Ms. Voohees in bad faith sought default judgment against Ms. Davis. The Court is not persuaded. According to supplemental filings to the motion to continue, Ms. Davis' active service began nearly a month after she was served with the

state court complaint, time during which she could have availed herself of SCRA protections under 50 U.S.C. § 3932 before Ms. Voorhees sought entry default. And in ordering the dismissal, the state court denied Ms. Davis' request to sanction Ms. Voorhees. Standing removed from the state court action and graced with only a handful of the filings there, this Court sees that the parties sparred over entry of default but does not at this time see that either party did so in bad faith.

For her burden, Ms. Davis alleges she incurred needless expenditures in litigating the entry of default. Even if true, she would have continued to litigate the default but for Ms. Voorhees' voluntary dismissal, and now the parties can litigate the merits of Ms. Voorhees claims in federal court. Besides, it appears that litigating the default occurred in good faith: Ms. Davis was served nearly a month before she alleges her active duty began. (Docs. 30-3, 30-10.) She could have filed a motion to stay the proceedings, as authorized under 50 U.S.C. § 3932, but she did not. In such a procedural posture, the Court might expect Ms. Davis to have to make expenditures to expunge an entry of default. The Court in its discretion declines to award costs and stay proceedings under Rule 41(d).

**III. Motion to Dismiss**

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The task when ruling on a motion to dismiss "is to evaluate whether the claims alleged [plausibly] can be asserted as a matter of law." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004); *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When analyzing the sufficiency of a complaint, the well-pled factual allegations are taken as true and construed in the light most favorable to the plaintiff. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009).

**A. Defamation**

In order to state a claim for defamation, a plaintiff must allege (1) that the defendant made a false statement; (2) that the statement was published or communicated to someone other than plaintiff; and (3) that the statement tends to harm plaintiff's reputation. *See*

*Godbehere v. Phoenix Newspapers, Inc.*, 783 P.2d 781, 787 (Ariz. 1989). "[A] statement is actionable is it implies a clearly defamatory meaning." *Rogers v. Mroz*, 502 P.3d 986, 990 (Ariz. 2022). Generally, "proof of publication . . . carrie[s] with it the presumption of its falsity and of malice toward the plaintiff and the burden [falls] upon the defendant to prove both the truth of the publication and lack of malice toward plaintiff." *McClinton v. Rice*, 265 P.2d 425, 429-30 (Ariz. 1953). But when a publication addresses a matter of public concern, the First Amendment requires that the allegedly defamed party must prove falsity. *Id.* When the allegedly defamed party is a private figure, she need only show negligent publication, but when the allegedly defamed party is a public figure, or a limited purpose public figure, she must show that the alleged defamer acted with actual malice. *Dombey v. Phoenix Newspapers Inc.*, 724 P.2d 562, 567 (Ariz. 1986).

### 1. Limited-purpose public figure

Some individuals become limited-purpose public figures when they thrust themselves to the forefront of a public controversy in order to influence the resolution of the issues involved. *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 345 (1974). In determining whether a party is a limited-purpose public figure, courts consider whether (1) a public controversy existed when the statements were made, (2) the alleged defamation is related to the allegedly defamed party's participation in the controversy, and (3) the allegedly defamed party voluntarily injected herself into the controversy for the purpose of influencing the controversy's ultimate resolution. *Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 266 (9th Cir. 2013).

The controversy at ERAU became public when Ms. Davis published a statement about it. Ms. Voorhees did not "thrust [herself]" into the controversy merely by, as she alleged, privately informing Ms. Davis that she did not oversee or supervise Title IX matters at ERAU. (Doc. 9 at 22). This same allegation defeats Ms. Davis' second argument, that Ms. Voorhees as Dean of Students at ERAU is a limited-purpose public figure in matters relating to her involvement in school governance. Ms. Davis' only argument challenging that allegation is that it "bends the mind" that the Dean of Students

would not be involved with Title IX issues. But it's possible that ERAU indeed walled off the Dean of Students position from Title IX issues, regardless of whether it would bend the mind to do so. In the absence of evidence to support Ms. Davis' claim that Ms. Voorhees was involved with Title IX matters at ERAU, the Court must credit Ms. Voorhees' allegation, and therefore finds that Ms. Voorhees was a private figure for the purposes of resolving this Rule 12(b)(6) motion.

### 2. Whether the statement was defamatory

Ms. Voorhees alleges that Ms. Davis' directly stated or implied the following falsehoods:

- Ms. Voorhees shirked Title IX duties at ERAU and University of Montana, including letting 80 rapes go unpunished
- The University of Montana asked Ms. Voorhees to leave the position of Dean of Students
- Ms. Voorhees made a trans student drop out

Ms. Davis argues that the statements are opinion or, in the alternative, that they relied on reports from reliable sources, both defenses to defamation.

First, opinion. The statements, direct or implied, are capable of being proved true or false. Indeed, the statements appeared in a petition that cited hyperlinked articles, suggesting that the statements were supported by research and thus capable of being proved true or false.

Second, reports from reliable sources. Certainly some sources, such as John Krakauer's best-selling book would be considered reliable. Nevertheless, as Ms. Voorhees argues, statements that inaccurately summarize the contents of a reliable source are capable of being defamatory. *Turner v. Devlin*, 848 P.2d 286, 289-94 (Ariz. 1993). Determining whether the statements—or their implications—accurately summarizes a source is necessarily fact intensive, and many crucial facts remain unestablished, like (1) whether Ms. Voorhees told Ms. Davis that, as Dean of Students, she did not oversee or supervise Title IX matters, (2) whether Ms. Davis inaccurately summarized a reliable source in

making the statements, (3) and, if the answer to the foregoing are "yes," whether a reasonable listener would consider the statements to imply a false assertion of fact. The Court declines to wade into this factual analysis at the pleading stage, where all well-pled allegations are taken as true and construed most favorably to Ms. Voorhees.

### B. False Light

Arizona recognizes the tort of false light invasion of privacy when the defendant "gives publicity to a matter concerning another that places the other before the public in a false light." *Godbehere*, 783 P.2d at 784. The defendant is liable if (i) the false light would be offensive to a reasonable person, and (ii) the defendant had knowledge of or acted in reckless disregard as to the falsity of the publicized matter. *See id.* Unlike defamation, false light protects the plaintiff's mental and emotional interests, not her reputation or good name. *See id.* at 786. To qualify, the publication must involve a major misrepresentation of the plaintiff's character, history, activities, or beliefs, not merely minor or unimportant inaccuracies. *See id.* As with defamation, Ms. Voorhees alleges that Ms. Davis' statements misrepresented her "history, activities, or beliefs" and caused her mental and emotional anguish. Ms. Davis' arguments to the contrary raise factual questions inappropriate for resolution at the pleading stage.

## IV. Conclusion

Ms. Davis has not shown that she is entitled to costs or a stay under Rule 41(d). Ms. Voorhees has adequately pled claims for defamation and false light. Therefore,

**IT IS ORDERED** that Plaintiff's motion for costs and a stay under Rule 41(d) (Doc. 17) and motion to dismiss for failure to state a claim (Doc. 19) are **DENIED**.

Dated this 12th day of July, 2022.

Douglas L. Rayes
United States District Judge