**RM WARNER, PLC**
8283 N. Hayden Road, Suite 229
Scottsdale, Arizona 85258
Daniel R. Warner, Esq. (AZ Bar # 026503)
Email: dan@rmwarnerlaw.com
Raeesabbas Mohamed, Esq. (AZ Bar # 027418)
Email: Raees@rmwarnerlaw.com
Tel: 480-331-9397
Fax: 1-866-961-4984
*Attorneys for Defendant Rhondie Voorhees*

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| Audrey Davis, an individual,<br><br>Plaintiff,<br><br>v.<br><br>Rhondie Voorhees, personally and as Dean of Students at Embry-Riddle Aeronautical University; The Embry-Riddle Aeronautical University Board Of Trustees; Embry-Riddle Aeronautical University; and Tyler Smith, an individual,<br><br>Defendants.<br><br>Rhondie Voorhees, an individual<br><br>Counterclaimant,<br><br>v.<br><br>Audrey Davis, an individual,<br><br>Counterdefendant. | NO. 3:21-cv-08249-DLR<br><br>**DEFENDANT RHONDIE VOORHEES'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR RECONSIDERATION OF ORDER DENYING PLAINTIFF'S MOTION TO DISMISS DEFENDANT RHONDIE VOORHEES'S COUNTERCLAIM FOR FAILURE TO STATE A CLAIM** |

Defendant/Counterclaimant Rhondie Voorhees ("Dr. Voorhees"), by and through undersigned counsel, respectfully requests that the Court enter an order denying Plaintiff's Motion for Reconsideration [Doc. 57] (the "Motion"). The Motion repeats the same flawed arguments in Plaintiff's initial Motion to Dismiss Defendant Rhondie Voorhees's Counterclaim for Failure to State a Claim [Doc. 19] (the "Motion to Dismiss"), which is sufficient basis to deny the Motion pursuant to LRCiv 7.2(g)(1). Additionally, much like the initial Motion to Dismiss, the Motion completely ignores the defamatory statements that were made separate and apart from Plaintiff's "research". Dr. Voorhees's Response in Opposition to the Motion is supported by the following Memorandum of Points and Authorities, and all filings in this matter, which are all hereby incorporated by reference.

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.    In her Motion, Plaintiff repeats the same exact flawed limited-purpose public figure arguments that were made in her Motion to Dismiss and Reply.**

"A motion for reconsideration is an inappropriate vehicle to ask the Court to rethink what the Court has already thought through—rightly or wrongly." *Mix v. Asurion Ins. Servs. Inc.*, No. CV-14-02357-PHX-GMS, 2017 WL 131566, at *1 (D. Ariz. Jan. 1, 2017). Local Rule 7.2(g)(1) makes clear that "[n]o motion for reconsideration of an Order may repeat any oral or written argument" and the "[f]ailure to comply with this subsection may be grounds for denial of the motion." *Mellen, Inc. v. Biltmore Loan & Jewelry-Scottsdale, LLC*, No. CV-16-00648-PHX-DLR, 2017 WL 2841181, at *1 (D. Ariz. Apr. 5, 2017) (citations omitted). A party's "dissatisfaction or disagreement is not a proper basis for reconsideration[.]" *Ellsworth v. Prison Health Servs. Inc.*, No. 11-CV-8070-PCT-MEA, 2013 WL 1149937, at *2 (D. Ariz. Mar. 20, 2013).

In her Reply [Doc. 29], Plaintiff incorrectly argued that "Voorhees tries to get around the inescapable conclusion that she is a limited-purpose public figure by redefining the relevant controversy as solely Davis's Title IX complaint at ERAU, as though the

2

surrounding context of Title IX enforcement generally and Voorhees's publicized relationships to this controversy is irrelevant." *See* Reply [Doc. 29], 3:18-21. Plaintiff makes the analogy that, under Dr. Voorhees's reasoning, "a celebrity who commits murder would not be a public figure because he merely had a private dispute with his victim." *Id.* at 4:1-2. Similarly, in the Motion, Plaintiff argues, "[b]y the Court's reasoning, Harvey Weinstein would not be a public figure if he sued his first accuser because there was no pre-existing controversy about his sexual abuse." *See* Motion [Doc. 57], 3:21-24. With almost identical analogies, both of which are completely flawed, Plaintiff has made the same exact argument in her Reply and the Motion.

Harvey Weinstein was one of the most powerful people in Hollywood – clearly a public figure for *all* purposes. The test for determining a *limited-purpose* public figure is not the same test that is used to determine whether someone is a public figure for *all* purposes.[1] The tests are very different. Therefore, Plaintiff's analogies (which are indeed mind-bending) and claims of the Court's "manifest error" are grossly incorrect. The Motion should be denied with prejudice.

