Marc J. Randazza (AZ Bar No. 027861)
Alex J. Shepard (*pro hac vice*)
Jenny L. Foley, Ph.D. (*pro hac vice*)
RANDAZZA LEGAL GROUP, PLLC
4974 South Rainbow Boulevard, Suite 100
Las Vegas, NV 89118
Telephone: 702-420-2001
ecf@randazza.com

Carrie Goldberg (*pro hac vice*)
Adam Massey (*pro hac vice*)
Ca Goldberg, PLLC
16 Court Street, 33rd Floor
Brooklyn, NY 11241

Attorneys for Plaintiff /
Counterclaim-Defendant Audrey Davis

# UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| Audrey Davis,<br><br>    Plaintiff /<br>    Counterclaim-Defendant,<br><br>v.<br><br>Rhondie Voorhees,<br><br>    Defendant /<br>    Counterclaim-Plaintiff,<br><br>and,<br><br>ERAU,<br><br>    Defendant. | Case No. 3:21-cv-08249-DLR<br><br>**PLAINTIFF'S MOTION FOR RECONSIDERATION/CLARIFICATION OF ORDER [DOC. 97] GRANTING DEFENDANT VOORHEES'S MOTION FOR JUDGMENT ON THE PLEADINGS AS TO COUNT III [DOC. 75]** |

Plaintiff / Counterclaim-Defendant Audrey Davis hereby files under LRCiv. 7.2(g) her motion seeking reconsideration or, alternatively, clarification regarding the Court's Order of June 8, 2023 (Doc. 97) granting Defendant / Counterclaim-Plaintiff Rhondie Voorhees's Motion for Judgment on the Pleadings as to Count III of Davis's Amended Complaint (Doc. 75).

## MEMORANDUM OF POINTS AND AUTHORITIES

### 1.0   INTRODUCTION AND FACTUAL BACKGROUND

On February 7, 2023, Voorhees filed her Motion for Judgment on the Pleadings as to Count II of Davis's Amended Complaint (Doc. 75). Davis filed her opposition to the motion on February 21, 2023 (Doc. 77), and Voorhees filed her reply on February 28, 2023 (Doc. 78). After the Court issued an order on May 25, 2023 requesting supplemental briefing on the motion (Doc. 87), the parties filed their supplemental briefs on May 31 (Docs. 88 & 89), and responses on June 2 (Docs. 90 & 91). The Court granted Voorhees's motion on June 8, 2023 (Doc. 97), reasoning that a person cannot be liable for violation of the SCRA if they did not file a motion for default *judgment*.

The Court did not, however, address Davis's request for certification of this issue for immediate interlocutory appeal to the Ninth Circuit pursuant to 28 U.S.C. § 1292(b). As explained in Davis's opposition and below, the Court's Order granting Voorhees's motion involves a controlling question of law as to which there is substantial ground for difference of opinion, and an immediate appeal from the Order may materially advance the ultimate termination of the litigation. By failing to address this request for relief, the Court committed clear error and manifest injustice.

- 2 -
Motion for Reconsideration/Clarification
3:21-cv-08249-DLR

## 2.0 LEGAL STANDARD

A party may bring a motion for reconsideration of a court's order under LRCiv 7.2(g), though such motions are disfavored absent "a showing of manifest error or a showing of new facts or legal authority that could not have been brought to its attention earlier with reasonable diligence." Reconsideration of an order is appropriate where there is new evidence, the court committed a clear error or manifest injustice, or if there is an intervening change in controlling law. *Vanaman v. McLaughlin*, No. 17-00446-TUC-JGZ, 2020 U.S. Dist. LEXIS 87587, *4 (D. Ariz. May 15, 2020) (reconsidering and vacating order denying motion to dismiss).

## 3.0 LEGAL ARGUMENT

### 3.1 The Court Committed Clear Legal Error in Not Addressing Davis's Request for Certification to the Ninth Circuit

In her Opposition, Davis requested that the Court make findings required for immediate interlocutory appeal to the 9th Circuit pursuant to 28 U.S.C. § 1292(b). The Ninth Circuit has determined that "[c]ertification under § 1292(b) requires the district court to expressly find in writing that all three § 1292(b) requirements are met." *Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010). That statute provides:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: Provided, however, That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.

28 U.S.C. § 1292(b). "Substantial grounds for difference of opinion" exist when controlling law on an issue is unclear, typically where "'the circuits are in dispute on the question and the court of appeals of the circuit has not spoken on this point, . . . or if novel and difficult questions of first impression are presented.'" *Couch*, 611 F.3d at 633 (quoting 3 Federal Procedure, Lawyers Edition § 3:212 (2010)).

