Joshua Woodard (Bar #015592)
jwoodard@swlaw.com
Audrey E. Chastain (Bar #033998)
achastain@swlaw.com
SNELL & WILMER L.L.P.
One East Washington Street
Suite 2700
Phoenix, AZ 85004-2556
Telephone: (602) 382-6000
Facsimile: (602) 382-6070

Attorneys for Defendant Embry-Riddle Aeronautical
University, Inc.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Audrey Davis, an individual,<br><br>    Plaintiff,<br><br>v.<br><br>Embry-Riddle Aeronautical University,<br><br>    Defendant. | No. 3:21-cv-08249-DLR<br><br>**JOINT STATEMENT OF DISCOVERY DISPUTE** |

Pursuant to Section 6(a) of the Court's Scheduling Order [Doc. 43], the parties respectfully submit this Joint Statement of Discovery Dispute. Defendant Embry-Riddle Aeronautical University, Inc. ("ERAU") seeks discovery on settlement documents and communications between and among counsel for Plaintiff Audrey Davis and counsel for former Defendant/Counterclaimant Rhondie Voorhees ("Voorhees"). Plaintiff objects on the grounds of the attorney-client privilege, attorney work product protection, common interest privilege, and the settlement/mediation privilege.

Counsel for Plaintiff and ERAU met and conferred on this discovery dispute prior to requesting the Court's assistance. The parties include a good faith consultation certificate, pursuant to Fed. R. Civ. P. 37(a)(1), with this Joint Statement.

> > >

> > >

## I. ERAU'S POSITION.

ERAU seeks documents *between Plaintiff's counsel and Defendant Voorhees' counsel* regarding settlement communications, stipulations, motions, and agreements relating to Plaintiff's claims against Defendant Voorhees, and Defendant Voorhees' counterclaims against Plaintiff.

ERAU's requests stem from Defendant Voorhees' August 9, 2023 deposition taken by Plaintiff's counsel. As the deposition progressed, it became readily apparent that Plaintiff's counsel, Defendant Voorhees' counsel, and Defendant Voorhees had colluded regarding the substance of Voorhees' testimony before she testified. For instance, Defendant Voorhees' counsel rarely objected to Plaintiff's counsel's questioning; Plaintiff's counsel gently lobbed numerous broad, open-ended questions that did nothing more than invite Defendant Voorhees to air her grievances about ERAU and its General Counsel; and Defendant Voorhees' counsel allowed Defendant Voorhees to give lengthy, minutes-long answers to Plaintiff's counsel's questions, where such answers were intended to bash ERAU, *without focus on Plaintiff's claims or Defendant Voorhees' counterclaims*.

ERAU's counsel overheard troubling conversations between Defendant Voorhees' counsel and Plaintiff's counsel that further evidenced the collusion. ERAU's counsel's declaration detailing the comments overheard is attached hereto as **Exhibit 1**.[1] Just as the conversations portended, shortly after Defendant Voorhees' deposition, Plaintiff and Defendant Voorhees filed a Stipulation for Dismissal with Prejudice [Doc. 120], dismissing Plaintiff's claims against Defendant Voorhees and Defendant Voorhees' counterclaims against Plaintiff, which the Court granted [Doc. 121].

Plaintiff's objections fail to articulate a valid legal basis upon which to withhold the requested documents. <u>First</u>, Plaintiff objects to the Requests on the basis of the attorney-client privilege. However, ERAU does not seek privileged communications between Plaintiff and her counsel. Rather, ERAU seeks documents and communications between Plaintiff's counsel and Defendant Voorhees' counsel – *counsel for adverse parties*. To the extent that Plaintiff's objection is based on drafts of settlement documents possibly containing comments from Plaintiff to her counsel and drafts possibly being protected by the attorney work product protection, the attorney-client privilege with respect to those comments, and the work product protection with respect to drafts were waived given that the comments and drafts were shared with *adverse counsel*. The sought documents are not protected by the attorney-client privilege or attorney work product protection.

