Joshua Woodard (Bar #015592)
jwoodard@swlaw.com
Audrey E. Chastain (Bar #033998)
achastain@swlaw.com
SNELL & WILMER L.L.P.
One East Washington Street
Suite 2700
Phoenix, AZ 85004-2556
Telephone: (602) 382-6000
Facsimile: (602) 382-6070

*Attorneys for Defendant Embry-Riddle Aeronautical University, Inc.*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Audrey Davis, an individual,<br><br>  Plaintiff,<br><br>  v.<br><br>Rhondie Voorhees, as Dean of Embry-Riddle Aeronautical University, and Embry-Riddle Aeronautical University,<br><br>  Defendants. | No. 3:21-cv-08249-DLR<br><br>**JOINT STATEMENT OF DISPUTE REGARDING REOPENING DISCOVERY** |

      Pursuant to the Court's Order [Doc. 134], the parties respectfully submit this Joint Statement of Dispute Regarding Reopening Discovery.

      Pursuant to the Court's Order [Doc. 118], fact discovery closed on October 13, 2023. On October 12, 2023, after a hearing on the parties' discovery dispute regarding Plaintiff's production of documents regarding her settlement with Dr. Voorhees, the Court ordered Plaintiff to produce the requested documents, stating that the settlement between Plaintiff and Dr. Voorhees appears to be "collusive." [Docs. 126 and 130]. Plaintiff produced the documents at issue on October 18, 2023. Having reviewed the produced documents, Defendant Embry-Riddle Aeronautical University, Inc. ("ERAU") respectfully requests that the Court reopen discovery, to allow ERAU: (a) to depose: (i) Plaintiff; and (ii) Dr. Voorhees' counsel, Dan Warner, on the limited issues regarding Plaintiff's and Dr. Voorhees' settlement agreement; and (b) to depose Dr. Voorhees on the settlement agreement issues and on Plaintiff's claims against ERAU that pertain to and involve Dr. Voorhees in her former capacity as Dean of Students. ERAU further respectfully requests that the Court enter an order, pursuant to Fed. R. Civ. P. 30(d)(2), that: (c) Plaintiff pay ERAU's attorneys' fees and costs, and court reporter and videographer costs, associated with: (i) Plaintiff's former counsel, Jenny Foley's, deposition; and (ii) Plaintiff's deposition, if the Court allows; and (d) Dr. Voorhees pay ERAU's attorneys' fees and costs, and court reporter and videographer costs, associated with: (i) Dr. Voorhees' deposition, if the Court allows; and (ii) Dr. Voorhees' counsel Dan Warner's, deposition, if the Court allows.

Plaintiff, Ms. Foley, and Plaintiff's counsel do not object to the Court's reopening discovery for ERAU to depose Ms. Foley. *See* Doc. 131.

## I. ERAU'S POSITION

Plaintiff's counsel represented to the Court that, "[p]rior to and continuing after Voorhees'[] August 9, 2023 deposition, [Plaintiff] and Voorhees were in discussions regarding settlement of their claims against one another [but that …] ***[t]hey did not enter into a settlement agreement until September 11, 2023***…" [Doc. 127 at 3 (emphasis added)]. Plaintiff's counsel made similar representations to the Court during the discovery dispute hearing on October 12, 2023.

Plaintiff's counsel's representations to the Court are inaccurate. Indeed, Plaintiff and Voorhees entered into a fully executed and effective settlement agreement (or, as they entitled it, a "common interest agreement") on August 8, 2023 – *one day before Voorhees' August 9 deposition and unbeknownst to ERAU or its counsel.* Yet, when asked by ERAU's counsel whether she settled with Plaintiff, Voorhees testified under oath, "No." Further, during Voorhees' deposition, it became readily apparent to ERAU's counsel that Voorhees, her counsel, and Plaintiff's counsel had earlier colluded about the (sham) questions that would be asked and the substance of Voorhees' responses to such (sham) questions. ERAU wishes to depose Plaintiff, Voorhees, Mr. Warner, and Ms. Foley, as the documents confirm, *just as the Court earlier suspected*, that there was a collusive settlement. ERAU further seeks its fees and costs related to the depositions, if the Court so orders.