## II. The Court did not commit manifest error in concluding that Dr. Voorhees was a private figure for the purposes of resolving Plaintiff's Motion to Dismiss.

Manifest error under LRCiv 7.2(g)(1) is "error that is plain and indisputable ... that amounts to a complete disregard of the controlling law or the credible evidence in the record." *Estrada v. Bashas' Inc.*, No. CV-02-00591-PHX-RCB, 2014 WL 1319189, at *1 (D. Ariz. Apr. 1, 2014) (quoting Black's Law Dictionary 622 (9th ed. 2009)).

In her Motion, Plaintiff claims that the Court "failed to acknowledge the large volume

---

[1] "[T]he general public figure is a rare creature." *Waldbaum v. Fairchild Publications, Inc.*, 627 F.2d 1287, 1292 (D.C. Cir. 1980). "Absent clear evidence of general fame or notoriety in the community, and pervasive involvement in the affairs of society, an individual should not be deemed a public personality for all aspects of his life." *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 352(V), 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974).

**RM WARNER, PLC**
8283 N. Hayden Road, Suite 229
Scottsdale, Arizona 85258
Telephone: (480) 331-9397

1  of case law across the country cited in Davis's briefing showing that university Deans are
2  public figures on matters concerning the governance of their respective universities." *See*
3  Motion [Doc. 57], 4:3-6. However, all of the cases cited by Plaintiff are factually
4  distinguishable from the contested facts[2] currently before the Court in this case. *See, e.g.,*
5  *Hicks v. Stone,* 425 So. 2d 807 (La. Ct. App. 1982) (The plaintiff was the dean of a public
6  university.); *Byers v. Se. Newspaper Corp. Inc.*, 161 Ga. App. 717, 288 S.E.2d 698 (1982)
7  (The controversy pertained to a public official's activities in connection with public office.);
8  *Van Dyke v. KUTV*, 663 P.2d 52 (Utah 1983) (The plaintiff was a "public official"; he was
9  "accountable to the general public and held a position which invited public scrutiny.");
10 *Walko v. Kean Coll. of New Jersey*, 235 N.J. Super. 139, 561 A.2d 680 (Law. Div. 1988)
11 (The plaintiff was the assistant dean at a public university.).
12
13  Under Plaintiff's suggested analysis, any person who has an administrative role at a
14 private university is automatically a public figure for all controversies related to
15 administrative matters, even if the particular administrative issue was completely outside the
16 scope of the person's position.  This is not and cannot be the law. Blindly labeling someone
17 a limited-purpose public figure would completely negate the test used to determine whether
18 a person is a limited-purpose public figure. And notably, Plaintiff agrees such a test applies
19 in this case. *See* Motion [Doc. 57], 3:7-15 ("In considering whether a party is a limited
20 purpose public figure, courts will consider whether (i) a public controversy existed when the
21 statements were made, (ii) whether the alleged defamation is related to plaintiff's
22 participation in the controversy, and (iii) whether the plaintiff voluntarily injected herself
23 into the controversy for the purpose of influencing the controversy's ultimate resolution.").
24 Plaintiff simply didn't like the Court's decision and is asking the Court "rethink it," which

---

[2] Plaintiff again inappropriately makes reference to and argues contested factual matters that are outside of the pleadings.  *See* Motion, 4:16-18. These matters should not be considered by the Court and/or stricken, and Dr. Voorhees again objects accordingly.

4

is inappropriate and not a proper basis for a motion for reconsideration. *See Mellen, Inc. v. Biltmore Loan & Jewelry-Scottsdale, LLC*, No. CV-16-00648-PHX-DLR, 2017 WL 2841181, at *1 (D. Ariz. Apr. 5, 2017).

Moreover, with the exception critiquing how the "public controversy" was defined in this case, Plaintiff completely ignores the analysis of all steps of the test[3] – which Plaintiff agrees apply. Thus, for the sake of argument only, even if some error was involved regarding the definition of the public controversy, the error was harmless, not manifest, and the Motion should be denied. *See Sanderling Mgmt. Ltd. v. Snap Inc.*, No. CV 21-2324-GW-JCX, 2021 WL 3160867, at *4 (C.D. Cal. July 9, 2021) ("[A] motion to reconsider should not be granted where an error is found to be harmless.").

### III. Plaintiff's defamatory Statements were not pure opinion.

"[S]tatements of opinion are actionable when they 'imply a false assertion of fact.' " *Turner v. Devlin*, 174 Ariz. 201, 204-209 (Ariz. 1993). "In most instances, it is for the jury to determine whether an ordinary reader or listener would believe the statement to be a factual assertion, mere opinion or hyperbole." *Burns v. Davis*, 196 Ariz. 155, 165, 993 P.2d 1119, 1129 (Ct. App. 1999). "The meaning of words and statements should not be construed in isolation; rather, consideration should be given to the context and all surrounding circumstances, including the impression created by the words used and the expression's general tenor." *Id*.