### 3.1.1   There are Substantial Grounds for Difference of Opinion

Davis brought her SCRA claim not only to vindicate her own interests – but to serve all of her fellow service members who might otherwise find themselves similarly treated. This Motion does not ask the Court to reach a different conclusion as to dismissal of Davis's SCRA claim, although such a request is not waived nor would a sua sponte reversal be unappreciated. Rather, Davis requests that the Court address the portion of the request for interlocutory appeal on the basis that there are substantial grounds for difference of opinion as to whether an SCRA violation may occur before entry of default *judgment*, and that an immediate appeal on this issue may materially advance the ultimate termination of this litigation.

The SCRA "was created to allow for the suspension of civil actions for those persons in the military in order to allow military personnel to devote their entire energy to the defense of the nation." *Bernhardt v. Alden Cafe*, 864 A.2d 421, 425 (N.J. Super. App. Div. 2005) (internal quotations omitted). "The Act has long been liberally construed to protect those men and women who drop their own affairs to take up the burdens of their country." *Sprinkle v. SB&C Ltd.*, 472 F. Supp. 2d 1235, 1244 (W.D. Wash. 2006) (citing *Boone v. Lightner*, 319 U.S. 561, 574 (1943); *Conroy v. Aniskoff*, 507 U.S. 511, 516 & n.9 (1993)). It protects the career officer as well as the temporary soldier. *See Omega Indus., Inc. v. Raffaele*, 894 F. Supp. 1425, 1434 (D. Nev. 1995). The Supreme Court has instructed lower

courts that "the Act must be read with an eye friendly to those who dropped their affairs to answer their country's call." *Maistre v. Leffers*, 333 U.S. 1, 6 (1948); *see also Davis v. Jacobson*, 2014 U.S. Dist. LEXIS 157693, at *9 (D. Conn. Nov. 7, 2014). The purposes of the SCRA is

> (1) to provide for, strengthen, and expedite the national defense through protection extended by this Act . . . to servicemembers of the United States to enable such persons **to devote their entire energy to the defense needs of the Nation**; and
>
> (2) to provide for the **temporary suspension of judicial and administrative proceedings and transactions** that may adversely affect the civil rights of servicemembers during their military service.

50 U.S.C. § 3092 (emphasis added).

As argued in Davis's Opposition, the SCRA is not narrowed to merely "default *judgments*." "The Soldiers' and Sailors' Civil Relief Act is always to be liberally construed to protect those who have been obliged to drop their own affairs to take up the burdens of the nation." *Boone*, 319 U.S. at 576. The SCRA defines "judgment" to mean "any judgment, decree, order, or ruling, final or temporary." 50 U.S.C. § 3911.

Of course, it is hardly unusual for one District Court to see that another court has ruled on a question, and then just choose the road already traveled.  That is what seems to be the case here, as the Court relied on *Palaciosreal.*  While *Palaciosreal v. Indem. Co. of California, Inc.*, No. CV1300993RGKDTBX, 2013 U.S. Dist. LEXIS 201940 (C.D. Cal. Oct. 21, 2013), supports the extremely narrow definition of "judgment" Voorhees promotes, the *Palaciosreal* court was lazy.  It failed to even look at the definitions that the statute itself provides. A court must look at the definitions in the SCRA, and the failure of the *Palaciosreal* court to do so means that scope of the term "judgment" is still a novel and difficult legal issue of first impression in this Circuit. The Ninth Circuit has not ruled on

this legal issue, and the controlling law is not settled just because a single district court engaged in a flawed analysis. This Court's opinion may ultimately be upheld by the 9th Circuit. However, simply following *Palaciosreal* is not good practice.

As an example of how the *Palaciosreal* court's reasoning was myopic, the Judge Advocates General School prepares officers to survey the entire SCRA to construe its meaning.

> **(7) Timing of Motion for Default.** In a traditional sense, one often thinks of default judgments being entered shortly after a defendant fails to answer or otherwise appear in a case. Things can be more complicated and a judgment tantamount to a default judgment can occur at any time. In fact, the SCRA defines judgment very broadly to include "any judgment, decree, order, or ruling, final or temporary." Thus, focus needs be placed on the meaning of any court decision.

*The Judge Advocate General's School's Guide to the Servicemembers Civil Relief Act*, 37 (March 2006).