<u>Second</u>, Plaintiff's objection based on the common interest privilege is nonsensical. Plaintiff and Defendant Voorhees have always been adverse parties and did not, and could not, have had a legitimate common interest in the litigation. Notably, during the parties' meet-and-confer conference, Plaintiff's counsel posited that Plaintiff and Defendant Voorhees arguably had a common interest that existed from the beginning of this case. Plaintiff's objection itself, and Plaintiff's counsel's recent statement in the meet-and-confer conference, are deeply concerning as it necessarily means that Voorhees and Plaintiff had an agreement regarding their "common interest" and had an agreement about the structure and substance of the deposition *even prior to Voorhees' deposition*. While *Mustang*

---

[1] In a classic, "doth protests too much, methinks" approach, Plaintiff's counsel, during the meet-and-confer conference, threatened sanctions if ERAU pursued further discovery on the communications between Plaintiff's counsel and Defendant Voorhees' counsel. All the while, however, Plaintiff's counsel failed to articulate how or why communications and agreements between opposing counsel would ever be privileged in the first instance. The documents sought go to the heart of Dr. Voorhees' credibility, or lack thereof, and will reveal Defendant Voorhees' deposition for what it was – a complete and unmitigated sham.

*Equipment, Inc. v. Welch*, 115 Ariz. 206 (1977) is distinguishable, the case is instructive with respect to the troubling nature of Voorhees' and Plaintiff's undisclosed agreement:

> *[W]e think this is a matter of public policy. While we recognized that under the particular fact situation of this case there was neither fraud, collusion nor unethical conduct involved, we cannot condone secret agreements between a plaintiff and defendant which, by their very secretiveness, may tend to encourage wrongdoing and which, at the least, may tend to lessen the public's confidence in our adversary system.*

*Id.* at 211.

Lastly, Plaintiff claims that the requested documents and communications are protected by the settlement/mediation privilege. Plaintiff conflates Federal Rule of Evidence 408 with Federal Rule of Civil Procedure 26(b). Of course, Rule 408 addresses when information regarding a settlement may be admitted into evidence. Here, ERAU is entitled to discovery of settlement negotiations where it "lays a foundation by adducing from other sources evidence indicating that the settlement may be collusive." *See Lobatz v. U.S. West Cellular of Cal., Inc.*, 222 F.3d 1142, 1148 (9th Cir. 2000) (internal quotation and citation omitted). Given the comments and conduct observed at Voorhees' deposition, and the manner in which Defendant Voorhees' entire deposition proceeded, the settlement between Defendant Voorhees and Plaintiff appears to be collusive.

Based upon a review of the circumstances discussed above, and based upon the information in Exhibit 1, Defendant Voorhees' deposition appears to have been a sham that was the result of, or led to, a collusive settlement between Plaintiff and Defendant Voorhees. ERAU respectfully requests that the Court order Plaintiff to produce the requested discovery regarding the settlement between Plaintiff and Defendant Voorhees.

## II.   PLAINTIFF'S POSITION

ERAU seeks communications between counsel for Plaintiff Audrey Davis and counsel for Defendant Rhondie Voorhees regarding settlement, including all discussions and negotiations regarding settlement. These documents are privileged and not discoverable.

Prior to and continuing after Voorhees's August 9, 2023 deposition, Davis and Voorhees were in discussions regarding settlement of their claims against one another. They did not enter into a settlement agreement until September 11, 2023, and the stipulation they filed dismissing their claims against one another was filed on September 12.

ERAU argues that Voorhees's deposition was a "sham" because they were in settlement discussions at the time without revealing this to ERAU's counsel. But at the time of Voorhees's departure, ERAU knew that Voorhees was no longer a friendly witness, as she had been terminated from ERAU months prior. In essence, ERAU complains that Davis was treating Voorhees as a friendly witness, which they must have known as of August 2023 given her acrimonious departure from the university.

ERAU insists that there is no valid basis for withholding the requested documents, which specifically include settlement-privileged communications. Ordinarily, the attorney-client privilege would not apply to the requested documents, as ERAU requests communications between Davis and Voorhees's counsel.