First, the language of the settlement agreement provides Voorhees with a reward for helping Plaintiff. Second, the settlement agreement and emails produced between Voorhees' counsel and Plaintiff's counsel evidenced that a settlement agreement had been reached and signed by all parties *prior to Voorhees' August 9, 2023 deposition*. Plaintiff and Voorhees *re*-signed their Common Interest Agreement, as of September 11, 2023, despite having exchanged a fully executed Common Interest Agreement on August 8. Notably, in Plaintiff's section of the parties' Joint Statement of Discovery Dispute [Doc. 127], and during the hearing on the same, Plaintiff's counsel represented that "[p]rior to and continuing after Voorhees's August 9, 2023 deposition, [Plaintiff] and Voorhees were in discussions regarding settlement of their claims against one another. They did not enter into a settlement agreement until September 11, 2023…" [Doc. 127 at 3]. Plaintiff's counsel's assertions are inaccurate.

Third, Ms. Foley sent an email to Mr. Warner on July 25, 2023 at 10:48 AM seeking to bump out Voorhees' deposition – which was originally scheduled for July 27 – to get the settlement agreement "fully ironed out." Ms. Foley's email to Mr. Warner stated: "Please ignore the draft I just sent you. An issue arose with how I phrased things with our co-counsel…that I need to get ironed out. Would you be amenable to moving Dr. Voorhees [sic] deposition a week or two so we can get this fully ironed out? I realize other counsel will have to chime in on that, but I think that makes the most sense at this point."). Ms. Foley then told ERAU's counsel, in a July 25, 2:27 PM email (less than four hours after her above-referenced email to Mr. Warner), that she needed to bump out the deposition because of a different and personal reason, entirely unrelated to this case.

And, lastly, Plaintiff's counsel, Alex Shepard, stated in a comment to the draft settlement agreement: "It's not really a Mary Carter agreement, so I think we're allowed to keep this confidential, but **keep in mind that AZ courts have explicitly disapproved of**

**secret Mary Carter agreements**." (emphasis added). Undeterred, Voorhees and Plaintiff continued with their illicit scheme and settlement agreement.

Rule 30(d)(2), Fed. R. Civ. P. provides that, "[t]he court may impose an appropriate sanction – including the reasonable expenses and attorney's fees incurred by any party – on a person who impedes, delays, or frustrates the fair examination of the deponent." Plaintiff and Voorhees – and their counsel – impeded and frustrated the fair examination of Voorhees on August 9 when they entered into their collusive Common Interest Agreement prior to Voorhees' deposition. Further, neither Plaintiff, Voorhees, nor their counsel disclosed that fact to ERAU, its counsel, or the Court; yet, they pretended as if they were still adverse during the deposition.

The Arizona Supreme Court defines Mary Carter or, in Arizona, *Gallagher* agreements as those "made between a plaintiff and one of several codefendants which deal with how the agreeing defendant's liability, if any, will be handled after the verdict is rendered," and broadly recognizes that "similar" agreements may fall under the *Gallagher* umbrella. *See Mustang Equip., Inc. v. Welch*, 564 P.2d 895, 897–98 (1977); *City of Tucson v. Gallagher*, 493 P.2d 1197 (Ariz. 1972). The Arizona Supreme Court has unequivocally held that *Gallagher* and *Gallagher*-like agreements must be disclosed *immediately*. *See In re Alcorn*, 41 P.3d 600, 608 (2002), *as corrected* (Mar. 21, 2002) (emphasis added). Arizona courts require disclosure for at least three reasons: (1) public policy compels disclosure, *see Mustang*, 564 P.2d at 900; (2) "the disclosure of Gallagher agreements is or should be required . . . to avoid the inherent tendency to work a fraud on the court and to avoid 'collusion' between the plaintiff and some of the defendants[,]" *id.* at 899; and (3) when undisclosed, *Gallagher* agreements sabotage the unaware party's settlement strategy. *Id.* at 900. Had it not been for the overheard remarks during Voorhees' deposition, *see* Doc. 127 at Ex. 1, and the Court's Order compelling production [Docs. 126 and 130], Plaintiff and Voorhees likely would have attempted to keep their Common Interest Agreement a secret through trial and beyond. Significantly, Plaintiff and her counsel objected to the production of the settlement-related documents at issue and fought hard to keep them a secret, to no avail.[1]