**False Statement # 1 (bolded below):** The title of the Petition is, "Dean of Students, Rhondie Voorhees to Resign." The title of the Petition, when read together with the Petition as a whole, falsely conveys that ***Dr. Voorhees has failed and refused to perform her duties as Dean of Students concerning Title IX issues.***[4] The factual nature of this false and

---

[3] *See* Response to Motion to Dismiss, 12:19-14:17.

[4] A statement is per se defamatory in Arizona when the statement "tend[s] to injure a person in his or her profession, trade or business." *Boswell v. Phoenix Newspapers, Inc.*, 152 Ariz. 1, 6, 730 P.2d 178, 183 (Ct. App. 1985) [FN 4].

5

defamatory statement is highlighted by how Plaintiff asserted in the Petition that getting Dr. Voorhees to resign would solve most of the problems with how Title IX complaints are handled at ERAU. This defamatory statement is capable of being proven false by establishing that Dr. Voorhees has nothing to do with the supervision or oversight of any Title IX matters at ERAU.

**False Statements # 2, # 3 and # 4 (bolded below):** Plaintiff knowingly made the false factual implication that *Dr. Voorhees was not only responsible for Plaintiff's investigation taking over 150 days, but that Dr. Voorhees was also responsible for how things were handled post-investigation.*[5] In the Petition -- *after* Plaintiff misstates several facts about Dr. Voorhees's former employment at UM – she discusses her alleged personal experiences, including how she "and most of [her] female friends at ERAU have been sexually assaulted or harassed"; how she reported her alleged assault to the school; how "the investigation took over 150 days to come to a decision"; how "[t]here was not enough evidence to convict"; how "[t]he following semester [she] was put in a class with [her] abuser"; how she had a meeting with Dr. Voorhees and told Dr. Voorhees "it was very traumatic to see that [she] was put in a class with [her] abuser" and that "there should be an early warning system put in place for both parties . . . ."

*In that same paragraph of the Petition, Plaintiff then falsely implies that Dr. Voorhees represented that she had the authority to make changes to these processes.* Plaintiff specifically posted that "[Dr. Voorhees] said that would take a lot of work, and never got back to me." However, this is the opposite of what Dr. Voorhees conveyed to Plaintiff over the course of the meeting – a provable fact. Dr. Voorhees emphasized in the meeting that Plaintiff should bring her concerns to the Title IX Coordinator's supervisor -- indicating

---

[5] Again, this defamatory statement is capable of being proven false by establishing that Dr. Voorhees has nothing to do with the supervision or oversight of any Title IX matters at ERAU.

6

that her concerns may have merit. ***Dr. Voorhees did not ignore her suggestions as Plaintiff falsely implies***. Whether reading the factual misstatements about Dr. Voorhees's former employment at UM together with the foregoing Statements or separately, the Statements -- which are based on Plaintiff's alleged and not fully disclosed personal circumstances -- are actionable.

Additionally, Plaintiff ignores the facts, as well as the black letter law, regarding her purported "fair reporting of other commentaries." "A speaker can't immunize a statement that implies false facts simply by couching it as an opinion based on those facts." *Flowers v. Carville*, 310 F.3d 1118, 1128 (9th Cir. 2002). "Likewise, a defamatory statement isn't rendered nondefamatory merely because it relies on another defamatory statement." *Id*. "If it turns out that defendants knew the news reports were wrong—or acted with reckless indifference in the face of some clear warning sign—then they weren't entitled to repeat them publicly and later claim that they were merely expressing nondefamatory opinions." *Id*. at 1129.

**False Statement # 5 (bolded below):** Plaintiff did not simply repeat untrue things that others had already said about Dr. Voorhees; Plaintiff manufactured an entirely new series of false and defamatory statements, which were purportedly based on her "research" but clearly were not. Plaintiff cited to articles and falsely portrayed those articles to support her false Statements, even though they clearly did not.  Plaintiff published that "***Dean Rhondie made Trans student drop out, after coming out. Stating they violated student conduct [code] after an incident that occurred 6mo prior.***" This is a complete misstatement. The applicable article explains that a concern for safety was the issue, not the fact that the student was transgender. The student was a convicted felon who was conditionally admitted to the university, who then allegedly committed a violent crime.