Furthermore, while the *Palaciosreal* court applied a single rule of statutory construction, it skipped over all the others. 2013 U.S. Dist. LEXIS 201940, at *8 (C.D. Cal. Oct. 21, 2013). "It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Davis v. Michigan Dept. of Treasury*, 489 U.S. 803, 809 (1989). "The purpose of statutory construction is to discern the intent of Congress in enacting a particular statute." *Robinson v. U.S.*, 586 F.3d 683, 686 (9th Cir. 2009) (quoting *United States v. Daas*, 198 F.3d 1167, 1174 (9th Cir. 1999)). "We may also use canons of construction, legislative history, and the statute's overall purpose to illuminate Congress's intent." *Pacific Coast Fed'n. of Fishermen's Ass'ns. v. Glaser*, 937 F.3d 1191, 1198 (9th Cir. 2019) (cleaned up).

"We must examine the meaning of the words to see whether one construction makes more sense than the other as a means of attributing a rational purpose to Congress." *United*

*States v. Rundo*, 990 F.3d 709, 718 (9th Cir. 2021) (quoting *Longview Fibre Co. v. Rasmussen*, 980 F.2d 1307, 1311 (9th Cir. 1992)). "When a statute is fairly susceptible of two constructions, one leading inevitably to mischief or absurdity and the other consisting of sound sense and wise policy, the former should be rejected and the latter adopted." *Estrella v. Brandt*, 682 F.2d 814, 817-818 (9th Cir. 1982) (citation omitted). "[I]f a statute is amenable to two alternative interpretations, the one that leads to the more reasonable result will be followed." *Astaire v. Best Film & Video Corp.*, 136 F.3d 1208, 1209 (9th Cir. 1998) (citation omitted). Each of these statements is a variation of the same theme: *If possible, construe a statute so that the result is reasonable*.

The Court's conclusion here, and the conclusion of *Palaciosreal*, leads to unreasonable outcomes. The SCRA is meant to protect active duty servicemembers from the burden of litigation while they are serving the United States full time. Yet the result in *Palaciosreal* allows a plaintiff to burden a litigant in every conceivable way, including by lining up all prerequisites for a default judgment and resisting efforts to set aside entry of default, so long as they don't obtain a default *judgment*. In essence, significantly burdening a servicemember is permitted under the SCRA, just so long as a plaintiff doesn't specifically file a motion for default judgment. By this reasoning, Ms. Davis would have been better off if she had ignored Voorhees's state court case and allowed default judgment to enter, as then she would have been able to set aside the judgment and seek relief under the SCRA. A court should not encourage indolence in defending oneself.

Ms. Davis is not advancing an unheard-of legal theory, either. In *Murdock v. Murdock*, the South Carolina Appellate Court interpreted the term "judgment" in its broad, expansive meaning. 526 S.E.2d 241 (S.C. App. 1999). During a divorce, the trial court continued a hearing on child support to allow more time for the husband to obtain counsel. *Id.* at 244.  The trial court entered a judgment against him for child support and debt allocation, and the appellate court reversed, finding that the judgment was a default

judgment subject to scrutiny under the SCRA. *Id.* at 246. The servicemember was on active duty and could not attend the hearings. *Id.* The South Carolina Appellate Court understood that "judgment" has a broader meaning than what this Court has allowed. There was an order to show cause for failure to pay child support, and the trial court was reversed. This was not a traditional default judgment, either. While not a federal case, *Murdock* shows that there are grounds for a difference of opinion on this issue, and that *Palaciosreal* need not be treated as gospel. And while it may not be federal, it is at least *reported*.

Given the language and purpose of the SCRA, the problems with the *Palaciosreal* decision, and the implications of allowing that decision to go unchallenged, namely giving bad-faith plaintiffs free license to burden servicemembers with litigation so long as they stop short of obtaining a default judgment, there are substantial grounds for disagreement as to whether the SCRA forbids Voorhees' conduct here. This is a question the Ninth Circuit should resolve, just as it would have resolved had the plaintiff in *Palaciosreal* appealed. The Court committed clear error causing manifest injustice by ignoring the unresolved nature of this legal issue and not addressing Ms. Davis's request for certification.