The common interest privilege, however, protects these communications from disclosure. ERAU and Davis entered into a written common interest agreement (as part of their settlement agreement) on September 11, 2023, and were negotiating the terms of a

common interest agreement prior to, during, and after the time of Voorhees's deposition. The common interest doctrine provides that "[i]f two or more clients with a common interest in a litigated or nonlitigated matter are represented by separate lawyers and they agree to exchange information concerning the matter, a communication of any such client that otherwise qualifies as privileged that relates to the matter is privileged as against third persons. Any such client may invoke the privilege, unless it has been waived by the client who made the communication." *Ariz. Indep. Redistricting Comm'n v. Fields*, 75 P.3d 1088, 1100 (Ariz. Ct. App. 2003); *see Berkadia Real Estate Advisors LLC v. Wadlund*, No. CV-22-00049-TUC-CKJ, 2023 U.S. Dist. LEXIS 153710, *13 (D. Ariz. Aug. 29, 2023). Its purpose is "to permit persons with common interests to share privileged attorney-client and work-product communications in order to coordinate their respective positions without destroying the privilege." *Fields*, 75 P.3d at 1100. A written agreement is not by itself enough to create the privilege, and is not required for the privilege to apply. *Id*. at 1099, n.11.

At the time of Voorhees's deposition, Voorhees and ERAU had a common interest with one another. The communications among their counsel in furtherance of this common interest are thus privileged and not discoverable. Requiring disclosure would defeat the purpose of the common interest doctrine. This applies to communications where counsel for Davis and Voorhees discussed potential settlement, as such communications involve discussions each set of attorneys had with their respective clients and their own mental impressions, but also to draft documents in furtherance of settlement and this common interest, as all such documents contain either attorney-client privileged information or attorney work product (*e.g.*, comments and redline revisions from Davis and Voorhees and their respective counsel). Furthermore, the document requests specifically request settlement-privileged communications. *See* Request Nos. 18 and 19. As the authority ERAU cites establishes, discovery of such communications should only be allowed "'where the party seeking it lays a foundation by adducing from other sources evidence indicating that the settlement may be collusive.'" *Lobatz v. U.S. West Cellular of Cal., Inc.*, 222 F.3d 1142, 1148 (9th Cir. 2000) (quoting *Mars Steel Corp. v. Continental Illinois Nat'l Bank & Trust Co.*, 834 F.2d 677, 684 (7th Cir. 1987)).

ERAU accuses Voorhees and Davis of conducting a "sham" deposition and entering into a "collusive" settlement agreement. It relies on *Mustang Equipment v. Welch*, 564 P.2d 895 (Ariz. 1977) for this argument, but this citation is misguided. There, a plaintiff in a car accident personal injury case, sued multiple defendants, and settled with one of them early on in the case. The parties agreed to keep the agreement a secret and not to disclose it to anyone until after trial. Notably, this agreement did not involve settling the claims prior to trial, and the parties went through a trial despite some of the nominally adverse parties having settled. This is completely different from the factual scenario here, where Davis and Voorhees were in the process of negotiating a settlement agreement at the time of her deposition and settled their claims against one another immediately after entering into one.[2]

Importantly, ERAU does not identify what difference disclosure of the existence of these settlement discussions (as they had not yet matured to an agreement) would have made for Voorhees's deposition. Voorhees and Davis simply decided to cooperate with one another, and ERAU cites no authority that a previously adverse witness becoming a friendly witness is in any way improper. ERAU was at Voorhees's deposition and was free to ask questions of her. They were free to seek their own deposition of Voorhees, which they likely

---

[2] It is rich for ERAU to complain about Davis not disclosing the existence of settlement *discussions* prior to this deposition. As explained in two of Davis's prior motions for extension of discovery, ERAU knowingly withheld the fact that two of its employees central to Davis's claims, Voorhees and Elizabeth Frost, were no longer ERAU employees. Davis had to learn both these facts on her own.

1  should have done since they knew by that point she was an adverse witness to them.

2        The documents ERAU seeks are privileged, and the Court should not require disclosure of any of them.

## GOOD FAITH CONSULTATION CERTIFICATE

      Counsel for Plaintiff and ERAU hereby certify that they met and conferred via telephonic conference on October 3, 2023, regarding the disputed issues raised in the Joint Statement, in an effort to obtain an agreement without Court action. The parties were unsuccessful and respectfully request the Court's guidance regarding the disputed issues.

      DATED this 12th day of October, 2023.

SNELL & WILMER L.L.P.

By: *s/ Joshua Woodard*
    Joshua Woodard
    Audrey E. Chastain
    One East Washington Street
    Suite 2700
    Phoenix, AZ  85004
    *Attorneys for Defendant Embry-Riddle Aeronautical University, Inc.*

4876-1812-9540