Plaintiff, Voorhees, and their counsel impeded and frustrated the deposition process. *See* Fed. R. Civ. P. 30(d)(2). Had ERAU known of their settlement agreement, it would have, at a minimum, postponed Voorhees' deposition, treated her as a hostile witness rather than a co-defendant, and would have had the opportunity to examine her on matters relevant to this case. ERAU did not have the opportunity.

**II.    PLAINTIFF'S POSITION**

ERAU's statement makes multiple factual and legal misrepresentations, and there is no basis either for reopening discovery or shifting the costs of belated depositions to the deponents.

---

[1] As noted in ERAU's portion of the Joint Statement of Discovery Dispute [Doc. 127], note 1, Plaintiff's counsel, Ms. Foley, actually threatened sanctions if ERAU pursued further discovery on the settlement communications and agreement between Plaintiff and Voorhees. *See also* Doc. 127, Ex. 1 at ¶ 12.

First, while there was a signed settlement agreement the day before Voorhees's deposition, it was immediately apparent to counsel for Davis and Voorhees that further revisions were necessary and they continued negotiating the language of the settlement agreement, as evidenced by the fact that their final agreement was not signed until September 11, 2023. Declaration of Jenny L. Foley ("Foley Decl."), attached as **Davis Exhibit 1**, at ¶¶ 9-10. The claim that Davis and Voorhees had settled as of Voorhees's deposition is factually incorrect.

Second, ERAU claims that Attorney Foley lied about the reasons for moving Voorhees's deposition. This is also wrong, and Davis's counsel told ERAU's counsel this was wrong during their meet and confer call. Foley had a necessary medical procedure scheduled for October 2023 when Voorhees's deposition was initially scheduled for July 27. Foley Decl. at ¶ 6. However, this procedure was rescheduled to July, which made it so that Attorney Foley was no longer available for the deposition on July 27. *Id*. Davis thus rescheduled Voorhees's deposition for August 9, 2023, a date that Attorney Foley could make. *Id*. at ¶ 7. The specific rescheduled dates that Foley proposed were chosen in part because of a desire to revise some language in the settlement agreement, but the need to reschedule the deposition was due to Foley's medical issues. *Id*. at ¶ 8.

Third, there is nothing wrong the parties' agreement or conduct here. One of the first Arizona cases dealing with *Gallagher* agreements is *Damron v. Sledge*, 460 P.2d 997 (Ariz. 1969), a car accident personal injury case. At the start of trial, the plaintiffs notified the court and the insurer defendant for the first time that they had entered into a *Gallagher* agreement with the driver defendant, by which the plaintiffs agreed to pay the driver $2,000 in attorneys' fees and not collect against him, and in return the driver assigned whatever claim he had against the insurers. *Id*. at 998-99. The driver's attorney also told the court that he intended to withdraw the driver's answer and allow a default in light of this agreement, but had not informed the plaintiffs of this. *Id*. at 1000. The Arizona Supreme Court found there was nothing improper or collusive about the agreement. *Id*. at 1001.

*City of Tucson v. Gallagher*, 493 P.2d 1197 (1972), was another car accident personal injury case. The Arizona Supreme Court approved of a settlement agreement by which the plaintiff would at any time be able to take judgment of $10,000 against one of the defendants (the driver), and in return the plaintiff would not make any attempt to collect against that defendant if she obtained a judgment of $10,000 or more against the other defendants (the City of Tucson). *Id*. at 1199. This agreement was not reduced to writing, but the parties informed the court of it before trial. *Id*. The City objected, arguing that this agreement deprived it of a fair trial because it removed all incentive from the driver to defend himself, and incentivized him to ensure that a large verdict was awarded against the City. *Id*. The court found that the agreement did not deprive anyone of a fair trial because the only change in the driver's motivation was that "he would be motivated in seeing that any judgment obtained by the plaintiff against the city would exceed $10,000," which would still involve him trying to limit any finding of liability against him. *Id*. at 1199-1200.