**False Statement # 6 (bolded below):** Plaintiff published that "***Dean of Students Rhondie Voorhees was asked to leave her last position at University of Montana for the***

*culture she, and other staff members perpetuated regarding how the college system of justice handles rape*." This is provably false. Plaintiff did not simply note that Dr. Voorhees was asked to leave the University of Montana ("UM"), which is not in dispute. Rather, Plaintiff states that Dr. Voorhees was asked to leave for this damaging reason. Yet, one of the articles[6] cited by Plaintiff in the Petition specifically states that UM elected not to renew Dr. Voorhees's contract because the Dean of Students position was eliminated, and that UM has stated this publicly, along with the fact that Dr. Voorhees remained an employee in good standing throughout and was paid fully for the duration of her contract period. Nowhere in the articles cited by Plaintiff was there any allegation that Dr. Voorhees was run out of her prior position at UM because of her hostility toward a sexual assault victim there. In fact, one of the articles cited by Plaintiff noted how Dr. Voorhees was praised for her work by a victim. The idea that Dr. Voorhees "was asked to leave her last position at University of Montana for the culture she, and other staff members perpetuated regarding how the college system of justice handles rape" was completely made-up by Plaintiff, is false, and was published by Plaintiff with the intent to ruin Dr. Voorhees's career.

Again, Plaintiff was not some outside commentator with limited facts available to her, simply giving her two cents on a couple of articles. She made it clear that she was aware of additional, undisclosed facts based on her personal knowledge. Given her purported personal experiences and seemingly inside information, a reasonable listener could consider the Statements to imply an assertion of objective facts rather than an interpretation of the facts equally available to Plaintiff and to the listener. *See Manufactured Home Communities, Inc. v. Cty. of San Diego*, 544 F.3d 959, 965 (9th Cir. 2008) ("[I]n this case a reasonable listener could conclude that Jacob 'impl[ied] there are other, unstated facts supporting' her comments."). It should also again be noted that only about half of the links in the Petition

---

[6]   https://missoulian.com/news/local/university-of-montana-dean-of-students-asked-to-leave/article_cbcd2362-f723-5c73-9e8fe88a6835d705.html.

allowed a reader to click and view the material without being charged. Thus, a substantial portion of the information was not equally available to the readers of the Petition, and it is unlikely that college students would actually pay for the information.

**False Statement # 7 (bolded below):** Plaintiff also falsely published that, **"[i]n the total of 80 rapes over the span of three years Dr. Voorhees oversaw, only one was convicted" at UM**. Dr. Voorhees did not oversee 80 rape cases during any three-year period while at UM. Additionally, there were not "80 rapes" in "three years" at UM while Dr. Voorhees was Dean of Students. Plaintiff had good reason to believe the Statements were false but published them regardless. The article cited by Plaintiff specifically stated that there were 80 rapes in the entire city of Missoula over a certain three-year period.

The Court committed no error, much less manifest error. Accordingly, the Motion should be denied with prejudice.

**IV.   Plaintiff's Notice of Supplemental Authority [Doc. 59] should be disregarded.**

Plaintiff's submission of supplemental authority not only fails to help support Plaintiff's flawed arguments but is also improper. The single case submitted was from the District Court for the Eastern District of Kentucky, which primarily focused on a motion for summary judgment filed by the defendant. However, the facts of the case are completely different than the facts before the Court in this case, and Plaintiff, through various highlighting, appears to be using this case for the other legal authority cited therein, the majority of which is very old. This is inappropriate. "A motion for reconsideration is not a vehicle to triage defective briefing." *Zaki v. Banner Pediatric Specialists LLC*, No. CV-16-01920-PHX-DLR, 2017 WL 11508133, at *3 (D. Ariz. Apr. 13, 2017). Additionally, Plaintiff fails to explain why this legal authority could not have been brought to the Court's attention much earlier (presuming, *arguendo*, it wasn't already).

**V.   Conclusion.**

Based on the foregoing, Dr. Voorhees respectfully requests that the Motion be denied,

9

or in the alternative, to the extent the Court is inclined to grant the Motion or any part of it, that leave to amend should be granted, and that the Court grants such other and further relief as the Courts finds reasonable and necessary.

RESPECTFULLY SUBMITTED this 5th day of August, 2022.

                              **RM WARNER, PLC**

                    By:   /s/ Daniel R. Warner, Esq
                           Daniel R. Warner, Esq.
                           8283 N. Hayden Road Suite 229
                           Scottsdale, Arizona 85258
                           *Attorneys for Rhondie Voorhees*

**CERTIFICATE OF SERVICE**

    I HEREBY CERTIFY that, on this 5th day of August, 2022, I caused the foregoing document to be electronically filed with the Clerk of the Court using CM/ECF. I further certify that a true and correct copy of the foregoing document being served via transmission of Notices of Electronic Filing generated by CM/ECF.

                                                   /s/ Allison Shilling
                                                   Paralegal, RM Warner PLC

**RM WARNER, PLC**
8283 N. Hayden Road, Suite 229
Scottsdale, Arizona 85258
Telephone: (480) 331-9397