### 3.1.2 Certifying This Issue Would Advance the Ultimate Termination of This Litigation

An immediate interlocutory appeal would advance the ultimate termination of this litigation. There are no longer any claims asserted against Voorhees, and her Counterclaim does not involve any federal claims. There is thus no subject-matter jurisdiction over Voorhees's Counterclaim, and the Court should dismiss the Counterclaim under Fed. R. Civ. P. 12(b)(1). If the Court does not do so *sua sponte*, Davis intends to seek dismissal of the Counterclaim on this ground. Certifying this issue for immediate interlocutory appeal avoids the potential procedural quagmire of having Voorhees's Counterclaim dismissed

for lack of subject-matter jurisdiction (which would likely result in Voorhees re-asserting her claims in state court), only for the Ninth Circuit to revive the SCRA claim, which would re-establish subject-matter jurisdiction.

Voorhees argued in her reply that certification was not warranted because there is no substantial ground for difference of opinion as to the applicability of the SCRA here, and also that an immediate appeal would not help resolve the question of this Court's subject-matter jurisdiction over Voorhees' Counterclaim. For the reasons stated above and in Davis's Opposition, there are substantial grounds for difference of opinion as to whether the SCRA allows abusive and opportunistic litigation tactics against a member of the armed services to exploit their active duty status, so long as the plaintiff is stopped from seeking default judgment by zealous representation.

As for Voorhees's second point, that diversity exists, there is no evidence of this. Diversity jurisdiction is based upon the parties' citizenship at the time of filing the original complaint, which here was November 11, 2021, after Davis had been a student at ERAU for over 3 years. *Mann v. City of Tucson, Dep't of Police*, 782 F.2d 790, 794 (9th Cir. 1986). As Voorhees admitted in her Counterclaim, "Davis, at all relevant times hereto, was a resident of Yavapai County, Arizona." Doc. 50 at Counterclaim ¶ 2. Voorhees suggested in her Reply that Davis may have been domiciled in North Carolina at the time because her ROTC cadet contract, signed over 2 years before Davis filed suit, listed a home address in North Carolina. Doc. 78 at 9; Doc. 75-3 at 9. A party's domicile can change over the course of 2 years, especially when attending college, and Voorhees has not pled any facts establishing diversity jurisdiction in her Counterclaim. With no record evidence or allegations showing the existence of diversity jurisdiction, and the absence of a federal claim with Voorhees as a party, this Court lacks subject-matter jurisdiction over Voorhees's

Counterclaim. By not addressing the significant impact dismissing the SCRA claim would have on this litigation or this element of the certification analysis, the Court again committed a clear error causing manifest injustice.

### 3.2 In the Alternative, the Court Should Clarify Whether it Made a Determination as to Whether the Basis of its Order Was Suitable for Certification to the Ninth Circuit

Because the Court did not address Davis's request for certification, it is unknown whether the Court ignored this request, denied it, or granted it without requisite findings. Certification to the Ninth Circuit under 28 U.S.C. § 1292(b) requires that the Court state in its order that there are grounds for substantial disagreement and that an interlocutory appeal would advance the ultimate termination of litigation. If the Court found that these requirements are met, then Davis requests that the Court amend its Order with such findings. If the Court found that these requirements were not satisfied, then Davis requests the Court explicitly state so on the record. The Court's silence as to Davis's request for certification creates an ambiguity in its Order that should be clarified.

### 4.0 CONCLUSION

For the foregoing reasons, the Court should amend its Order granting Voorhees's Motion to include findings that the requirements for certification of an immediate appeal to the Ninth Circuit are satisfied.

- 10 -
Motion for Reconsideration/Clarification
3:21-cv-08249-DLR

| | |
|---|---|
| Dated: June 22, 2023. | Respectfully submitted, |
| | /s/ Marc J. Randazza |
| | Marc J. Randazza (AZ Bar No. 027861) |
| | Alex J. Shepard (*pro hac vice*) |
| | Jenny L. Foley, Ph.D. (*pro hac vice*) |
| | RANDAZZA LEGAL GROUP, PLLC |
| | 4974 South Rainbow Boulevard, Suite 100 |
| | Las Vegas, NV 89118 |
| | |
| | Carrie Goldberg (*pro hac vice*) |
| | Adam Massey (*pro hac vice*) |
| | CA GOLDBERG, PLLC |
| | 16 Court Street, 33rd Floor |
| | Brooklyn, NY 11241 |
| | |
| | Attorneys for Plaintiff / |
| | Counterclaim-Defendant Audrey Davis |

Case No. 3:21-cv-08249-DLR

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 22nd day of June, 2023, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I further certify that a true and correct copy of the foregoing document is being served via transmission of Notices of Electronic Filing generated by CM/ECF.

/s/ Marc J. Randazza
Randazza Legal Group, PLLC