*Hemet Dodge v. Gryder*, 534 P.2d 454 (Ariz. Ct. App. 1975), was yet another personal injury case, this time dealing with faulty vehicle repairs. The plaintiff and one of the defendants (a mechanic) entered into a verbal *Gallagher* agreement whereby if judgment was entered in favor of all defendants or against the mechanic only, the mechanic would pay $50,000. However, if judgment was entered against the non-settling defendants, then any recovery from them would reduce the amount the mechanic would have to pay (eliminating his requirement to pay if the judgment was in excess of $50,000). *Id*. at 460.

The terms of the agreement were set out in discovery responses before trial. *Id*. The court found that, while there was authority in other jurisdictions disapproving of *Gallagher* agreements, they were acceptable in Arizona. *Id*. at 460-61.

These cases show that, broadly speaking, *Gallagher* agreements are allowed in Arizona, and they are permitted both for cases where a plaintiff agrees not to execute against a settling defendant, or a settling defendant's liability will be offset by a judgment against a non-settling defendant. There is nothing improper about the "reward," as ERAU calls it, of Voorhees being potentially capable of recovering her attorneys' fees based on recovery against ERAU.

***Gallagher* agreements are only problematic when they are used to fool the court or the jury into believing parties are adverse.** *Mustang Equipment v. Welch*, 564 P.2d 895, 897-99 (Ariz. 1977), was another car accident personal injury case involving a defendant employee driving a company car. The plaintiff sued the employee, his employer, and the vehicle manufacturer. Shortly after the initial complaint was filed, the plaintiff and the employer entered into a *Gallagher* agreement by which the plaintiff would only seek execution of a judgment against the non-settling defendants, and afterward the employer filed a cross-claim against the manufacturer. *Id*. at 896-97. The settling parties agreed to keep the agreement a secret from the manufacturer and did not disclose its existence to anyone else until **after trial**. *Id*. at 897. When the plaintiff attempted to collect against the manufacturer and revealed the existence of the agreement, the manufacturer filed a motion for relief from the judgment. The plaintiff then sought to execute against the employer, who in turn filed a motion for relief from the judgment. *Id*. at 897.

The court found the agreement "**did not encourage fraud or collusion**" or harm the integrity of the trial, but did invalidate the agreement because it was kept secret. The court found that it was necessary to disclose the existence of the agreement before trial because, "[h]ad [Manufacturer's] counsel known that the plaintiff would execute solely upon his client and for the entire amount of the judgment, he may indeed have been more amenable to settlement prior to trial." *Id*. at 900. The court also found that pre-trial disclosure was necessary as a matter of public policy, stating: "we cannot condone secret agreements between a plaintiff and a defendant which, by their very secretiveness, may tend to encourage wrongdoing and which, at the least, may tend to lessen the public's confidence in our adversary system." *Id*.

*In re Alcorn*, 41 P.3d 600 (Ariz. 2002), was a medical malpractice case by a man against a doctor and his employer hospital. The doctor's insurer was insolvent and, due to financial difficulties, the doctor instructed his attorneys to do as little work as possible. *Id*. at 602-03. The hospital was dismissed from the case at summary judgment, leaving the doctor as the only remaining defendant for trial. *Id*. at 603. "Not long" before trial, the plaintiff and the doctor entered into a *Gallagher* agreement, in which (1) the plaintiff agreed not to execute against the doctor, (2) the doctor's attorneys would not object to the scope or form of any inquiry by the plaintiff's counsel during trial, (3) the agreement would be kept secret, and (4) the plaintiff agreed to dismiss all claims against the doctor after trial. *Id*. at 603. Trial went forward, with essentially no objections by the doctor's counsel to the plaintiff's case, and the parties stipulated to dismissal after trial was completed. *Id*. at 604. The Arizona Supreme Court was furious at the parties, stating "[w]e hold today, as strongly as possible, that any agreement that has the *potential* of affecting the manner in which a case is tried is one that may encourage wrongdoing and must therefore be disclosed to the

- 5 -

trial judge and all litigants in the case," noting in particular the agreement not to make objections to testimony *at trial*. *Id.* at 608-09.

ERAU takes the position that all *Gallagher* agreements must be disclosed **immediately** in all circumstances, but it provides no support for this proposition. The court in *Mustang* stated that it is "the better policy to require candid disclosure of all Gallagher-type agreements to the court and to all parties concerned *before trial* or, if entered into during the course of the trial, at the earliest possible opportunity." 564 P.2d at 900. Accordingly, the rule in *Mustang* is not that *Gallagher* agreements entered into prior to trial must be disclosed immediately, but rather that they must be disclosed **before trial**. That is what occurred here. There is nothing to suggest that a party's conduct during discovery implicates any of the above concerns with *Gallagher* agreements.

There was nothing improper about the settlement agreement here. It was simply two parties that were initially adverse later choosing to settle with each other. Once their final agreement was signed by all parties, they quickly notified the Court and ERAU that they were no longer adverse. To claim that this conduct is in the same ballpark as *Mustang* or *Alcorn* is absurd.

Because there was nothing improper about this settlement agreement, there is no relevance to any of the requested testimony ERAU plans to elicit. ERAU also fails to explain why it did not attempt to take these depositions before fact discovery closed. ERAU knew as of August 9 that there was an agreement between Davis and Voorhees, and there is no explanation for ERAU's lack of diligence on this issue. There is also no legal basis for requiring anyone other than ERAU to pay for these depositions, the university should not be rewarded for its lack of diligence by allowing fee-shifting for depositions it should have taken during discovery.

### III.     DR. VOORHEES' POSITION

Dr. Voorhees is no longer a party to this lawsuit and is specially appearing for the limited purpose of providing her position; Dr. Voorhees waives no rights by making this limited appearance. First, regarding the settlement agreement, per §§ 1 and 2, the stipulation and proposed order were required to be filed with the Court within 5 days of the effective date but were not. The parties were thinking about revising some of the language. This is why there were several email exchanges after Dr. Voorhees's deposition, and it took a while for the stipulation and order to be filed with the Court. Despite any technical arguments that can be made to the contrary, the actions of the parties demonstrate that the settlement agreement was not finalized until after Dr. Voorhees's deposition.

Also, ERAU's allegation that the agreement provides Dr. Voorhees with a reward for helping Plaintiff is incorrect. The agreement provides for the remote possibility that, after all of Plaintiff's attorney's fees are paid, Dr. Voorhees *may* be reimbursed 40% of the attorneys' fees that she incurred. Most significantly, § 14 states that each party is free to withdraw from the agreement at any time, and the only part of the agreement to remain intact would be the mutual dismissal with prejudice. As such, the Plaintiff can bow out of this agreement at any time without paying anything to Dr. Voorhees. Nothing about the agreement impacted how Dr. Voorhees testified at her deposition, as she is willing to affirm by declaration, under penalty of perjury.

Second, ERAU's claim of being surprised by Dr. Voorhees's hostility is disingenuous at best. While the Dean of Students at ERAU Dr. Voorhees was not responsible for Title IX but attempted to help smooth over an issue with Plaintiff created by ERAU's widely known shortcomings with Title IX. As a result, Dr. Voorhees was unfairly attacked online by Ms. Davis. While ERAU was encouraging of Dr. Voorhees in filing a defamation lawsuit, it provided no other support. Then, when Dr. Voorhees was named in this lawsuit, including in her professional capacity as its Dean of Students, ERAU refused to support her in any way or cover any of the fees associated with the Title IX claim brought against her. As ERAU was made well aware, those mounting legal fees that Dr. Voorhees was forced to pay personally while Dr. Voorhees was an employee at ERAU, over a lengthy period of time, created extreme and increasingly burdensome financial and emotional stress for her. Additionally, throughout her tenure at ERAU, multiple employees and students raised concerns about Title IX at the Prescott Campus with Dr. Voorhees, and the head of Title IX (Charlie Sevastos) would get defensive and upset with Dr. Voorhees and others when such issues were brought to his attention. On one occasion, an administrator resigned and reported to Dr. Voorhees that she was tired of listening to women students on this campus who have been raped, and the University doing nothing. Mr. Sevastos became increasingly hostile with Dr. Voorhees as she continued to report these issues, including at one point humiliating her by ordering a uniformed safety officer to her office to solicit a "statement" from her about the statement of that administrator. Also, despite Dr. Voorhees complaining to HR repeatedly and pleading for help and support, ERAU allowed the Title IX Coordinator, Liz Frost, and other employees to severely bully and harass Dr. Voorhees repeatedly.

In May of 2023, ERAU suddenly terminated Dr. Voorhees and used the ongoing bullying and harassment by Dr. Frost and others as pretext for this ultimate act of retaliation. This termination was unexpected, without proper notice or protocols, provided without an official reason, and devastating to Dr. Voorhees, both professionally and financially. Prior to her termination, Dr. Voorhees had received glowing performance evaluations from her supervisor. Therefore, because of ERAU's own actions, Dr. Voorhees's separation from ERAU was not amicable. Immediately after her termination and months before her deposition, ERAU attempted to have Dr. Voorhees enter into a separation agreement with a gag provision in it, and she refused. ERAU was on notice for several months that its relationship with Dr. Voorhees was not good. ERAU was well aware that Dr. Voorhees would not be anything less than hostile at her deposition. Moreover, ERAU was aware that Dr. Voorhees knew about numerous documents that were relevant to Title IX, and that ERAU failed to produce them in discovery; it should not have come as a surprise that these documents and issues would be discussed in Dr. Voorhees's deposition. The settlement agreement changes nothing.

Third, re-deposing Dr. Voorhees is unnecessary and will not change anything. Regardless of the agreement, Dr. Voorhees's testimony would have been the same. Dr. Voorhees offered to provide ERAU with a declaration and it refused. Furthermore, deposing counsel is extreme and unnecessary. However, given that Ms. Foley has volunteered, there should be no need to depose Dr. Voorhees or her counsel. Dr. Voorhees has been dealing with this litigation for many years; it has taken a huge financial toll on her, and she needs to work on starting her life over at this point. ERAU should not be permitted to use the legal system to retaliate against Dr. Voorhees for testifying truthfully. Dr. Voorhees is no longer a party and should not be involved in this case any further.

## GOOD FAITH CONSULTATION CERTIFICATE

On November 8, 2023, counsel for Plaintiff and counsel for ERAU met and conferred on these issues and were unable to come to an agreement regarding Plaintiff's deposition; or regarding the allocation of costs and fees associated with the additional depositions.

On November 10, 2023, counsel for Dr. Voorhees and counsel for ERAU met and conferred on these issues and were unable to come to an agreement regarding Mr. Warner's deposition or Dr. Voorhees' deposition. Mr. Warner objected to each of ERAU's requests and proposed that ERAU provide Mr. Warner with a declaration for Dr. Voorhees to sign, in lieu of her deposition. ERAU declined the offer.

DATED this 6th day of December, 2023.

RANDAZZA LEGAL GROUP, PLLC

By: *s/ Marc J. Randazza (w/ permission)*
　　Marc J. Randazza
　　4974 S. Rainbow Blvd., Suite 100
　　Las Vegas, NV 89118
　　*Attorneys for Plaintiff*

SNELL & WILMER L.L.P.

By: *s/ Joshua Woodard*
　　Joshua Woodard
　　Audrey E. Chastain
　　One East Washington Street
　　Suite 2700
　　Phoenix, AZ 85004
　　*Attorneys for Defendant Embry-Riddle Aeronautical University, Inc.*

C. A. GOLDBERG, PLLC

By: *s/ Carrie Goldberg (w/ permission)*
　　Carrie Goldberg
　　16 Court St.
　　Brooklyn, NY 11241
　　*Attorneys for Plaintiff (Admitted Pro Hac Vice)*

RM WARNER, PLC

By: *s/ Daniel R. Warner (w/ permission)*
　　Daniel R. Warner
　　Raeesabbas Mohamed
　　8283 N. Hayden Road, Suite 229
　　Scottsdale, Arizona 85258
　　*Attorneys for Defendant Rhondie Voorhees*

4882-7331-6757